UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; RANDY COLE, JR.; WILSON LOBAO; ROBERT CAPONE; RYAN SHAUGHNESSY; and COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　-against-<br><br>RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; NEIL F. OULLETTE, in his Official Capacity as Chief of the Danvers Police Department; ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department; and GARY J. GEMME, in his Official Capacity as Chief of the Worcester Police Department,<br><br>　　　　　　　　　Defendants. | CIVIL ACTION NO.<br>1:13-cv-10246<br><br><br><br>PRELIMINARY EQUITABLE<br>RELIEF REQUESTED |

## **AMENDED COMPLAINT**

Plaintiffs CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; RANDY COLE, JR.; WILSON LOBAO; ROBERT CAPONE; RYAN SHAUGHNESSY; and COMMONWEALTH SECOND AMENDMENT, INC., as and for their Complaint against Defendants RICHARD C. GRIMES; NEIL F. OULLETTE; ROBERT L. CHAMPAGNE; and GARY J. GEMME, allege as follows:

1.　　This suit challenges Defendants' imposition of "sporting," "hunting," and/or "target" restrictions on handgun licenses. These restrictions prevent Plaintiffs from using handguns for the purpose self-protection, which contravenes "the right of the people to keep and bear arms" that the Second Amendment secures.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

3. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts and/or within the geographic confines of the Commonwealth of Massachusetts.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. The Eastern Division is appropriate pursuant to LR 40.1(D)(1)(b) because all of the parties reside in the District and a majority reside in the Eastern Division.

## PARTIES

6. Plaintiff Christopher Davis is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

7. Plaintiff William J. Thompson, Jr. is a citizen and resident of Massachusetts residing in the Town of Halifax, Plymouth County.

8. Plaintiff Randy Cole, Jr. is a citizen and resident of Massachusetts residing in the Town of Danvers, Essex County.

9. Plaintiff Wilson Lobao is a citizen and resident of Massachusetts residing in the Town of Peabody, Essex County.

10. Plaintiff Robert Capone is a citizen and resident of Massachusetts residing in the Town of Peabody, Essex County.

11. Plaintiff Ryan Shaughnessy is a citizen and resident of Massachusetts residing in the City of Worcester, Worcester County.

12. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

13. Defendant Richard C. Grimes ("Chief Grimes") is sued in his official capacity as Chief of the Weymouth Police Department (Norfolk County), responsible for issuing handgun licenses pursuant to M.G.L. ch. 140, § 131. As detailed herein, Defendant Chief Grimes has enforced the challenged laws, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs.

14. Defendant Neil F. Oullette ("Chief Oullette") is sued in his official capacity as Chief of the Danvers Police Department (Essex County), responsible for issuing handgun licenses pursuant to M.G.L. ch. 140, § 131. As detailed herein, Defendant Chief Oullette has enforced the challenged laws, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs.

15. Defendant Robert L. Champagne ("Chief Champagne") is sued in his official capacity as Chief of the Peabody Police Department (Essex County), responsible for issuing handgun licenses pursuant to M.G.L. ch. 140, § 131. As detailed herein, Defendant Chief Champagne has enforced the challenged laws, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs.

16. Defendant Gary J. Gemme ("Chief Gemme") is sued in his official capacity as Chief of the Worcester Police Department (Worcester County), responsible for issuing handgun licenses pursuant to M.G.L. ch. 140, § 131. As detailed herein, Defendant Chief Gemme has enforced the challenged laws, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs.

## **CONSTITUTIONAL PROVISIONS**

17. The Second Amendment provides:

   A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

18. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008).

19. The Second Amendment guarantees individuals a fundamental right to carry operable handguns in non-sensitive public places for the purpose of self-defense.

20. The Second Amendment "is fully applicable against the States." McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 3026 (2010).

21. The States retain the ability to regulate the manner of carrying handguns within constitutional parameters; to prohibit the carry of handguns in specific, narrowly defined sensitive places; to prohibit carrying arms that are not within the scope of Second Amendment protection; and, to disqualify specific, particularly dangerous individuals from possessing guns. However, States may not deny law-abiding citizens the right to carry handguns for protection.

22. The Equal Protection Clause of the Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Under the Equal Protection Clause, "classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988).

