UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; RANDY COLE, JR.; WILSON LOBAO; ROBERT CAPONE; RYAN SHAUGHNESSY; and COMMONWEALTH SECOND AMENDMENT, INC.,<br>   Plaintiffs,<br><br> -against-<br><br>RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; NEIL F. OULLETTE, in his Official Capacity as Chief of the Danvers Police Department; ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department; and GARY J. GEMME, in his Official Capacity as Chief of the Worcester Police Department,<br>   Defendants. | CIVIL ACTION NO. 1:13-cv-10246 |

## AFFIDAVIT OF ROBERT L. CHAMPAGNE, CHIEF OF POLICE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Robert L. Champagne, Chief of the Peabody Police Department, hereby state as follows:

1. I am the Chief of Police in the City of Peabody, a position I have held for 25 years.

2. In my capacity as the Chief of Police, pursuant to Mass. Gen. L. ch. 140, §131, I am the firearms licensing authority for the City of Peabody and, in particular, for persons seeking a License to Carry Firearms (hereinafter "LTC").

3. As a general rule, I do not ordinarily grant an unrestricted Class A LTC to first-time applicants. I will make an exception, however, where an individual needs an unrestricted Class A LTC for his chosen profession such as a security guard or for a person whose business involves carrying large amounts of cash or extremely valuable merchandise provided the applicant documents that he or she does, in fact, carry large amounts of cash or extremely valuable merchandise. I will also make an exception if the applicant has a history being unrestricted with their home state or by the military. Among other reasons, my concerns with issuing a first time applicant a Class A LTC with no restrictions are that (i) there is no durational residency requirement for seeking a license to carry, so I may not know

the individual applicant; (ii) a first time applicant has not demonstrated (to me anyway) that he is sufficiently trained in the careful and appropriate use of firearms to warrant an unrestricted Class A LTC; and (iii) the need to maintain and secure the public safety by limiting the issuance of gun licenses – especially ones which allow a person to carry a *concealed* weapon – to persons who I believe are qualified to possess one.

4. Instead, most first time applicants who request a Class A license with no restrictions receive a Class A LTC with the restriction: "Target & Hunting." The "Target & Hunting" restriction allows the holder of a Class A LTC to possess and operate a loaded handgun, rifle or shotgun (really any firearm), in his home and to carry a concealed or unconcealed weapon while traveling to-and-from the activity location. The license holder cannot, however, carry a concealed or unconcealed weapon anywhere he wants without limitation.

5. It is also my policy, barring some disqualifying event in the interim, to lift the restriction when the license holder seeks to renew his/her License to Cary six years later.

6. In their Amended Complaint, plaintiffs' claim that the "Target & Hunting" restriction "precludes" them from carrying or using handguns "for the purpose of self-protection." Inside of their homes, anyway, this is simply untrue. The restriction for "Target & Hunting" has no bearing whatsoever on the plaintiffs' rights to own and operate a handgun within their own homes.

7. On November 20, 2008, Wilson Lobao, a first time applicant, applied for a Class A LTC and stated that he wanted an unrestricted gun license to participate in pistol and rifle teams on behalf of the Haverhill Hound Rod & Gun Club and for protection when he (and his family) "sails to remote areas with expensive equipment on board."

8. On December 5, 2008, I issued Mr. Lobao a Class B License with the restriction of "Target & Hunting." The Class B License issued to Mr. Lobao allows him to own and operate a firearm in his home and also carry a loaded gun when he is traveling to-and-from pistol and rifle competitions on behalf of HHRGC.

9. Assuming nothing occurs which would disqualify Mr. Lobao from owning a firearm, I will likely remove the "Target & Hunting" restriction when Mr. Lobao's LTC is up for renewal in July, 2014. By statute, Mr. Lobao can actually submit his renewal application to the Peabody Police Department 90 days before his present LTC expires.

10. On May 14, 2012, Robert Capone applied for a Class A LTC without any restrictions. Mr. Capone stated that the reasons for this request were "for personal protection in and out of the home. I would also like to use it for recreational sports and in a business capacity."

11. First of all, Mr. Capone does not need an unrestricted Class A LTC to engage in "recreational sports." Second, Mr. Capone is a landscaper. In my experience, landscapers do not carry large amounts of cash which would require an unrestricted Class A license for use "in a business capacity." Accordingly, I asked Detective Mike Crane (who handles gun license applications on my behalf) to find out more about Mr. Capone's business and his desire to obtain an unrestricted Class A LTC.

12. According to Detective Crane, Mr. Capone never provided any documentation to support his claim that he needed an unrestricted Class A LTC in his "business capacity" and, despite Detective Crane's offer to meet with him, Mr. Capone declined to do so.

13. On July 19, 2012, I issued Mr. Capone a Class A LTC with the restriction: "Target & Hunting." This license allows Mr. Capone to own and operate a concealed (or unconcealed) weapon for personal protection in his home; and for "recreational sports" while traveling to-and-from the activity location. It does not, however, allow Mr. Capone to carry a firearm or handgun anywhere he wants, at any time he wants.

Signed under the penalties of perjury:

Dated: June 25, 2013

Robert L. Champagne, Chief of Police
City of Peabody

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on July 1, 2013.

/s/ Adam Simms
Adam Simms