UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; RANDY COLE, JR.; WILSON LOBAO; ROBERT CAPONE; RYAN SHAUGHNESSY; and COMMONWEALTH SECOND AMENDMENT, INC.,<br>Plaintiffs,<br><br>-against-<br><br>RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; NEIL F. OULLETTE, in his Official Capacity as Chief of the Danvers Police Department; ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department; and GARY J. GEMME, in his Official Capacity as Chief of the Worcester Police Department,<br>Defendants. | CIVIL ACTION NO. 1:13-cv-10246 |

### AFFIDAVIT OF RICHARD C. GRIMES, CHIEF OF POLICE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Richard C. Grimes, Chief of the Weymouth Police Department, hereby state as follows:

1. I am the Chief of Police for the Town of Weymouth, a position I have held for three years, nine months. In that capacity, by statute, I am the gun licensing authority for the Town of Weymouth.

2. Generally, it is my policy not to issue an unrestricted Class A License to Carry ("LTC") to first time applicants for a gun license. Instead, first time applicants who are otherwise qualified to hold a Class A LTC receive one with the restriction: "Target & Hunting." I will make an exception where, for example, a person needs an unrestricted Class A LTC for his chosen profession such as security guard or person whose business involves carrying large amounts of cash or extremely valuable merchandise provided the applicant documents that he or she does, in fact, carry large amounts of cash or extremely valuable merchandise. Among other reasons, my concerns with issuing a first time applicant a Class A LTC with no restrictions are that (i) there is no durational residency requirement for seeking a license to carry, so I often do not know the individual applicant; (ii) a first time applicant has not demonstrated (to me anyway) that he is sufficiently trained in the careful and appropriate use of a concealed weapon to warrant an unrestricted Class A LTC; and (iii) the need to maintain and secure the public safety by limiting the issuance of gun licenses – especially ones which allow a

person to carry a *concealed* weapon – to persons who I believe are qualified to possess one.

3. Instead, most first time applicants who request a Class A license with no restrictions receive a Class A LTC with the restriction: "Target & Hunting." The "Target & Hunting" restriction allows the holder of a Class A LTC to possess and operate a loaded weapon in his home and to carry a concealed weapon while traveling to-and-from the activity location. The license holder cannot, however, carry a concealed or unconcealed weapon anywhere he or she wants without limitation. When the person renews his/her License To Carry six years later, absent an intervening disqualifying event, I will usually lift the licensee's restriction.

4. In their Amended Complaint, ¶51, plaintiffs' claim that the "Target & Hunting" restriction "precludes" them from carrying or using handguns "for the purpose of self-protection." Inside of their homes, anyway, this is untrue. The "Target & Hunting" restriction has no bearing whatsoever on the plaintiffs' right to own and operate a handgun within their own homes.

5. On March 12, 2012, Christopher Davis, a first-time applicant in Weymouth, applied for an unrestricted Class A LTC. Mr. Davis indicated that he needed an unrestricted Class A LTC to protect him from someone who was harassing himself and his family, and for protection while hiking and camping in remote areas in which he might not be able to use his cell phone to call for help. (Mr. Davis's gun license application does not indicate whether he (Davis) sought and/or obtained a harassment order against this alleged "harasser.") On July 3, 2012, I issued Mr. Davis a Class A LTC with the restriction: "Target & Hunting." Later that month, Mr. Davis contacted Captain James Mullen to see if the restriction could be removed. Captain Mullen informed him "no," the denial was based on the same policies and guidelines that had been in place in Weymouth for many years.

6. Notably, the Class A LTC that I issued to Mr. Davis allows him to own and operate a loaded gun in his home (concealed or unconcealed); and to carry a concealed, loaded gun when traveling with his family to-and-from a camp ground (if they intend to engage in target shooting or hunting at the camp ground). Mr. Davis cannot, however, carry a loaded gun anywhere he wants, at any time he wants.

7. On March 5, 2008, William Thompson, a first-time applicant, applied to one of my predecessors, Chief James Thomas, for an unrestricted Class A LTC. Mr. Thompson did not state or provide the reasons for seeking such an unrestricted LTC. On April 2, 2008, Chief Thomas issued him a Class A LTC with the restriction: "Target & Hunting." To my knowledge, Mr. Thompson has never provided me or Officer Brian King – who handles gun licensing requests on my behalf – with any documentation demonstrating why he needs a Class A LTC with no restrictions.

8. Subsequently, Mr. Thompson and his wife moved to Halifax, MA. Apparently, Mrs. Thompson applied for and received a Class A LTC with no restrictions. (Of course, the decision to issue Mrs. Thompson such an unrestricted LTC lies with Chief Mike Manoogian, Halifax Police Department.) According to the Amended Complaint, Mr. Thompson also applied for a Class A LTC with no restrictions, but was told by the Halifax Police Department that it could not do so unless and until I expired his existing Class A LTC, i.e. the one issued out of the Weymouth Police Department.

9. I spoke with Brian King about this situation and he (King) told me that there is nothing in Chapter 140 which authorizes a police chief to "expire" a LTC. I told Officer King to so advise his equal at the Halifax Police Department. If he has not done so already, then Mr. Thompson is due to renew his Class A LTC in a few months. At this point, the decision to remove the "Target & Hunting" restriction on Mr. Thompson's LTC (or renew it at all), rests with Chief Manoogian.

10. One other point raised in the Plaintiffs' Amended Complaint needs to be addressed. Plaintiffs are correct that it is unlawful to own, possess or operate a handgun (or any firearm) unless one holds a License To Carry Firearms; however, since all the plaintiffs actually have a LTC, they cannot be criminally prosecuted under Mass. Gen. L. ch. 269, ¶10(a). Instead, if the plaintiffs use their handgun outside of the "Target & Hunting" restriction, then their Class A LTCs can be suspended or revoked. Speaking for myself, I have not taken any action to revoke or suspend Mr. Davis's or Mr. Thompson's Class A LTC nor, to the best of my knowledge, have I had any reason to do so.

Signed under the penalties of perjury:

Dated: 06/21/13

Richard C. Grimes, Chief of Police
Town of Weymouth

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on July 1, 2013.

/s/ Adam Simms
Adam Simms