UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; WILSON LOBAO; ROBERT CAPONE; and COMMONWEALTH SECOND SECOND AMENDMENT, INC., <br>            Plaintiffs, <br><br>      -against- <br><br> RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; and ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department, <br>            Defendants, <br>      -and- <br><br> COMMONWEALTH OF MASSACHUSETTS, <br>            Intervenor. | CIVIL ACTION NO. 1:13-cv-10246 |

**THE PARTIES' STIPULATED-TO JOINT STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Now come the Plaintiffs Christopher Davis, William J. Thompson, Jr., Wilson Lobao, Robert Capone, and Commonwealth Second Amendment, Inc., the Defendants Richard C. Grimes and Robert L. Champagne, and the Commonwealth of Massachusetts, intervenor, pursuant to Rule 56(c) and Local Rule 56.1, who hereby submit the following Stipulated-To Joint Statement of Material Facts as to which there is no genuine issue to be tried[1]:

**I. The Parties To This Action**

1. Christopher Davis ("Mr. Davis") is a citizen and resident of the City of

    Weymouth. Joint Exhibit A, Amended Complaint ("AC"), ¶6; Joint Exhibit B,

---

[1] The Stipulation is not necessarily intended to set out all of the material facts upon which the parties will move, or oppose, summary judgment. Each party reserves his or its right to submit affidavits or other additional evidentiary materials with its motion for summary judgment and/or its opposition to summary judgment.

Chief Grimes's Answer to Amended Complaint ("Answer"), ¶6.[2]

2. Wilson Lobao and Robert Capone are citizens and residents of the City of Peabody. AC, ¶¶9 & 10; Answer, ¶¶9 &10.

3. William J. Thompson is a citizen and former resident of the Town of Weymouth; he now resides in Halifax, MA. AC, ¶¶7 & 38; Answer, ¶¶7 & 38.

4. Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, MA. The purposes of Comm2A include education, research, publishing and legal action focusing on what it maintains is the constitutional right of the people to possess and carry firearms. Comm2A has assisted people who receive restricted LTCs including people receiving restricted LTCs from the Weymouth and Peabody Police Departments. AC, ¶¶12, 52 & 53.

5. Richard C. Grimes ("Chief Grimes") is the Chief of Police of the Weymouth Police Department, responsible for issuing firearms licenses pursuant to Mass. Gen. Laws ch. 140, §131. AC, ¶13; Answer, ¶13.

6. Robert Champagne ("Chief Champagne") is the Chief of the Peabody Police Department, also responsible for issuing firearms licenses pursuant to Mass. Gen. Laws ch. 140, §131. AC, ¶15; Answer, ¶24.

**Licensing Policies of the Weymouth and Peabody Police Departments**

7. The Massachusetts Instant Record Check System (MIRCS) is an internet-based information management system that local firearms-licensing authorities access to

---

[2] The various documents referred to herein, including the pleadings, are contained in the Parties' Joint Compendium of Exhibits filed separately herewith. Because the Answers of Chief Richard Grimes (Weymouth) and Chief Robert Champagne (Peabody) to Plaintiffs' Amended Complaint are substantially similar, they are referred to collectively as the "Answer."

perform a background check on individuals who apply for an LTC. If the local authority decides to issue a license, it will identify to MIRCS what, if any, restriction the local authority imposes on the license. MIRCS provides standard definitions for restrictions (such as "Target & Hunting" and "Employment") that a local licensing authority might impose upon an LTC. Local police chiefs can elect to use these definitions, and Chief Grimes and Chief Champagne have elected to use them. After the application process is complete, the Massachusetts Firearms Records Bureau prints, in a uniform, statewide format, an LTC based on the information submitted by the local authority, and mails the license to the local authority, which issues it to the applicant.

8. Under the MIRCS definition, a "Target & Hunting" restriction:

> Restricts possession to the purpose of lawful recreational shooting or competition; for use in the lawful pursuit of games animals and birds; for personal protection in the home; and for the purpose of collecting (other than machine guns). It includes travel to-and-from the activity location.

9. In the Town of Weymouth, Chief Grimes ordinarily imposes a restriction for first-time applicants of a Class A LTC, to wit, Target & Hunting. Unrestricted licenses for first-time applicants are usually for law enforcement, military, and business owners who substantiate they handle large amounts of cash. Licenses restricted to Employment are issued to people who are required to carry a firearm by their employer and submit documentation from their employer. Prior to the expiration of the initial six-year period, Chief Grimes will also consider lifting this restriction where the applicant shows a change of circumstance which, in his view, warrants such a result. Joint Exhibit D, Chief Grimes's Answers to

- 3 -

Plaintiffs' First Set of Interrogatories, Answer No. 6.

