UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
CHRISTOPHER DAVIS; WILLIAM J.               )
THOMPSON, JR.; RANDY COLE, JR.; WILSON      )
LOBAO; ROBERT CAPONE; RYAN                  )
SHAUGHNESSY; and COMMONWEALTH               )
SECOND AMENDMENT, INC.,                     )
        Plaintiffs,                         )
                                            )
    -against-                               )   CIVIL ACTION NO. 1:13-cv-10246
                                            )
RICHARD C. GRIMES, in his Official Capacity as )
Chief of the Weymouth Police Department, and )
ROBERT L. CHAMPAGNE, in his Official        )
Capacity as Chief of the Peabody Police     )
Department,                                 )
        Defendants,                         )
                                            )
    - and -                                 )
                                            )
COMMONWEALTH OF MASSACHUSETTS,              )
        Intervenor.                         )
_____)

### *REPLY* MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS RICHARD C. GRIMES AND ROBERT L. CHAMPAGNE'S MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

As the Defendants' legal position has been amply laid out in their principal Memorandum of Law and their Memorandum in Opposition to the Plaintiffs' Motion for Summary Judgment, this Reply Memorandum will be brief. The critical issue here concerns the parties' fundamentally differing views on the scope of the Supreme Court's decisions in *Heller* and *McDonald*, citations omitted. Plaintiffs maintain that, taken together, the Supreme Court's decisions in these two cases established a right to bear arms for purposes of self-protection which is not limited to the home. Plaintiffs' Memorandum in Opposition To Defendants' Motion for

Summary Judgment ("Plaintiffs' Opposition"), p. 7.  By contrast, the Defendants maintain that the Supreme Court limited the right to bear arms for self-protection to the home and, moreover, even accepting a broader interpretation as Plaintiffs urge here, the Supreme Court recognized that the Second Amendment – like other constitutional rights – is not unlimited, but subject to a number of restrictions which do not infringe the Second Amendment.  Not surprisingly, Plaintiffs maintain that the discretion afforded local chiefs of police to attach certain restrictions to a License to Carry Firearms ("LTC"), is unconstitutional.  Defendants contend that this discretion, viewed as part of Massachusetts' larger gun-licensing scheme, is constitutionally sound.

## ARGUMENT

The Defendants start with the operative provisions of the law.  In relevant part, M.G.L. c. 140, §131(a)&(b), provides that, "[a]ll (firearms) licenses shall be designated Class A or Class B, and the issuance and possession of any such license shall be subject to the following conditions and restrictions" including such "restrictions as [the licensing authority] deems proper" (Class A LTC) or "subject to such restrictions . . . as the licensing authority deems proper" (Class B LTC). Plaintiffs maintain that the "Target & Hunting" restriction imposed on their LTCs violates their Second Amendment right to carry (concealed or unconcealed) outside of the home and, also, results in "a mere rationing system" which is not sufficiently related to the State's interests in public safety, limiting gun-related violence, and the like. Plaintiffs' Opposition, p. 20.

Presumably, at least with respect to their Second Amendment claim, it is Plaintiffs' view that *any* restriction which limits their "right to carry" outside of the home, is unconstitutional.  In this regard, the "options" suggested by Plaintiffs are somewhat of a red-herring because they both pre-suppose an unfettered right to carry firearms outside of the home.  *See* Plaintiffs'

Summary Judgment ("Plaintiffs' Opposition"), p. 7.  By contrast, the Defendants maintain that the Supreme Court limited the right to bear arms for self-protection to the home and, moreover, even accepting a broader interpretation as Plaintiffs urge here, the Supreme Court recognized that the Second Amendment – like other constitutional rights – is not unlimited, but subject to a number of restrictions which do not infringe the Second Amendment.  Not surprisingly, Plaintiffs maintain that the discretion afforded local chiefs of police to attach certain restrictions to a License to Carry Firearms ("LTC"), is unconstitutional.  Defendants contend that this discretion, viewed as part of Massachusetts' larger gun-licensing scheme, is constitutionally sound.

## ARGUMENT

The Defendants start with the operative provisions of the law.  In relevant part, M.G.L. c. 140, §131(a)&(b), provides that, "[a]ll (firearms) licenses shall be designated Class A or Class B, and the issuance and possession of any such license shall be subject to the following conditions and restrictions" including such "restrictions as [the licensing authority] deems proper" (Class A LTC) or "subject to such restrictions . . . as the licensing authority deems proper" (Class B LTC). Plaintiffs maintain that the "Target & Hunting" restriction imposed on their LTCs violates their Second Amendment right to carry (concealed or unconcealed) outside of the home and, also, results in "a mere rationing system" which is not sufficiently related to the State's interests in public safety, limiting gun-related violence, and the like. Plaintiffs' Opposition, p. 20.

