BRISTOL, SS SUPERIOR COURT Case 1:13-cv-10246-FDS  Document 70-1  Filed 02/18/14  Page 1 of 14
FILED

JAN 2 7 2014

MARC J. SANTOS, ESQ.
CLERK MAGISTRATE
BRISTOL, ss.

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: BRCV2013-0626-A

JONATHAN M. HILL,
Plaintiff,

vs.

DAVID A PROVENCHER, in his Official Capacity
As Chief of Police of the City of New Bedford, and
JUSTICES OF THE NEW BEDFORD DISTRICT COURT
DEPARTMENT OF THE TRIAL COURT,
Defendants.

## MEMORANDUM OF DECISION AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

The present action was filed by Jonathan M. Hill ("Hill"), pursuant to G.L. c. 249, § 4, and

G.L. c. 231A, § 1. Hill's complaint challenges a determination made by the Chief of Police for the

City of New Bedford (the "Chief") dated July 22, 2011, that Hill is an "unsuitable person" to hold

a license to carry a firearm, which determination was upheld by a decision of a District Court judge,

dated December 5, 2012.[1]

Hill seeks declaratory relief in the form of a determination, pursuant to G.L. c. 231A, § 1, that

the standard applied by the District Court judge in reviewing the decision of the Chief was improper

in light of the United States Supreme Court's decisions in District of Columbia v. Heller, 554 U.S.

570 (2008), which held that the Second Amendment guaranteed an individual the right to keep and

bear firearms in one's own home for the purpose of self defense, and McDonald v. Chicago, 130 S.

Ct. 3020 (2010), in which the Court concluded that the Second Amendment is fully applicable to the

---

[1] Such decision issued after an evidentiary hearing pursuant to G.L. c. 140, § 131.

states.

On June 26, 2013, a single justice of the Supreme Judicial Court, issued an Order of Transfer, pursuant to G.L. c. 211, § 4A, transferring the subject petition to the Superior Court for such further proceedings as may be required.

On November 19, 2013, the parties were heard on Hill's motion for judgment on the pleadings, and the matter was taken under advisement.

## BACKGROUND

The following undisputed facts are taken from the administrative record. On February 21, 2011, Hill, age forty-six (46), applied for a Class A license to carry a firearm. *See Administrative Record at p. 153 ("R-153").*

In responding to a question on the application as to whether he had ever appeared as a defendant in any criminal offense, he stated:

> "There were 14 arrests, all of which involved non-violent civil disobediance [*sic*] actions at abortion centers. I have never used violence in my pro-life or political activities. Please see the Department of Defense attachment, sections 1.a through n for the details."

In stating his reason for requesting the issuance of the license, Hill stated,

> "For all lawful purposes, especially protection of myself, home, family and business. I am in and out of my business daily with large amounts of cash. There were two serious incidents last year, including armed robbery."

Attached to the application was correspondence to Hill from the Department of Defense relating to potential security clearance, and referencing fourteen incidents taking place between January 25, 1988, through February 9, 1990, involving charges for trespassing, disorderly conduct, disturbing the peace, failure to move, and assault and battery. The only guilty findings noted were a fifty dollar ($50.00) fine, with unsupervised probation in connection with the trespassing charge,

2

six months probation on a nolo contendere plea on a charge of failure to move, and a three day

House of Correction sentence for trespass. (*R-156, 157*).

By letter dated July 22, 2011, the Chief denied Hill's application for a license to carry. The

letter stated, inter alia,

> "The reason(s) for this denial is:
>
> ☑  you are deemed to be an unsuitable person with regards to this application
> for the following reason:
>
> Due to your past criminal history and several 'open' cases on your Board of
> Probation. Specifically, the open Assault & Battery charge out of Dedham
> Court.;
>
> ☑  you completed the application form untruthfully;
>
> ☑  you failed to complete the application form;"

Hill timely filed a petition for review of the aforesaid determination with the Third District

Court of Bristol County, pursuant to G.L. c. 140, § 131. During the pendency of said action, Hill

served interrogatories upon the Chief, which were answered under oath. In responding to

Interrogatory No. 3, seeking the source of the information used in denying the application, the Chief

stated,

> "All decisions were made based on computer generated, past report documentation,
> including submitted application, the Plaintiff's Board of Probation, State Fingerprint
> Cards of documented arrest."