## **MASSACHUSETTS HANDGUN LICENSING LAWS**

23. It is unlawful to possess, use, or carry a handgun unless one holds a License to Carry Firearms ("LTC") issued pursuant to M.G.L. ch. 140, § 131. See M.G.L. ch. 269, § 10(a); M.G.L. ch. 140, §§ 129B-129C.

24. Under M.G.L. ch. 140, §§ 121, 131(d) Massachusetts residents apply for LTC's from the police chief of the town or city where they reside or have a place of business.

25. A person seeking an LTC must meet requirements related to age, criminal background, mental fitness, drug and alcohol abuse, and active arrest warrants and domestic violence restraining orders. See M.G.L. ch. 140, §§ 131(d)(i)-(vii). A person must complete training. See id. at § 131P. Finally, a person must be found to be a "suitable person" before any LTC can be issued. See id. § 131(d). This case does not concern any of these requirements.

26. LTC's are "designated Class A or Class B." M.G.L. ch. 140, § 131. A Class A LTC authorizes a person to possess a handgun and to carry it in operable (loaded) condition, either concealed or in open view. See M.G.L. ch. 140, § 131(a). A Class B LTC authorizes a person to possess a handgun (capable of holding no more than 10 rounds of ammunition) and to carry that handgun loaded and in open view (but not concealed). See M.G.L. ch. 140, § 131(b). This case does not concern the differences between Class A and Class B LTC's.

27. In either case (Class A or Class B) Massachusetts law authorizes local licensing officials to impose "restrictions relative to the possession, use or carrying of" guns as they "deem[ ] proper." M.G.L. ch. 140, § 131(a)-(b).

28. A local official's decision to impose restrictions on an individual's LTC will be upheld so long as it is not arbitrary, capricious, or an abuse of discretion. See, e.g., Ruggiero v. Police Comm'r of Boston, 18 Mass. App. 256, 259, 464 N.E.2d 104, 107 (1984).

29. Some Massachusetts localities flatly refuse to issue LTC's without restriction to "sporting," "target," "hunting," or other similar purposes. Other Massachusetts localities refuse to issues LTC's without restrictions unless applicants establish (to the particular locality's satisfaction) that they have a particularly pronounced "need" to carry a gun. Other

Massachusetts localities apply a more *ad hoc* policy under which some applicants receive unrestricted LTC's, and others do not, but without any apparent difference in circumstances. Some localities normally impose sporting-type restrictions, but issue unrestricted LTC's to people who have obtained them in the past. About half of all Massachusetts localities (not party to this lawsuit) generally issue LTC's without restrictions to private citizens who request them.

30. Carrying, using, or possessing a handgun in violation of the restrictions placed on an LTC is grounds for suspension or revocation of the LTC and a fine of $1,000 to $10,000. See M.G.L. ch. 140, § 131(a), (b).

31. Massachusetts' LTC scheme results in otherwise-qualified, law-abiding citizens of Massachusetts being denied the right to carry a firearm for self-defense, while other, similarly situated residents of Massachusetts are permitted to exercise their right to bear arms to protect themselves. For example, neighboring localities may adopt different policies regarding unrestricted LTC's, resulting in a citizen's right to bear arms being dependent on whether he lives in one locality or the other. One citizen may be denied the right to carry a firearm for self-defense because local licensing officials refuse to issue unrestricted LTC's, while an otherwise indistinguishable neighbor may be able to obtain an unrestricted LTC if he happens to have a place of business in a locality that does issue unrestricted licenses. A woman may obtain an unrestricted LTC from a local licensing official while her husband cannot, solely because he has already been issued a restricted LTC by licensing officials in their former home locality, and those officials refuse to revoke his license to allow him to reapply to officials in his new home. These examples are not fanciful; on information and belief, they all describe scenarios that have taken place under Massachusetts' LTC scheme and, indeed, some of these irrational and arbitrary results have been experienced by the Plaintiffs themselves.

## **DEFENDANTS' APPLICATION OF THE STATUTE AGAINST THE PLAINTIFFS**

### **CHIEF GRIMES AND THE WEYMOUTH POLICE DEPARTMENT**

32. Plaintiff Christopher Davis previously lived in Foxborough, Massachusetts and held a Class B LTC issued by the Foxborough Police Department. (Mr. Davis had applied for a Class A LTC, but the Foxborough Police Department had issued him a Class B LTC, instead.) This Foxborough Class B LTC carried no restrictions. Mr. Davis moved to Weymouth in 2007 and continued to hold his unrestricted Class B LTC for its full duration.