10. In the City of Peabody, Chief Champagne ordinarily imposes a restriction for first-time applicants of a Class A LTC, to wit, Target & Hunting. Chief Champagne will consider issuing an unrestricted Class A LTC where a first-time applicant requires such a license to carry for employment or business purposes and supporting documentation is provided, or if a first-time applicant has a history of being licensed unrestricted in his home state or the military. In such cases, Chief Champagne may issue a first-time applicant an un-restricted Class A LTC. Chief Champagne ordinarily issues renewal LTC's without restrictions, unless a suitability condition exists. Joint Exhibit E, Chief Champagne's Answers to Plaintiffs' First Set of Interrogatories, Answer Nos. 6, 9-10.

**The Plaintiffs' Applications For and Receipt of A License To Carry Firearms**

11. In March 2012, Christopher Davis contacted the Weymouth Police Department to renew his Class B LTC, which was issued out of Foxborough and would expire later in the month. He was given an appointment and submitted his application to Chief Grimes on March 22, 2012, requesting a Class A License To Carry that did not carry restrictions.[3] Joint Exhibit M, Christopher Davis's Application for License To Carry Firearms, March 15, 2012. On his application, Mr. Davis expressed concern for his and his family's safety from an individual who had stolen their identity and harassed them in an incident that resulted in criminal charges. In a letter he was required to submit with his application, he also cited his desire for self-protection while hiking and camping with his family in remote

---

[3] The Amended Complaint inadvertently states that Mr. Davis submitted his Application for a LTC to the Weymouth Police Department in 2008.

- 4 -

areas. Officer Brian King, who accepted Mr. Davis's application, told him (Davis) that generally speaking, the Town's policy for first-time applicants was to issue unrestricted licenses only to law enforcement, military personnel and business owners. AC, ¶¶32-34; Joint Exhibit D, Chief Grimes's Answers to Plaintiffs' First Set of Interrogatories, Answer Nos. 6 & 7.

12. On July 3, 2012, Chief Grimes issued Mr. Davis a Class A LTC carrying the restriction of "Target & Hunting." AC, ¶35; Answer, ¶35; Joint Exhibit L, Christopher Davis's Class A LTC, dated July 3, 2012.

13. Later that month, Mr. Davis contacted a designee of Chief Grimes in writing and asked that the restriction be removed. Captain James Mullen responded that the restriction would not be removed and that the "denial was based on the same policies and guidelines that have been in place for many years." Joint Exhibit F, Plaintiffs' Answers to Chief Grimes' First Set of Interrogatories, Answer No. 10.

14. On March 5, 2008, William Thompson applied to one of Chief Grimes's predecessors, James E. Thomas, for a Class A LTC that did not carry any restrictions. Joint Exhibit V, MIRCS Application prepared by Weymouth Police Department, signed by William Thompson on March 5, 2008. Neither Mr. Thompson nor the Police Department has a copy of the application form that Mr. Thompson submitted, but Mr. Thompson recalls both that he told the officer that he wanted an LTC to protect himself and his family, and that he requested that his LTC be issued for "all lawful purposes" on his application form. On April, 2, 2008, Chief Thomas issued him a Class A LTC with the restriction "Target & Hunting." AC, ¶¶36-37; Answer, ¶37; Joint Exhibit U, William Thompson's

Class A LTC, dated April 2, 2008.

15. Subsequently, Mr. Thompson spoke to Officer Brian King about removing this restriction, which request was denied. Joint Exhibit F, Plaintiffs' Answers to Chief Grimes's First Set of Interrogatories, Answer No. 10.

16. Mr. Thompson and his wife (Marissa) moved about 20 miles to Halifax, Massachusetts. Mrs. Thompson applied for an LTC from the Halifax Police Department, and received a Class A LTC with no restrictions. AC, ¶38.

17. Mr. Thompson then applied for an LTC from the Halifax Police Department, and the licensing officer said that he would issue Mr. Thompson a Class A LTC that carried no restrictions. However, the Halifax Police Department could not issue the LTC unless Mr. Thompson's Weymouth-issued LTC was first expired. The Halifax Police Department contacted the Weymouth Police Department, but Chief Grimes refused to expire Mr. Thompson's LTC. As a result, Mr. Thompson's LTC remains subject to the restrictions of his Weymouth-issued license. AC, ¶39; Answer, ¶39.

18. On November 20, 2008, Wilson Lobao applied for a Class A LTC from Chief Champagne. On his application, Mr. Lobao stated that the reasons he requested a license were "carry to and from home to club range and boat – self protection." Joint Exhibit S, Wilson Lobao's Application for License To Carry Firearms, dated November 20, 2008. In a letter he was required to submit with his application, Mr. Lobao also stated his desire to participate in pistol and rifle teams at the Haverhill Hound Rod & Gun Club. Joint Exhibit T, William Lobao's letter to Chief Robert Champagne, undated. According to Mr. Lobao, at the time he

submitted his application, "personnel told him" that Chief Champagne "doesn't like to issue" Class A LTCs with no restrictions to first-time applicants. AC, ¶¶43-44.