Presumably, at least with respect to their Second Amendment claim, it is Plaintiffs' view that *any* restriction which limits their "right to carry" outside of the home, is unconstitutional.  In this regard, the "options" suggested by Plaintiffs are somewhat of a red-herring because they both pre-suppose an unfettered right to carry firearms outside of the home.  *See* Plaintiffs'

Opposition, p. 11 ("The LTCs that Plaintiffs sought from Defendants are not 'concealed carry' licenses – rather, they are licenses needed to lawfully possess or carry handguns in any form."). Hence, it is correct that police chiefs can issue a Class B LTC, which does not allow the licensee to carry a concealed weapon, but does allow him to carry a gun in open view. Likewise, police chiefs can impose a license restriction of "No Concealed Carry" on a Class A LTC which, effectively, would turn a Class A LTC into a Class B LTC, except that the holder could still openly carry a "high capacity" firearm. Of course, this would likely create the very sort of "public alarm" that the Defendants have sought to avoid by issuing an LTC with a "Target & Hunting" or "Employment" restriction. *See Bonidy v. United States Postal Service*, 2013 WL 3448130, at \*6 (D. Colorado, July 9, 2013); *Firearms Records Bureau v. Simkin*, __ Mass. __ \*6 (SJC No. 11295, August 8, 2013)("[n]ext, we suspect that the average Massachusetts resident may become 'alarmed' on learning that someone other than a law enforcement is carrying concealed weapons in his or her presence. However, Simkin is not responsible for alarm caused to others by his mere carrying of concealed weapons pursuant to a license permitting him to do exactly that.").[1]

Plaintiffs maintain that they are not seeking a right to carry guns "wherever they want, whenever they want" as Defendants suggest, but, instead, "seek the right to bear arms in *some* manner, and to do so in the non-sensitive places that the laws of Massachusetts otherwise allow." Plaintiffs' Opposition, p. 1 (emphasis in original). Of course, Defendants never meant to suggest that Plaintiffs intended (or were seeking a court order to allow them), to carry guns in places

---

[1] The Court made a similar observation in *Bonidy* noting that "the presence of an individual openly carrying a firearm may excite passions, or excited passions may lead to the use of the firearm." *Bonidy, supra*, \*6. In *Bonidy*, the Court upheld a USPS regulation which prohibits one from bringing a firearm *into* the post office (deeming it a "sensitive place"), but found the same regulation unconstitutional as applied to the carrying of firearms in the parking lot immediately *outside* of the post office (not a "sensitive place").

prohibited by federal or state law.  Still, outside of those places where carrying a gun is prohibited by law, for all intents and purposes, Plaintiffs *are* seeking an order allowing them to carry a gun "in some manner" anywhere else, without restriction.  To date, only the Seventh Circuit in *Madigan v. Moore* and, more recently, the District of Colorado in *Bonidy*, citations omitted, have held that the Second Amendment protects the right to openly carry firearms outside of the home, ". . . subject to such restrictions as may be reasonably related to public safety."  *Bonidy, supra*, *3.  By contrast, three other appellate courts have held that the "right" to carry a gun outside of the home, if any, is far more restrictive than that which Plaintiffs advocate here.  *See Woollard v. Gallagher*, 712 F.3d 865, 881 (4th Cir. 2013); *Peterson v. Martinez,* 707 F.3d 1197, 1208-09 (10th Cir. 2013); *Kachalsky v. County of Westchester*, 701 F.3d 81, 98 (2d Cir. 2012).  More recently, the Third Circuit observed that, "[i]t remains unsettled whether the individual right to bear arms for the purpose of self-defense extends beyond the home." *Drake v. Filko*, _ F.3d _, 2013 WL 3927735, at *3 (No. 12-1150, July 31, 2013) ("Filko").  Without deciding this issue directly, the Third Circuit held that even if some right to carry a gun exists outside of the home, New Jersey's requirement that gun license applicants demonstrate a "justifiable need" to publicly carry a handgun for self-defense qualifies as a "presumptively lawful," "longstanding" regulation and, therefore, "does not burden conduct within the scope of the Second Amendment's guarantee."  *Id.*, at *4.  Of particular interest is the Third Circuit's comments about the absence of any legislative history or statistical information to support the New Jersey Legislature's conclusion that the "justifiable need" requirement would further its "substantial public safety interest, notwithstanding the potential burden on Second Amendment rights . . . .".  *Id.*, at *8.  In this regard, the Court stated as follows:

> New Jersey's inability to muster legislative history indicating what reports, statistical information, and other studies its legislature pondered when it

concluded that requiring handgun permit applicants to demonstrate a "justifiable need" would reasonably further its substantial public safety interest, notwithstanding the potential burden on Second Amendment rights, is unsurprising . . . To require applicants to demonstrate a "justifiable need" is a reasonable implementation of New Jersey's substantial, indeed critical, interest in public safety. *See IMS Health, Inc. v. Ayotte*, 550 F.3d 42, 55 (1st Cir. 2008) (explaining that under intermediate scrutiny states are "allowed to justify speech restrictions by reference to studies and anecdotes," and also by reference to "history, consensus, and common sense") (internal quotation marks omitted), abrogated on other grounds by ___ U.S. ____, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011).

*Id.,* at *8. The Court concluded by observing that the "justifiable need" standard results in "individualized consideration" of each person's circumstances and his or her objective, rather than subjective, need to carry a handgun in public. This measured approach neither bans public handgun carrying nor allows public carrying by all firearm owners [sic]." *Id.*, at *10.

The gun licensing scheme with which Plaintiffs take issue here does no more. It does not result in certain persons becoming "privileged members of [their] communities" nor is it an example of "naked discretion" in the Chiefs' favor. Plaintiffs' Memorandum, pp. 16-18.[2] This is because, unlike Plaintiffs, the Chiefs do not start with the presumption that unless one is statutorily disqualified, there is a "right" to possess a Class A LTC without any restriction.[3] For first-time applicants who have demonstrated a proficiency with guns (*e.g.*, prior or current

---

[2] Plaintiffs' reliance on *N.Y. City Transit Authority v. Beazer,* 440 U.S. 568 (1979), Plaintiffs' Opposition, p. 16, is misplaced. In *Beazer,* the Supreme Court rejected an Equal Protection challenge to a N.Y. City Transit Authority rule which prohibited the N.Y. City Transit Authority from employing anyone who was currently using methadone. While the Transit Authority's rule was perhaps broader than necessary to screen out those methadone users not qualified to work for the Transit Authority, the "special classification created by the Transit Authority's rule serves the general objectives of safety and efficiency . . . under these circumstances, it is of no constitutional significance that the degree of rationality is not as great with respect to certain ill-defined subparts of the classification as it is with respect to the classifications as a whole." *Beazer*, 440 U.S. at 592-593 (internal citations omitted).

[3] Indeed, Circuit Judge Hardiman noted in his opinion in *Filko*, Massachusetts is one of eight states that have a "may-issue" gun licensing regime. *Filko, supra*, at 11 & n.5 (dissent).

military and law enforcement members), and for those who demonstrate a specific need (*e.g.,* a current threat to one's safety or one whose livelihood involves large amounts of cash), Chief Grimes and Chief Champagne will issue an unrestricted Class A LTC.  And, both Chief Grimes and Chief Champagne will re-visit any restrictions imposed on a first-time applicant where that person has a change of circumstance which warrants that it be revisited, such as, for example, a new job with a security agency.  That other police chiefs may take a different approach and may not impose any such restrictions does not mean that the policy of Chief Grimes and Chief Champagne is not related to public safety as Plaintiffs' contend.  Plaintiffs' Opposition, p. 16.  Again, as Circuit Judge Hardiman noted in his dissent in *Filko*, "[a]s befits a diverse nation of fifty sovereign states and countless municipalities, gun regulation in the United States resembles a patchwork quilt that largely reflects local custom."  *Filko, supra,* at *10.

The Massachusetts Legislature has vested local police chiefs with the authority and discretion to make these gun-licensing decisions.  That this results in some "patchwork quilt" within Massachusetts does not mean that Section 131 is unconstitutional on its face or as applied by Chief Grimes and Chief Champagne.  What Plaintiffs view as "unfettered discretion," the Massachusetts Legislature views as sound public policy.[4]  In this regard, it is true that the Supreme Court "has consistently condemned licensing systems which vest in an administrative

---

[4] Plaintiffs' Equal Protection claim also appears to be based on their claim that the discretion afforded local police chiefs, at least as applied by Chiefs Davis and Champagne, has a disparate impact on first-time applicants who are seeking an unrestricted Class A LTC.  Plaintiffs' Opposition, pp. 14-16.  Even if this is true, however, a showing of disparate impact alone does not make out an Equal Protection claim; instead, a showing that the impact is traceable to a discriminatory purpose is required.  *See Personnel Admin'r. v. Feeney,* 442 U.S. 256, 272-74 (1979); *see also, McGuire v. Reilly*, 386 F.3d 45, 63 (1st Cir. 2004) (rejecting Equal Protection challenge to Massachusetts' "buffer zone" law and observing "[t]he fact that one side of the abortion debate might suffer some incidental adverse effects or burdens [does] not defeat the statute's constitutionality.").  Plaintiffs have not alleged that Chapter 140 was enacted with the purpose of discriminating against any particular group, nor set forth any facts which support that conclusion.