In response to Interrogatory No. 5 asking the Chief to identify what part of the application for a

license to carry he claimed Hill failed to complete, the Chief stated, "[p]laintiff did not list Assault

and Battery charge out of Brookline Police Department on December 9, 1989."[2]

With respect to Interrogatory No. 6 asking that the Chief identify in detail what part of the

---

[2] This incident is clearly referenced in the attachment provided by Hill incidental to the application.

3

application he claims was filled out untruthfully, and why he [the Chief] stated it was untruthful, the Chief responded, "[p]laintiff did not list Assault and Battery charge out of Brookline Police Department on December 9, 1989. Plaintiff has over (27) charges on Board of Probation."[3]

A hearing was held before a justice of the District Court. A full transcript of the proceeding is contained in the administrative record. At hearing, Hill argued that case law, prior to Heller, was based upon the assumption that there was no Second Amendment right to bear arms, and hence, a petitioner was held to a standard requiring that he establish that the Chief was arbitrary and capricious in denial of a license to carry. Hill therefore argued that the burden should be on the licensing authority to demonstrate why an applicant should not be licensed.

In addressing the District Court judge, Hill's counsel made various factual representations Which the Chief's counsel agreed were accurate.. *See Transcript at p. 21 ("TR-21").*

Upon further inquiry by the court, counsel for the Chief agreed that the facts, as represented, were deemed to be a stipulation of such facts. *(TR-25)*. The facts as stipulated are hereinafter summarized. While Hill was in college, he was involved in picketing activity which resulted in approximately nine arrests, most of which were for trespassing. With the exception of the three misdemeanor convictions, all other charges were nol prossed, resulted in not guilty findings or were continued without a finding.

Hill is, by degree, an engineer. In an application for security clearance, Hill received the aforementioned report which he believed to be the most complete listing of his prior encounters with the law, and hence, he attached the same to his application for a license to carry. When the Chief

---

[3] As hereinafter referenced, it is clear that the statement that there were over twenty-seven (27) "Board of Probation matters," is inaccurate in light of the fact that Hill had taken advantage of his right to a trial before a jury of six, pursuant to the former de novo system, and hence, the jury of six matters were not new matters.

4

challenged the accuracy of Hill's disclosure, Hill did a CORI check which revealed that two matters

had remained open because of two small fines which remained unpaid. The CORI check revealed

that the charge of assault and battery was continued without a finding before a jury of six session in

Dedham. (*R-160*). Hill paid the subject fines, and hence, all matters were closed out. As previously

stated, Hill had only two convictions for trespassing, and a conviction for failure to move, which

were misdemeanors that did not disqualify him from being licensed. The Chief's counsel stated to

the District Court judge that Hill had an assault and battery on his record, ". . . with an admission .

. . ," and that such an admission did not constitute ". . . non-violent civil disobedience, and I think

that's what the City took issue with on his application." (*TR-23*). The circumstances surrounding

the assault and battery were undisputed and explained on the record. Hill was at a demonstration

and was pushed from behind, causing him to fall forward and come in contact with a police officer.

He immediately apologized to the officer, however the touching resulted in the filing of the subject

charge.[4]

Hill operates the largest coin-operated laundromat in the city of New Bedford. He is

required to keep large sums of cash in the business. There are machines on the premises which make

change and which combined contain up to $5,000.00 in cash. He is frequently required to transfer

cash to and from the business both night and day, seven days a week. Hill's testimony recounted

various instances of serious crime within the immediate area of his business, and also at his

laundromat, which include an attendant being held up at gunpoint, and locked in the basement. Also,

the record reveals that Hill has attempted to assist police in identifying an individual engaged in an

---

[4] Even if Hill were convicted of the subject assault and battery, on the stipulated facts it would not qualify
as a "violent crime" under G.L. c. 140, § 121. See Commonwealth v. Eberhart, 461 Mass. 809, 814 (2012).

assault with a knife, on his premises, which has resulted in him being threatened, and which threat

resulted in a criminal prosecution against the alleged perpetrator. *(TR-27-30).*

In the District Court's decision affirming the denial of the subject license, the court noted in

response to Hill's Second Amendment arguments:

> "However plausible Hill's argument might be, the state of the law in this
> Commonwealth regarding such petitions as this one has not been altered by the
> Legislature, by the Appeals Court or by the Supreme Judicial Court, and it is not for this
> Court to implement any such transformative changes to a statutory scheme interpreted
> numerous times by our appellate courts. This Court is therefore compelled to decide this
> case on the basis of the law as it exists in this Commonwealth at this time." *(R-31).*

The District Court judge further stated that based upon the facts adduced at the evidentiary

hearing, he was to determine whether there were reasonable grounds for the Chief denying Hill's

license, and that the refusal was not arbitrary, capricious, or an abuse of discretion. He noted that