33. When Mr. Davis's LTC was due to expire, he applied for a new LTC from Chief Grimes of the Weymouth Police Department in 2008. Mr. Davis applied for an LTC of Class A. Mr. Davis met all applicable requirements for issuance of an LTC.

34. At the time he submitted his application, Mr. Davis specifically requested that Chief Grimes issue him an LTC that did not carry restrictions. Officer Brian King, who accepted Mr. Davis's application, stated that the town's policy was to only issue unrestricted licenses to law enforcement and military personnel and businesses owners.

35. On July 3, 2012 Chief Grimes issued Mr. Davis a Class A LTC carrying the restriction of "Target & Hunting."

36. Plaintiff William J. Thompson, Jr. applied for a Class A LTC from Chief Grimes in 2007. Mr. Thompson met all applicable requirements for issuance of an LTC.

37. On April 2, 2008 Chief Grimes or his designee issued Mr. Thompson a Class A LTC with the restriction of "Target & Hunting."

38. Mr. Thompson and his wife (Marissa) then moved about 20 miles to Halifax, Massachusetts. Mrs. Thompson applied for an LTC from the Halifax Police Department, and received a Class A LTC with no restrictions.

39.     Mr. Thompson then applied for an LTC from the Halifax Police Department, and the licensing officer said that he would issue Mr. Thompson a Class A LTC that carried no restrictions. However, the Halifax Police Department could not issue the LTC unless Mr. Thompson's Weymouth-issued LTC was first expired. The Halifax Police Department contacted the Weymouth Police Department, but Chief Grimes refused to expire Mr. Thompson's LTC. As a result, Mr. Thompson remains subject to the restrictions of his Weymouth-issued LTC.

### CHIEF OULLETTE AND THE DANVERS POLICE DEPARTMENT

40.     In 2011 Plaintiff Randy Cole, Jr. applied for a Class A LTC from Chief Oullette of the Danvers Police Department in Danvers, Massachusetts. Mr. Cole met all applicable requirements for issuance of an LTC.

41.     On June 8, 2011 Chief Oullette issued Mr. Cole a Class B LTC with the restriction of "Target & Hunting."

42.     In both September and December of 2012, Mr. Cole requested that Chief Oullette remove the restrictions from his license and issue him a license of Class A. Chief Oullette refused to take either action.

### CHIEF CHAMPAGNE AND THE PEABODY POLICE DEPARTMENT

43.     In 2008 Plaintiff Wilson Lobao applied for a Class A LTC from Chief Champagne of the Peabody Police Department in Peabody, Massachusetts. Mr. Lobao met all applicable requirements for issuance of an LTC.

44.     At the time that Mr. Lobao submitted his application, personnel told him that the Chief "doesn't like to issue" unrestricted Class A LTC's.

45.     On December 5, 2008 Chief Champagne issued Mr. Lobao a Class B LTC with the restriction of "Target & Hunting."

46. In 2012 Plaintiff Robert Capone applied for a Class A LTC from Chief Champagne. Mr. Capone met all applicable requirements for issuance of an LTC.

47. On July 19, 2012 Chief Champagne issued Mr. Capone a Class A LTC with the restriction of "Target & Hunting."

48. Mr. Capone thereafter asked to have the "Target & Hunting" restriction removed. Personnel in the Police Department told him that Chief Champagne's policy is to issue all first-time applicants restricted licenses, but that Chief Champagne might remove the restrictions when Mr. Capone renewed his LTC in about 6 years.

### CHIEF GEMME AND THE WORCESTER POLICE DEPARTMENT

49. In 2009 Plaintiff Ryan Shaughnessy applied for a Class A LTC from Chief Gemme of the Worcester Police Department in Worcester, Massachusetts. Mr. Shaughnessy met all applicable requirements for issuance of an LTC.

50. On May 4, 2009 Chief Gemme or his designee issued Mr. Shaughnessy a Class A LTC with the restriction of "Sporting & Target."

### INJURY TO THE PLAINTIFFS

51. The restriction of the above individual Plaintiffs' LTC's to "target," "hunting," and/or "sporting" purposes precludes these Plaintiffs from possessing, using, or carrying handguns for the purpose of self-protection. But for these Plaintiffs' fear that their LTC's would be suspended or revoked and/or that they would be fined, each of these Plaintiffs would possess, use, and carry a handgun for the purpose of self-protection.