19. On December 5, 2008, Chief Champagne issued Mr. Lobao a Class B LTC with the restriction of "Target & Hunting." AC, ¶45; Answer, ¶45; Joint Exhibit R, Wilson Lobao's Class B LTC, dated December 5, 2008.

20. Subsequently, Mr. Lobao spoke to Detective Peter Olson (Chief Champagne's designee) about possibly removing the restriction. Detective Olson told Mr. Lobao that he could wait and re-apply, but, generally, Chief Champagne did not like to issue unrestricted LTCs to first-time applicants. Joint Exhibit G, Plaintiffs' Answers to Chief Champagne's First Set of Interrogatories, Answer No. 10.

21. On May 14, 2012, Robert Capone applied to Chief Champagne for Class A LTC that did not carry restrictions. On his application, Mr. Capone stated that the reasons he requested an LTC were, "[f]or personal protection in and out of the house and sport and target. (Business capacity.)" Joint Exhibit I, Robert Capone's Application for License To Carry Firearms, dated May 14, 2012. On June 25, 2012, Chief Champagne issued Mr. Capone a Class A LTC with the restriction of "Target & Hunting." AC, ¶¶46-47; Answer, ¶¶46-47; Joint Exhibit H, Robert Capone's Class A License To Carry Firearms, dated June 25, 2012.

22. In December 2012, Mr. Capone contacted Detective Michael Crane by email and requested that he remove this restriction from his Class A LTC. Among other things, he offered to obtain further training. Detective Crane responded "no" and

explained: "For a first-time applicant (per policy), if it's required for employment or if you are a documented business owner with a demonstrated need, such as making morning and evening deposits." In a subsequent email exchange, Mr. Capone stated to Detective Crane, "[h]ow about I contact you after the new year for a meeting." However, Mr. Capone never did so. Joint Exhibit K, email exchange between Robert Capone and Detective Michael Crane (December, 2012).

23. Each of the plaintiffs desire to carry a handgun for the purpose of self-protection outside of their home, but for the fact that their LTCs have "Target & Hunting" restrictions. The plaintiffs fear that their LTCs would be suspended or revoked and/or that they would be fined for violating their license restrictions, as provided in Mass. Gen. L. ch. 140, §131. AC, ¶51.

24. Neither Chief Grimes nor Chief Champagne has suspended or revoked the LTCs of any of the plaintiffs – Messrs. Davis, Thompson, Lobao and Capone – nor has Chief Grimes or Chief Champagne threatened to do so. Joint Exhibits F & G, respectively, Plaintiffs' Answers to Chief Grimes's and Chief Champagne's Interrogatories, Answer No. 2.

25. Chief Grimes has issued 1,078 LTCs (as of April 17, 2013); 485 with some restriction, the majority of which are "Target & Hunting." Chief Grimes's Rule 26(a) Disclosure Statement. Joint Exhibit Y, Adam Simms's letter to David Jensen, dated April 17, 2013.

26. Chief Champagne has issued 1,633 LTCs (as of May 22, 2013); 475 carry the restriction "Target & Hunting." Joint Exhibit E, Chief Champagne's Answers to

Plaintiffs' First Set of Interrogatories, Answers No. 1 & 4.

Respectfully submitted,

| | |
|---|---|
| The Plaintiffs,<br>CHRISTOPHER DAVIS, WILLIAM J. THOMPSON, JR., WILSON LOBAO, ROBERT CAPONE, AND COMMONWEALTH SECOND AMENDMENT, INC.,<br>By their attorneys, | The Defendants,<br>RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department, and<br>ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department,<br>By their attorneys<br>**PIERCE, DAVIS & PERRITANO, LLP** |
| /s/ David D. Jensen<br>David D. Jensen,<br>David Jensen PLLC<br>111 John Street, Suite 230<br>New York, NY 10038<br>(212) 380-6615<br>david@djensenpllc.com<br>*Pro Hac Vice Attorney* | /s/ Adam Simms<br>John J. Davis, BBO #115890<br>Adam Simms, BBO #632617<br>90 Canal Street<br>Boston, MA 02114<br>(617) 350-0950<br>jdavis@piercedavis.com<br>asimms@piercedavis.com |
| And | Intervenor,<br>COMMONWEALTH OF MASSACHUSETTS, |
| /s/ Patrick M. Groulx<br>Patrick M. Groulx, Esq.<br>Polis Legal<br>P.O. Box 760656<br>Melrose, MA 02176<br>(978) 549-3124<br>pgroulx@polislegal.com | /s/ William W. Porter<br>William W. Porter, BBO #542207<br>Assistant Attorney General<br>Government Bureau<br>Office of Attorney General<br>One Ashburton Place<br>Boston MA 02108<br>(617) 727-2200<br>Bill.porter@state.ma.us |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on July 1, 2013.

/s/ Adam Simms
Adam Simms