official discretion to grant or withhold a permit upon broad criteria *unrelated* to proper regulation of public places." Plaintiffs' Opposition, p. 18 citing *Shuttlesworth v. Birmingham*, 394 U.S. 147, 153 (1969)(emphasis added).[5]  Here, by contrast, the Legislature has included specific criteria for persons who are statutorily exempt from obtaining any LTC and, in addition, left to local officials whether to impose any restrictions on those to whom they issue an LTC.  In Massachusetts, there in nothing new about this kind of licensing regime and local municipal officials have long been delegated such authority, even with respect to licensing schemes that involve one's constitutional rights and including the "discretion" to favor town residents over non-town residents. *See, e.g., Commonwealth v. Hilton*, 174 Mass. 29, 31-33 (1899)(fish and shellfish are natural resources of the citizens of Massachusetts and each community therein; but leaving to local officials the discretion to issue fishing permits and providing that permits shall be granted only to inhabitants of the local municipality).  Furthermore, the "naked discretion" with which Plaintiffs take issue is subject to judicial review, M.G.L. c. 140, §131(f), an avenue of recourse which Plaintiffs did not pursue.

---

[5] Of course, the cases cited by Plaintiffs in support of their "unbridled discretion" argument, either involved a form of prior restraint, *FW/PBS, Inc. v. City of Dallas*, or involved licensing schemes that were designed <u>to prevent</u> African Americans from exercising their First Amendment rights and their right to vote, *see Louisiana v. United States, Cox v. Louisiana and Shuttlesworth v. Birmingham.* Plaintiffs' Opposition, p. 18 (citations omitted).  Any further comparison of the Legislative intent in those cases and the Massachusetts Legislature's intent in passing Chapter 140, is really unnecessary.

official discretion to grant or withhold a permit upon broad criteria *unrelated* to proper regulation of public places." Plaintiffs' Opposition, p. 18 citing *Shuttlesworth v. Birmingham*, 394 U.S. 147, 153 (1969)(emphasis added).[5]  Here, by contrast, the Legislature has included specific criteria for persons who are statutorily exempt from obtaining any LTC and, in addition, left to local officials whether to impose any restrictions on those to whom they issue an LTC.  In Massachusetts, there in nothing new about this kind of licensing regime and local municipal officials have long been delegated such authority, even with respect to licensing schemes that involve one's constitutional rights and including the "discretion" to favor town residents over non-town residents. *See, e.g., Commonwealth v. Hilton*, 174 Mass. 29, 31-33 (1899)(fish and shellfish are natural resources of the citizens of Massachusetts and each community therein; but leaving to local officials the discretion to issue fishing permits and providing that permits shall be granted only to inhabitants of the local municipality).  Furthermore, the "naked discretion" with which Plaintiffs take issue is subject to judicial review, M.G.L. c. 140, §131(f), an avenue of recourse which Plaintiffs did not pursue.

---

[5] Of course, the cases cited by Plaintiffs in support of their "unbridled discretion" argument, either involved a form of prior restraint, *FW/PBS, Inc. v. City of Dallas*, or involved licensing schemes that were designed <u>to prevent</u> African Americans from exercising their First Amendment rights and their right to vote, *see Louisiana v. United States, Cox v. Louisiana and Shuttlesworth v. Birmingham.*  Plaintiffs' Opposition, p. 18 (citations omitted).  Any further comparison of the Legislative intent in those cases and the Massachusetts Legislature's intent in passing Chapter 140, is really unnecessary.

## CONCLUSION

WHEREFORE, together with the arguments contained in their principal Memorandum of Law, Defendants respectfully request that this Court allow their Motion for Summary Judgment.

> Respectfully submitted,
>
> The Defendants,
> RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department, and
> ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department,
> By their attorneys
> **PIERCE, DAVIS & PERRITANO, LLP**
>
> /s/ Adam Simms
> John J. Davis, BBO #115890
> Adam Simms, BBO #632617
> 90 Canal Street
> Boston, MA 02114
> (617) 350-0950
> jdavis@piercedavis.com
> asimms@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on August 13, 2013.

> /s/ Adam Simms
> Adam Simms