Hill bore the burden of showing that he was a proper person to hold a license to carry, and that the

Chief had considerable latitude in determining whether Hill, as an applicant, was a "suitable person"

to hold a license. The District Court judge further stated that with respect to Hill's old charges:

> "To the extent any of the cases lived beyond 1991, it was apparently only because Hill
> had not paid some monies owing, a fact of which he was unaware and a circumstance
> that he rectified as soon as the matters came to his attention. The age of the cases, and
> the fact that one or two might have remained 'open' only because of some unpaid
> monies, might affect their weight, but it is not for this Court – however a close call this
> case might present - - to second-guess the Chief's determination, in the exercise of his
> broad discretion, that Hill presented to the licensing authority as an unsuitable candidate
> for an LTC." This Court cannot conclude that the Chief's denial of Hill's LTC
> application was arbitrary, capricious, or an abuse of discretion; or that there was *no*
> reasonable ground for that denial. That another licensing authority, or this Court, might
> have differently exercised the broad discretion conferred upon by the Chief by the statute
> is irrelevant." *(R-34).*

6

## DISCUSSION

### The Applicable Standard of Review

The District Court judge correctly stated the standard of review which governed his consideration of the Chief's order, at least prior to the Heller and McDonald decisions. That standard provides that the District Court judge could grant relief if the court finds, ". . . there was no reasonable ground for denying, suspending, or revoking such license, and that the petitioner is not prohibited by law from possessing same." The statute requires that the applicant make a showing that the licensing authority's refusal to grant or renew the license was "arbitrary, capricious, or an abuse of discretion." Godfrey v. Chief of Police of Wellesley, 35 Mass. App. Ct. 42, 46 (1993).

The Chief argues that the aforesaid burden was not met by Hill, and that both Heller and McDonald do not impact the licensing authority's consideration of an application under our licensing statute. In support thereof, the Chief cites Commonwealth v. Loadholt, 460 Mass. 723 (2011). A review of Loadholt reveals that such case does not resolve the issue of the constitutionality of our licensing statute. Loadholt was arrested and charged for unlawful possession of a firearm and ammunition without an FID card in violation of G.L. c. 269, § 10 (h) (1). He claimed that this arrest violated his right to keep and bear arms guaranteed by the Second Amendment, and that such right obviated the requirement that he apply for and obtain an FID card. The Court noted that while Heller identified an individual's right to bear arms, it stated that said right is limited in scope, and that the Second Amendment does not prohibit laws regulating who may possess and carry firearms, or purchase them, or where they may be carried. The Court cited the off-quoted language of Heller that:

> "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill,

7

> or laws forbidding the carrying of firearms in sensitive places such as schools and
> government buildings, or laws imposing conditions and qualifications on the
> commercial sale of arms."

Commonwealth v. Loadholt, Id. at 726, citing District of Columbia v. Heller, 554 U.S. 570, 627

n.26 (2008).

The Supreme Judicial Court, in Loadholt, further stated, "thus, the requirement of 'prior

approval by a government officer,' or a licensing system, does not **by itself** render the statute

unconstitutional on its face." (emphasis added). Loadholt, Id. at 726. The Court further stated:

> "The decision of the defendant not to assert an as-applied challenge in this case does not
> escape us. During oral argument, the Commonwealth pointed out that because the
> defendant is a felon, had he attempted to apply for an FID card, his criminal history
> would have disqualified him. Because the Court has expressly approved of this type of
> disqualification, an as-applied challenge in these circumstances would not be
> successful."

Id. at 726 n.7.

In the case at bar, Hill argues that the Chief is subject to a heightened standard in seeking to

justify the declination of a license to carry a firearm and that even under the standard that existed

prior to the holding in Heller, the refusal to grant the subject license was arbitrary and capricious.

He further argues that applying a heightened standard in the review of the Chief's denial of Hill's

application mandates a finding that the statute is unconstitutional insofar as it was applied to Hill.