52. Plaintiff Comm2A is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms.

53. Comm2A expends significant resources assisting people who receive restricted LTC's under the authority of M.G.L. c. 140, § 131(a)-(b), including specifically people receiving restricted licenses from the Danvers Police Department, the Peabody Police Department, the Weymouth Police Department, and the Worcester Police Department.

54. Supporters of Comm2A have received restricted LTC's pursuant to M.G.L. ch. 140, § 131(a)-(b) and are injured in their inability to carry handguns for protection.

55. In addition, both supporters of Comm2A and members of the general public have contacted Comm2A as a result of the restriction of their LTC's. Comm2A has expended time, energy, and money to consult with and provide assistance to these individuals, and particularly with regard to issues surrounding their inability to exercise the right of armed self-protection.

56. Comm2A would not expend its organizational resources to respond to the demands of its supporters and of the general public regarding the restriction of their LTC's by the Defendants if Defendants did not impose restrictions in the first instance. Comm2A would instead use its organizational resources to pursue other organizational priorities.

57. All of the Plaintiffs' injuries are irreparable because people are entitled to enjoy their constitutional rights in fact.

## COUNT I

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

58. Massachusetts' LTC licensing scheme, and in particular M.G.L. ch. 140, § 131(a)-(b) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

59. Defendants have exercised this authority by issuing Plaintiffs LTC's that prohibit them from carrying and using handguns for the purpose of self-defense and have thereby deprived Plaintiffs of their right to keep and bear arms.

60. Defendants have further exercised this authority by adopting policies, customs, and/or practices of generally issuing LTC's with "sporting," "hunting," and/or "target" restrictions that prohibit carrying or using handguns for the purpose of self-defense.

61. Defendants have thereby infringed Plaintiffs' rights under the Second Amendment and the Due Process Clause of the Fourteenth Amendment, and Defendants have damaged Plaintiffs in violation of 42 U.S.C. § 1983.

## COUNT II

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

62. Massachusetts' LTC licensing scheme, and in particular M.G.L. ch. 140, § 131(a)-(b) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

63. Defendants have exercised this authority such that the ability of law-abiding citizens of Massachusetts to exercise their fundamental right to bear arms often turns on arbitrary considerations, such as whether an individual resides on the correct side of a local boundary line, has a place of business in a locality that issues unrestricted LTC's, was able to obtain an unrestricted LTC at some point in the past, or has held a restricted LTC for some period of time.

64. The aforesaid statute, and Defendants' implementation of this statute, violates Plaintiffs' Second Amendment right to keep and bear arms and their Fourteenth Amendment rights to due process and equal protection of the laws, and damages Plaintiffs in violation of 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

i. declaratory judgment that M.G.L. ch. 140, § 131(a)-(b) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes;

ii. declaratory judgment that Defendants' policies, customs, and/or practices implementing M.G.L. ch. 140, § 131(a)-(b) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes;

iii. declaratory judgment that M.G.L. ch. 140, § 131(a)-(b) & (d) violate the Equal Protection Clause to the extent they allow similarly situated, law-abiding citizens to be treated differently for purposes of exercising their fundamental right to carry a loaded and operable handgun for self-protection, in a manner not sufficiently tailored to a sufficiently important government interest;

iv. injunctive relief directing Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, to issue to Plaintiffs Christopher Davis; William J. Thompson, Jr.; Randy Cole, Jr.; Wilson Lobao; Robert Capone; and Ryan Shaughnessy LTC's that do not carry "hunting," "target," or "sporting" restrictions, nor any other similar restrictions that would preclude the carry and use of handguns for self-protection;

v. injunctive relief precluding Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from issuing LTC's with "hunting," "target," or "sporting" restrictions, or with any other similar restriction that would preclude the use of handguns for self-protection;

vi. such other and further relief, including further and/or preliminary injunctive relief, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable; and

vii. attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: February 10, 2013

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,

/s/ Patrick M. Groulx
Patrick M. Groulx, Esq.
BBO No. 673394
POLIS LEGAL
P.O. Box 760656
Melrose, MA 02176
Tel: 978.549.3124
Fax: 617.500.9955
pgroulx@polislegal.com

David D. Jensen, Esq.
DAVID JENSEN PLLC
111 John Street, Suite 230
New York, New York 10038
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com
Application for Admission *Pro Hac Vice* Pending