Since the Heller and McDonald decisions, this court has not found a decision by an appellate

court dealing directly with the constitutionality of G.L. c. 140, § 131, in the context of the denial of

an application for a license to carry. There have been multiple cases in criminal prosecution of

defendants for firearms violations ,in which defendants have challenged the constitutionality of such

prosecutions in light of Heller and McDonald.  In Commonwealth v. McGowan, 464 Mass. 232

8

(2013), the court upheld a conviction of the defendant for failing to properly store and secure a firearm in violation of G.L. c. 140, § 131L (a). The defendant challenged the constitutionality of said statute based upon the holdings in Heller and McDonald. The Supreme Judicial Court noted that the Supreme Court, in Heller, made clear that the Second Amendment right is not unlimited, citing Heller, supra at 595, 128 S. Ct. 2783 (2008). The Supreme Judicial Court cited the language in Heller upholding longstanding prohibitions relating to firearms by felons and mentally ill persons and stated such language was qualified by the court which stated, "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Heller, Id. at 627 n.26, 128 S. Ct. 2783; Commonwealth v. McGowan, supra at 237.  In McGowan, the Court commented that under Heller, a law that infringes on the right to bear arms in self-defense, within the scope of the Second Amendment, is subject to some level of heightened scrutiny, and that the Supreme Court rejected the notion that a "rational basis" scrutiny would suffice. Id. at 237, citing Heller, supra at 628 n.27, 128 S. Ct. 2783. The Court, in McGowan, further commented that the Heller court did not identify precisely what level of heightened scrutiny is appropriate in light of the fact that District of Columbia's outright ban on handguns in the home would fail under any level of security.

The Supreme Judicial Court discussed the willingness of the Supreme Court to characterize some longstanding limitations on the right to bear arms, such as the prohibition of the possession of firearms by felons and the mentally ill, and the regulation of the commercial sale of arms as "presumptively lawful," without subjecting these laws to heightened scrutiny, or identifying the level of heightened security that would apply. The court stated that such laws would be presumptively lawful only if they fell outside the scope of the Second Amendment, and therefore were not subject

9

to heightened scrutiny.  McGowan, supra at 238. The Court went on to consider a list of circumstances under which certain regulations of firearms would be "presumptively lawful," whether or not they were longstanding, or predated the Second Amendment.

The court now turns to the Commonwealth's licensing statute as contained in G.L. c. 140, § 131, which, under §§ (d), provides, inter alia, for the issuance of a Class A license to carry firearms,

> ". . . if it appears that the applicant is a suitable person to be issued such license, and that the applicant has good reason to fear injury to his person or property, or for any other reason, including the carrying of firearms for use in sport or target practice only, subject to such restrictions expressed or authorized under this section, unless the applicant:
>
> (i) has, in any state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of (a) a felony; (b) a misdemeanor punishable by imprisonment for more than two years; (c) a violent crime as defined in section 121; (d) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; or (e) a violation of any law regulating the use, possession or sale of controlled substances as defined in section 1 of chapter 94C;
>
> (ii) has been confined to any hospital or institution for mental illness . . . ;
>
> (iii) is or has been under treatment for or confinement for drug addiction or habitual drunkenness, unless such applicant is deemed to be cured of such condition . . . ;
>
> (iv) is at the time of the application less than 21 years of age;
>
> (v) is an alien;
>
> (vi) is currently subject to: (A) an order for suspension or surrender issued pursuant to section 3B or 3C of chapter 209A or a similar order issued by another jurisdiction; or (B) a permanent or temporary protection order issued pursuant to chapter 209A or a similar order issued by another jurisdiction; or
>
> (vii) is currently the subject of an outstanding arrest warrant in any state or federal jurisdiction."

The statute authorizes various checks into a criminal  and mental health background of

10

applicants and a determination whether or not the possession of the firearm would violate state or federal law.

The court can assume, for the purposes of this case, that the above-referenced, precisely defined, exclusionary circumstances would constitute presumptively lawful regulatory measures. The more difficult question relates to the attempted exclusion of Hill as not being suitable for the issuance of a license to carry a firearm based upon what appears to be a misreading by the Chief of the application submitted by Hill. Clearly, Hill does not fit within any of the defined exclusions for an individual seeking a license to carry, nor is he a convicted felon which would preclude licensing under federal law. Thus, the court finds that the denial by the Chief of a license to carry in the circumstances in the case at bar is subject to a heightened scrutiny since the refusal under the statute, trenches upon Hill's Second Amendment rights. Unites States of America v. Booker, 644 F.3d 12, 22 (2011), citing Heller, 554 U.S. at 574-575.

This court must apply at least some level of heightened scrutiny in reviewing the Chief's determination of unsuitability based upon criteria not specifically defined in the statute, and certainly not upon a presumptively lawful regulatory measure.[5]

In the case at bar, the facts presented by Hill were undisputed, and demonstrate that any minor inaccuracies in his application were de minimus. The Chief's response to interrogatories that the application was not complete for failure to list an assault and battery charge is inaccurate in light of the fact that said charge was listed on a document provided and attached to the application.

---

[5] The Chief does not argue that the criteria relied upon by him in denying Hill's application constitutes a presumptively regulatory measure. It is clear that, at the very least, a showing beyond the "rational basis test" would be required to support the adoption of a new categorical limit to the Second Amendment. Any type of categorical ban on gun ownership by a class of individuals must be supported by some form of "strong showing necessitating a substantial relationship between the restriction and an important governmental objective." Unites States v. Booker, supra at 14-15, citing United States v. Skoien, 614 F.3d 638, 640-641 (2010); Heller, 554 U.S. at 628 n.27.

11

Furthermore, the Chief's statement in his answer to interrogatory number six is incorrect in that he claims that Hill had over twenty-seven (27) charges on his record. It is further undisputed that the facts underlying the subject charges against Hill were based upon non-violent protests, and that the circumstances involving the assault and battery charge involved inadvertent contact, with the complaint ultimately being dismissed. Furthermore, there are undisputed compelling circumstances set forth in the record which demonstrate a legitimate basis for the subject request. Those circumstances include Hill's operation of a cash business in a high crime area, which business has previously been victimized by an armed intruder. Furthermore, it would appear that his fears are legitimate in light of his continued transportation of cash to and from the business throughout the week.

In Moore v. Madigan, 702 F.3d 933 (7th Cir. 2012), the Seventh Circuit declared unconstitutional an Illinois law forbidding, with the exception of various specified persons, the carrying of a loaded weapon in a public place. The court, in its analysis of Heller and McDonald, referenced the Supreme Court's historical analysis of the Second Amendment which included the explicitly protected right to keep arms for defense of self, family and property. While the court noted that such need was most acute in the home, it concluded that it did not mean it is not acute outside the home, and that Heller repeatedly invoked a broader Second Amendment right than the right to have a gun in one's home, citing Heller's reference that the Second Amendment guarantees individuals the right to possess and carry weapons in case of confrontation. Madigan, Id. at 935-936, citing Heller, supra at 592. The court observed that Illinois is the only state to have a flat ban on carrying weapons outside of the home. In striking down the statute, the Seventh Circuit stated:

"Apart from the usual prohibitions of gun ownership by children, felons, illegal aliens,

12

lunatics, and in sensitive places such as public schools, the propriety of which was not questioned by Heller (nothing in this opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools in government buildings." Heller, 554 U.S. at 626, 128 S. Ct. 2783) Some states sensibly require that an applicant for a handgun permit establish his competence in handling firearms . . . ."

Madigan, supra at 940-941.[6]

The Seventh Circuit, in striking down the aforesaid statute, further concluded that the Second Amendment confers a right to bear arms for self-defense which is as important outside the home as inside, and that theoretical and empirical evidence (which overall is inconclusive) is consistent with concluding that the right to carry firearms in public may promote self-defense. "Illinois had to provide us with more than merely a rational basis for believing that its uniquely sweeping ban is justified by an increase in public safety. It has failed to meet this burden." Madigan, Id. at 942.

## CONCLUSION

While the case law continues to evolve relating to the scope of the Second Amendment, this court concludes that, at the very least, a degree of heightened scrutiny is required in evaluating the statute as applied by the Chief in his denial of a license to carry to Hill.

In the context of the stipulated facts, the court finds that the record clearly fails to establish, even a rational basis for declining the subject permit, let alone facts sufficient to meet a heightened scrutiny standard. The court therefore finds that the Chief's application of G.L. c. 140, § 131, to Hill's application for a license to carry violated his constitutional right to bear arms pursuant to the Second Amendment of the United States Constitution.

Furthermore, the court finds that, even when applying the standard of review referenced in

---

[6] There is no challenge in this action to Hill's competence to handle a firearm. The record contains a Firearms Safety Certificate issued by the Massachusetts State Police on February 11, 2011, relating to the use of a basic pistol. (R-151).

Godfrey v. Chief of Police of Wellesley, 35 Mass. App. Ct. 42 (1993), the record establishes that the refusal was arbitrary, capricious, and an abuse of discretion.

## ORDER

For the foregoing reasons, it is **ORDERED** that the petition for relief under G.L. c. 249, § 4, be and is hereby **ALLOWED**, and the decision of the Chief of Police declining to issue the subject license to carry is hereby **VACATED**.

By the Court,

Richard T. Moses
Justice of the Superior Court

DATED: January 27, 2014

14