UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; WILSON LOBAO; ROBERT CAPONE; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; and ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department, <br><br> Defendants, <br><br> -and- <br><br> COMMONWEALTH OF MASSACHUSETTS, <br><br> Intervenor. | CIVIL ACTION NO. <br><br> 1:13-cv-10246 |

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**

-i-

## TABLE OF CONTENTS

**(I)   THERE IS NO SUBSTANTIAL UNCERTAINTY BECAUSE § 131 EXPRESSLY AUTHORIZES DEFENDANTS' RESTRICTION POLICIES** ........................................................... 3

   A.   Ruggiero does not limit the power to impose restrictions ................................... 4

   B.   Even if Ruggiero did limit the power to impose restrictions, the Legislature eliminated this limitation when it added the "deems proper" language 14 years later .......................... 7

   C.   There is No State-Law Entitlement to a License to Carry—for Self-Defense, or for Any Other Purpose ..................................................................................... 8

**(II)   ABSTENTION IS NOT LIKELY TO AVOID THE CONSTITUTIONAL QUESTION** ..................... 9

**(III)   THERE IS NO APPARENT NEED FOR FURTHER DISCOVERY** ........................................... 13

**CONCLUSION** ............................................................................................................. 14

**TABLE OF AUTHORITIES**

**CASES**

Atwater v. Chester, 730 F.3d 58 (1st Cir. 2013) .................................................................. 2

Baggett v. Bullitt, 377 U.S. 360 (1964) ................................................................................ 3

Barr v. Galvin, 626 F.3d 99 (1st Cir. 2010) ........................................................................ 10

Batterman v. Leahy, 544 F.3d 370 (1st Cir. 2008) ......................................................... 2, 9

Chardin v. Police Comm'r of Boston, 989 N.E.2d 392, 465 Mass. 314 (2013) ............................ 4

Chief of Police of Shelburne v. Moyer, 453 N.E.2d 461, 16 Mass. App. Ct. 543
    (App. Ct. 1983) .............................................................................................................. 8, 11

Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) ............................... 2

Commonwealth v. Depina, 922 N.E.2d 778, 456 Mass. 238 (2010) ............................................ 13

County of Allegheny v. Frank Mashuda Co., 360 U.S. 185 (1959) ................................................ 2

District of Columbia v. Heller, 554 U.S. 570 (2008) ..................................................................... 13

Dupont v. Chief of Police of Pepperell, 786 N.E.2d 396, 57 Mass. App. Ct. 690
    (App. Ct. 2003) ................................................................................................................... 8

FCC v. Fox Television Stations, Inc., 556 U.S. 502 (2009) ........................................................ 14

Fideicomiso de la Tierra del Cano Martin Pena v. Fortuno, 604 F.3d 7 (1st Cir. 2010) ............. 10

Firearms Records Bureau v. Simkin, 993 N.E.2d 672, 466 Mass. 168 (2013) ................. 4, 6, 11

Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67 (1st Cir.2001) ............................................ 2

Godfrey v. Chief of Police of Wellesley, 616 N.E.2d 485, 35 Mass. App. Ct. 42
    (App. Ct. 1993) ................................................................................................................... 5

Guiney v. Roache, 833 F.2d 1079 (1st Cir. 1987) ........................................................... 3, 12, 13

Harman v. Forssenius, 380 U.S. 528 (1965) ................................................................................ 3

Haw. Hous. Auth. v. Midkiff, 467 U.S. 229 (1984) ....................................................................... 4

Hill v. Provencher, no. BRCV2013-0626-A (Sup. Ct. Bristol Co. Jan. 27, 2014) ....................... 13

Houston v. Hill, 482 U.S. 451 (1987) ............................................................................................ 3

Howard v. Chief of Police of Wakefield, 794 N.E.2d 604, 59 Mass. App. Ct. 901
    (App. Ct. 2003) ................................................................................................................... 8

In re Care & Protection of Charles, 504 N.E.2d 592, 399 Mass. 324 (1987) ............................ 12

Jaffee v. United States, 663 F.2d 1226 (3d Cir. 1981) ............................................................... 14

MacNutt v. Police Comm'r of Boston, 572 N.E.2d 577, 30 Mass. App. Ct. 632
    (App. Ct. 1991) ........................................................................................................... 7

Mangual v. Rotger-Sabat, 317 F.3d 45 (1st Cir. 2003) ................................................. 13

Moore v. Madigan, 702 F.3d 933 (7th Cir. 2012) .......................................................... 13

O'Malley v. Chief of Police of Stoughton, 617 N.E.2d 646, 35 Mass. App. Ct. 49
    (App. Ct. 1993) ........................................................................................................... 5

Pineiro v. Gemme, 937 F. Supp. 2d 161 (D. Mass. 2013) ............................................... 6

Pineiro v. Gemme, no. 10-40262, 2011 U.S. Dist. LEXIS 117749
    (D. Mass. Oct. 12, 2011) ............................................................................. 6, 9, 11, 12

Public Serv. Co. v Patch, 167 F.3d 15 (1st Cir. 1998) .................................................... 9

Pustell v. Lynn Public Schools, 18 F.3d 50 (1st Cir. 1994) ...................................... 11-12

Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941) ........................................ *passim*

Rivera-Puig v. Garcia-Rosario, 983 F.2d 311 (1st Cir. 1992) .................................. 9, 13

Ruggiero v. Police Comm'r of Boston, 466 N.E.2d 522, 392 Mass. 1104 (1984) ........ 12

Ruggiero v. Police Comm'r of Boston, 464 N.E.2d 104, 18 Mass. App. Ct. 256
    (App. Ct. 1984) ................................................................................................. *passim*

United States v. Mendoza, 464 U.S. 154 (1984) ........................................................... 14

**STATUTES**

1906 Mass. Acts ch. 172, § 1 .......................................................................................... 9

1922 Mass. Acts. ch. 486, § 9 ......................................................................................... 5

1972 Mass. Acts ch. 415 ................................................................................................. 5

1998 Mass. Acts ch. 180, § 41 ........................................................................................ 7

M.G.L. c. 140, § 131 .............................................................................................. *passim*

**OTHER AUTHORITIES**

Ronald C. Glidden & John M. Collins, Law Enforcement Guide to Firearms Laws
    (14th ed. 2009) ........................................................................................................ 5, 6

Plaintiffs submit this brief pursuant to the Court's Memorandum and Order (the "Decision," Doc. No. 71), which requests supplemental briefs addressing the Court's state-law findings, its proposal for Pullman abstention, and the necessity of further discovery.  The bulk of this brief addresses abstention, as the other issues are ancillary.

Plaintiffs concur with most of the Court's findings regarding the pertinent Massachusetts laws, but respectfully submit that the Court has made two unwarranted assumptions that have led to its misplaced concern that "there is 'substantial uncertainty' as to whether the Massachusetts firearm-licensing statute allows a local licensing authority to deny categorically any application by a first-time applicant who seeks a firearm for personal protection, even when the applicant has shown a 'good reason to fear injury.'"  Decision p. 33.  The first unsupported assumption is that the discretionary authority of licensing authorities to impose license restrictions is linked to the statutory requirement that license applicants establish a proper "reason" for licensure.  In fact, subparts (a) and (b) of M.G.L. c. 140, § 131 give local licensing authorities the power to impose restrictions as they "deem[] proper," entirely independent of the eligibility requirements enacted by the Commonwealth in subpart (d).  The second unfounded assumption is that individuals are entitled to obtain licenses on an adequate showing of "reason to fear injury."  In truth, the statute provides only that licensing authorities "*may* issue" (emphasis added) licenses to qualified persons—which neither restricts the discretion of local licensing authorities nor confers a statutory entitlement to obtain a license.

Removing these unsupported assumptions from the Court's analysis eliminates the concerns that the Court has raised.  By its express terms, § 131 grants enormous discretion to the licensing authority for each locality (i) to impose no license restrictions, (ii) to impose severe license restrictions all of the time, or (iii) to impose restrictions some of the time; and to do so

"as the licensing authority deems proper." Thus, there is no dispute over what Commonwealth law provides. Therefore, there is no likelihood—let alone a "substantial likelihood"—that further clarification of already lucid state-law issues could avoid (or even affect) the Second Amendment question presented.

In answer to the Court's specific query, abstention under the doctrine of Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941), is unavailable here. We say *unavailable*, rather than merely inappropriate or unwarranted, because it is well settled that abstention "is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976) (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)).

As one might expect, given the narrow *raison d'etre* of the Pullman doctrine, abstention is subject to a demanding—and cumulative—two-part test that requires both that "(1) substantial uncertainty exists over the meaning of the state law in question, and [that] (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." Batterman v. Leahy, 544 F.3d 370, 373 (1st Cir. 2008); see also Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 (1st Cir.2001). The First Circuit has recently underscored these unwavering twin requirements, stressing that "whether substantial uncertainty exists over the meaning of the state law in question" and "whether resolving the state-law question will or may well obviate the need to resolve a significant federal constitutional question" are "both . . . essential Pullman prerequisites." Atwater v. Chester, 730 F.3d 58, 64 (1st Cir. 2013) (quotation omitted). Thus, while both Pullman factors must be present, neither is,

and abstention is foreclosed. This Court should proceed to decide the federal constitutional question presented on its merits.

**(I)   THERE IS NO "SUBSTANTIAL UNCERTAINTY" BECAUSE § 131 EXPRESSLY AUTHORIZES DEFENDANTS' RESTRICTIVE POLICIES**

Pullman abstention is foreclosed because there is no ambiguity whatever in subparts (a) and (b) of § 131: they *explicitly* authorize the issuance of class A and B licenses "subject to such restrictions relative to the possession, use or carrying of firearms *as the licensing authority deems proper*" (emphasis added). By its terms, this endows each Defendant with broad authority to impose restrictions as he "deems proper." In the statute, there is no textual link whatsoever between this broad "deems proper" language and the separate requirement, set forth in a different subpart of the statute, that a license may be granted in a variety of circumstances, including where there is "good reason to fear injury." Thus, this case does not even come close to meeting the demanding standard for Pullman abstention.

"The Supreme Court has frequently stressed that abstention is not justified by the mere possibility that a state court *might* interpret a state statute so as to alter or moot a federal constitutional question; abstention is only appropriate where state law is genuinely unsettled." Guiney v. Roache, 833 F.2d 1079, 1084 n.4 (1st Cir. 1987) (emphasis in source). There must be a "*real* dispute" about what the state law means. Id. at 1081 (emphasis added) (overturning Pullman abstention). The statute must be "'fairly subject to'" or "obviously susceptible of" a modifying or limiting interpretation that would avoid the constitutional issue. Houston v. Hill, 482 U.S. 451, 468 (1987) (quoting Harman v. Forssenius, 380 U.S. 528, 534-35 (1965)). The court and the parties must be presented with a "choice between one or several alternative meanings." Id. (quoting Baggett v. Bullitt, 377 U.S. 360, 378 (1964)).

But if there is no such stark choice among alternative interpretations, abstention will not lie. The "abstract" or "bare . . . possibility" of a limiting construction that would avoid the constitutional issue is not enough, Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 237 (1984), because the doctrine is not infinitely elastic. Any effort to stretch Pullman abstention to fit the circumstances of this case would violate the principle that abstention "is the exception, not the rule." Id. at 236 (quotation omitted).

### A. Ruggiero does not limit the power to impose restrictions.

The Court's Decision construes Ruggiero v. Police Commissioner of Boston, 464 N.E.2d 104, 18 Mass. App. Ct. 256 (App. Ct. 1984), to provide that "the licensing authority *may* restrict a license to those uses for which the authority determines there to be an appropriate reason, even if it is not the reason proposed by the applicant." Decision p. 6 (emphasis added). This is a fair construction, and indeed, local licensing authorities do this all the time by, for example, restricting an applicant's request for a carry license for self-defense purposes to a license good only for hunting, target-practice, and participation in competitive shooting sports. But what is significant is that the Appeals Court in Ruggiero did not *require* licensing authorities to impose such restrictions, nor did it impose any *limit* on the power of licensing authorities to do so. Indeed, during the 30 years since Ruggiero has come down, Massachusetts courts have never cited the decision as identifying a limit on the power of licensing authorities to impose restrictions; instead, they have repeatedly cited the decision to show that licensing authorities have "'considerable latitude' or broad discretion in making a licensing decision." See Chardin v. Police Comm'r of Boston, 989 N.E.2d 392, 465 Mass. 314, 316 (2013) (quoting Ruggiero, 464 N.E.2d at 106, 18 Mass. App. Ct. at 259); accord Firearms Records Bureau v. Simkin, 993 N.E.2d 672, 681, 466 Mass. 168, 179 (2013); see also O'Malley v. Chief of Police of Stoughton,

-4-

617 N.E.2d 646, 648, 35 Mass. App. Ct. 49, 51 (App. Ct. 1993); Godfrey v. Chief of Police of Wellesley, 616 N.E.2d 485, 487-88, 35 Mass. App. Ct. 42, 46 (App. Ct. 1993).

Moreover, a close examination of Ruggiero precludes any possible interpretation that would limit the ability of licensing authorities to impose restrictions in particular cases—or, for that matter, to adopt a "categorical" policy of doing so. When the Appeals Court decided Ruggiero in 1984, § 131 authorized a local licensing authority to issue a license if he or she found "good reason" for the applicant "to fear injury to his or her person or property, or for any other proper purpose, including the carrying of firearms for use in target practice only." The statute simply did not address license restrictions and did not even contain the word "restriction." See Ruggiero, 464 N.E.2d at 106, 18 Mass. App. Ct. at 257-58 (quoting statute); see also 1972 Mass. Acts ch. 415 (most recent major recodification). Moreover, the state-mandated license form[1] did not list "restrictions," but instead included a blank field for the "reason for issuance." See Ronald C. Glidden & John M. Collins, Law Enforcement Guide to Firearms Laws p. 211 (14th ed. 2009) (hereinafter, "Glidden Guide"). The question in Ruggiero was whether there was nevertheless a statutory power to restrict. The context was that the relevant licensing authority, the Commissioner of the Boston Police Department, had issued the plaintiff a license that stated its "reason for issuance" was "Target, Hunting & Sport," and a Superior Court judge had concluded that "the commissioner lacked authority to issue a license which limited the plaintiff to carrying a firearm only for specified purposes"—that is, the lower court ruled that the police commissioner lacked the authority to deny an applicant the right to carry a firearm for self-defense. Ruggiero, 464 N.E.2d at 105, 18 Mass. App. Ct. at 257.

---

[1] Designated agencies have dictated the format of license cards since 1922. See 1922 Mass. Acts. ch. 486, § 9.

There was a plausible ground for the Superior Court's conclusion in Ruggiero, insofar as a "reason for issuance" is not the same thing as a "restriction." See Glidden Guide, supra, p. 197 ("All lawful purpose, protection of life, and personal protection may be 'reasons for issuance' but they are not restrictions."). Indeed, the Supreme Judicial Court recognized this distinction in its recent decision in Firearms Records Bureau v. Simkin, where it observed that, even though the licensee had cited business justifications to support the issuance of his license, "the license itself carried no restrictions; it entitled Simkin to carry firearms 'for all lawful purposes,'" Simkin, 993 N.E.2d at 683, 466 Mass. at 182 (quoting M.G.L. c. 140, § 131(a)).

In any event, the Appeals Court in Ruggiero reversed. The court's reasoning was that "the Legislature would [not] have gone to the effort of providing a 'proper purpose' requirement in § 131 or of identifying two such purposes unless the Legislature intended that the licensing authority have the power to limit any license granted under § 131 to a specified purpose." Ruggiero, 464 N.E.2d at 107, 18 Mass. App. Ct. at 260. The language of this decision countenanced a categorical policy, as it embraced "the power to limit *any* license granted under § 131 to a specified purpose." Id. (emphasis added). Indeed, in this Court's prior decision declining Pullman abstention in Pineiro v. Gemme, this Court cited this exact same passage to support the conclusion that "the licensing authority's power encompasses even a *categorical* policy of restricting licenses and denying all applications for unrestricted licenses." See Pineiro v. Gemme, no. 10-40262, 2011 U.S. Dist. LEXIS 117749, *25 (D. Mass. Oct. 12, 2011) (emphasis added); see also Pineiro v. Gemme, 937 F. Supp. 2d 161, 168 (D. Mass. 2013) ("The [Worcester] policy has had the effect of limiting new applicants to the receipt of restricted licenses.").

-6-

### B. Even if Ruggiero did limit the power to impose restrictions, the Legislature eliminated this limitation when it added the "deems proper" language 14 years later

The Ruggiero court suggested that "[a] statement of acceptable restrictions or guidelines . . . might be helpful to the expedient handling of future licensing applications," Ruggiero, 464 N.E.2d at 107 n.7, 18 Mass. App. Ct. at 261 n.7, and seven years later, the Appeals Court observed that its "suggestion . . . ha[d] not yet stimulated legislative action," MacNutt v. Police Comm'r of Boston, 572 N.E.2d 577, 580 n.6, 30 Mass. App. Ct. 632, 636 n.6 (App. Ct. 1991). However, contrary to the Court's apparent understanding (Decision p. 28), the General Court of Massachusetts eventually did take action in the wake of Ruggiero.

The General Court's 1998 amendment added introductory language referring to "conditions and restrictions," and it also added the language expressly authorizing "such restrictions . . . as the licensing authority *deems proper*." 1998 Mass. Acts ch. 180, § 41, sec. 131(a)-(b) (emphasis added). Finally, this amendment added language making "violation of a restriction" both an offense and a ground for suspension or revocation of a license. See id. Again, prior to this amendment, the text of § 131 did not address restrictions at all. After the amendment, § 131 expressly authorized restrictions, making it unnecessary for a court to infer such power to restrict a license.

With all due respect, this Court's Decision does not give adequate weight to the import of this amendment and, in particular, the amendment's addition of the "deems proper" provisions. The Decision cites the "deems proper" language only once, and it then relies on Ruggiero to conclude that "[p]ursuant to *that* provision [*i.e.* the "deems proper" provision], the licensing authority may restrict a license to those uses for which the authority determines there to be an appropriate reason, even if it is not the reason proposed by the applicant." See Decision pp. 5-6 (emphasis added). However, as the above discussion makes clear, this is an anachronism: when

-7-

it was decided in 1984, Ruggiero did not construe this "deems proper" language because this language did not exist in 1984, and it would not be enacted for another 14 years. Other issues aside, the Ruggiero court's discussion plainly was not an interpretation of "that provision."

Hence, to whatever extent Ruggiero might be read as limiting the ability of licensing authorities to adopt categorical policies of imposing restrictions—which, respectfully, is doubtful—the Legislature eliminated this construction in 1998, when it gave police chiefs express authority to impose restrictions as they "deem[] proper."

### C. There is No State-Law Entitlement to a License to Carry—for Self-Defense, or for Any Other Purpose

One final matter is this Court's observation that it is "[i]mplicit in the statutory framework" that "some individuals" are entitled to licenses on the ground that they have "'good reason to fear injury.'" Decision p. 27. With all due respect, the statutory framework does not justify such an inference.

Rather, the statute provides that a licensing authority "*may* issue" a license to an applicant who meets the stated criteria for licensure. M.G.L. c. 140, § 131(d) (emphasis added). It does not require licensing authorities to issue licenses. And Massachusetts courts have repeatedly ruled that "there is no 'question of a property right or deprivation of liberty involved in the statutory procedures for obtaining a license to carry firearms.'" Howard v. Chief of Police of Wakefield, 794 N.E.2d 604, 607, 59 Mass. App. Ct. 901, 903 (App. Ct. 2003) (quoting Chief of Police of Shelburne v. Moyer, 453 N.E.2d 461, 464, 16 Mass. App. Ct. 543, 547 (App. Ct. 1983)); accord Dupont v. Chief of Police of Pepperell, 786 N.E.2d 396, 400, 57 Mass. App. Ct. 690, 694 (App. Ct. 2003). Instead, Massachusetts courts have held that a license to carry firearms "is a privilege voluntarily granted." Dupont, 786 N.E.2d at 400, 57 Mass. App. Ct. at 694.

Further belying the conclusion that the statute creates an entitlement is the fact that the statute has used this same "may issue" formulation for more than a century, since its original enactment in 1906.  See 1906 Mass. Acts ch. 172, § 1 (a licensing authority "may . . . issue" a license to an otherwise qualified applicant).  Yet, during the 108 years that this statutory framework has remained in force, counsel's research discloses not *one* Massachusetts court that has ever ordered a licensing authority to issue a license on the rationale that an applicant demonstrated an adequate degree of "reason to fear injury" so as to come within a statutory entitlement.  And, as this Court has previously observed, this is not a situation where "state courts have not had an opportunity to construe" the requirements of § 131.  Pineiro, 2011 U.S. Dist. LEXIS 117749 at *17.  Put simply, there is no state-law entitlement to obtain an LTC, nor is there a likelihood (let alone a substantial likelihood) that certification to the Supreme Judicial Court would change this.

**(II)    ABSTENTION IS NOT LIKELY TO AVOID THE CONSTITUTIONAL QUESTION**

The second Pullman prong also is not met because there is no "reasonable possibility" that further judicial construction of the issues that the Court has identified would "obviate the need for a federal constitutional ruling." Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 322 (1st Cir. 1992).  The mere *possibility* that state-court review could "conceivably" affect a federal claim is patently insufficient. See Public Serv. Co. v Patch, 167 F.3d 15, 24 (1st Cir. 1998); see also Batterman v. Leahy, 544 F.3d 370, 374 (1st Cir. 2008) (abstention inappropriate in absence of a "showing [of] how clarification of a state law would avoid the need to address such challenges").

First and foremost, the limiting construction suggested by the Court would not be likely to afford relief to all of the Plaintiffs.  Even if the Supreme Judicial Court were to conclude that licensing authorities could only impose restrictions if they related to the "reasons" found for

-9-

license issuance (notwithstanding the "deems proper" language), and even if that court further found that there was a statutory entitlement to an unrestricted license on an adequate showing of "reason to fear injury" (notwithstanding the "may issue" language), it would still be highly doubtful that *all* of the Plaintiffs would be found to meet this standard.  As this Court has already observed, three of the four individual Plaintiffs cited only their bare desire for personal protection as justification for an unrestricted license.  See Decision p. 30.  Whatever else Ruggiero may represent, it surely stands for the proposition that the the bare desire for personal protection, "without further explanation, would not make arbitrary, capricious or an abuse of discretion [a licensing authority]'s decision to deny [a] plaintiff a license for self-protection." Ruggiero, 464 N.E.2d at 108, 18 Mass. App. Ct. at 261.  Hence, even if the Supreme Judicial Court resolved the state-law issues in the manner that this Court has hypothetically theorized that it might, this Court would nevertheless need to decide the federal constitutional question that is presently before it.  Plaintiffs' claims do not "turn on" these state-law issues.  Compare Fideicomiso de la Tierra del Cano Martin Pena v. Fortuno, 604 F.3d 7, 17 (1st Cir. 2010) (a Takings Clause claim premised on the absence of a "public use" does not "turn on" ancillary questions of Puerto Rico law related to the amount of compensation that would be due), with Barr v. Galvin, 626 F.3d 99, 108 (1st Cir. 2010) (where state courts have not interpreted statute asserted to be vague, abstention is likely to avoid the constitutional question because "such a clarification, however it comes out, would end the 'void for vagueness' argument").

In addition, the applicable standard of review makes it even less likely that the Plaintiffs would be successful in obtaining relief in state court.  As this Court has previously observed, Massachusetts courts review decisions to impose restrictions under the same standard of review that they use to review decisions to deny, suspend, or revoke licenses:  whether the decision was

"arbitrary, capricious, or an abuse of discretion," with the burden of proof on the citizen seeking a licence to exercise his Second Amendment right.  See Simkin, 993 N.E.2d at 681, 466 Mass. at 179 (quoting Shelburne, 453 N.E.2d at 464, 16 Mass. App. Ct. at 546); Ruggiero, 464 N.E.2d at 107, 18 Mass. App. Ct. at 259; see also Pineiro, 2011 U.S. Dist. LEXIS 117749 at *8.  It is highly unlikely that a Massachusetts court applying state law would find that it was arbitrary, capricious, or an abuse of discretion to deny unrestricted licenses to any of the Plaintiffs, and it is even more unlikely that a state court would grant relief to *all* of them.  See Piniero, 2011 U.S. Dist. LEXIS 117749 at *25 (the arbitary and capricious "standard for judicial review adequately defines the breadth of discretion delegated to the licensing authority under the statute").

One case cited by this Court in its Decision (p. 32) is instructive, both in its similarities and its differences.  In Pustell v. Lynn Public Schools, 18 F.3d 50 (1st Cir. 1994), as here, a Massachusetts law "grant[ed] discretion to local school districts to determine the standards for home schooling," and the plaintiffs there contended that the standards that their local school district had adopted pursuant to this state-law grant were unconstitutional.  See id. at 51. However, unlike in the present case, the Supreme Judicial Court had previously cast significant doubt on whether the precise requirement at issue there—a requirement that parents submit to home visits to evaluate their home-schooling program—was permissible.  See id. at 54. Specifically, the Massachusetts high court had:  (1) counseled that "the approval of a home school proposal must not be conditioned on requirements that are not essential to the State interest in ensuring that all the children shall be educated"; (2) specifically suggested that "with appropriate testing procedures or progress reports, there may be no need for periodic on-site visits or observations"; but (3) nevertheless cited an out-of-state decision that had upheld a home-visitation requirement.  See id. (quoting In re Care & Protection of Charles, 504 N.E.2d

592, 600-02, 399 Mass. 324, 337-40 (1987) (internal quotations omitted)). This led the First Circuit to conclude that the Supreme Judicial Court had "*deliberately left unresolved* whether home visits could be required under Massachusetts law," and that it was "equally plausible" that state law did or did not permit this requirement. Id. (emphasis added). Hence, "state court interpretation of this issue could eliminate entirely the need to address the constitutional issues." Id.

That is not the situation here. The Appeals Court that decided Ruggiero did not deliberately leave open a pertinent question, nor did it say anything else that would suggest that the "may issue" and "deems proper" passages of § 131 do not mean precisely what they say. Rather, the court cursorily upheld the denial of an unrestricted license under the governing arbitrary-and-capricious standard, see Ruggiero, 464 N.E.2d at 108, 18 Mass. App. Ct. at 261, and the Supreme Judicial Court declined review, see Ruggiero v. Police Comm'r of Boston, 466 N.E.2d 522, 392 Mass. 1104 (1984). Thus, while the circumstances in Pustell suggested that there was a 50-50 (*i.e.* "equally plausible") chance that further state-court review would obviate the federal question, here this possibility is nothing but speculative. As this Court has previously observed, the "delegation of discretionary authority to subject licenses to use restrictions . . . contain[s] no ambiguities that the state courts have not had an opportunity to construe." Pineiro, 2011 U.S. Dist. LEXIS 117749 at *17.

At the end of the day, the only realistic circumstance under which the Supreme Judicial Court could obviate the need for this Court to decide the constitutional question presented here would be for that tribunal to itself vindicate the Plaintiffs' Second Amendment rights.[2] Indeed,

---

[2] Setting aside the fact that the presence of a parallel state constitutional provision is not a basis for abstention, see Guiney v. Roache, 833 F.2d 1079, 1082-83 (1st Cir. 1987), the Supreme Judicial Court has stated that it is not revisiting its militia-centered interpretation of the state

when the Bristol Superior Court overturned the police chief's licensing decision in Hill v. Provencher, no. BRCV2013-0626-A (Jan. 27, 2014) (previously submitted to the Court as Doc. No. 70-1), it grounded relief not in any provision of the Commonwealth's law, but rather, in the federal Second Amendment. But this just shows precisely why Pullman abstention is unavailable here: Massachusetts courts "would be faced with exactly the same issues as this Court – issues which are federal ones." See Mangual v. Rotger-Sabat, 317 F.3d 45, 63 (1st Cir. 2003). However, "[a] federal court should not abstain simply to give a state court the first opportunity to vindicate federal rights." Rivera-Puig, 983 F.2d at 322. Rather, "[a] plaintiff's choice to pursue a federal remedy in a federal forum should not be lightly overturned." Guiney v. Roache, 833 F.2d 1079, 1084 (1st Cir. 1987).

### (III) THERE IS NO APPARENT NEED FOR FURTHER DISCOVERY

Plaintiffs already showed substantial doubt that Defendant Chief Grimes's policy is actually to remove restrictions once a licensee is no longer a "first-time applicant": both Plaintiff Chris Davis and witness Jack Darling moved to Weymouth with in-force and unrestricted licenses, but both received restrictions when they renewed. See Plaintiffs' Brief in Opposition (Doc. No. 52) pp. 1-2 (and sources cited therein). The rub is that the precise contours of Chief Grimes's restriction policy (whatever it is) would not materially alter the question presented.

The essential question here is whether the Second Amendment right to bear arms secures the right to carry guns for self-protection in public places. See District of Columbia v. Heller, 554 U.S. 570, 592 (2008) ("we find that [the words of the Second Amendment] guarantee the individual right to possess and carry weapons in case of confrontation"); Moore v. Madigan, 702 F.3d 933, 941 (7th Cir. 2012) ("the interest in self-protection is as great outside as inside the

---

right to bear arms even in light of Heller, see Commonwealth v. Depina, 922 N.E.2d 778, 790 & n.12, 456 Mass. 238, 252 & n.12 (2010).

home"). If it does, then Defendants' policies do not pass muster—whether they amount to a "categorical" policy of denying the right to all first-time license applicants, or a somewhat broader policy of denial. This isn't so much because of what Defendants' policies do as because of what Defendants' policies do not do: they do not regulate the right in a manner tied to public safety by (for example) requiring the completion of training or a showing of qualification. If there is no constitutional right at issue, then Defendants are free to grant or deny the right as they "deem[] proper"—as Massachusetts law allows. But if there is a right, then Defendants' policies at a very minimum need to substantially advance legitimate public safety concerns—which they do not. Plaintiffs are in no position to suggest any further discovery that may be needed in the absence of a ruling on the merits from this Court.

## CONCLUSION

Abstention is unwarranted because the unambiguous language of § 131 states both that Defendants have broad discretion to restrict the bearing of arms as they "deem[] proper," and also that Plaintiffs have no definite entitlement to licenses.

It may be true that a developing area like the Second Amendment presents difficult questions of law, see Decision p. 25, but then, the Supreme Court has extolled the "benefit" it receives when lower courts "explore a difficult question before th[e] Court grants certiorari." United States v. Mendoza, 464 U.S. 154, 160 (1984). The Supreme Court is, after all, "one of final review, not of first view." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 529 (2009) (quotation omitted). Hence, to the extent the questions presented are difficult, it is the Court's "obligation [to] forecast or predict how the Court will decide troubling cases involving new factual situations." Jaffee v. United States, 663 F.2d 1226, 1228 (3d Cir. 1981). The Court should rule on the merits.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | THE PLAINTIFFS, |
|  | By their attorneys, |
|  | |
|  | David D. Jensen, Esq. |
|  | Admitted *Pro Hac Vice* |
|  | DAVID JENSEN PLLC |
|  | 111 John Street, Suite 420 |
|  | New York, New York 10038 |
|  | Tel:  212.380.6615 |
|  | Fax:  917.591.1318 |
|  | david@djensenpllc.com |
|  |  |
|  | Patrick M. Groulx, Esq. |
|  | BBO No. 673394 |
|  | POLIS LEGAL |
|  | P.O. Box 76056 |
|  | Melrose, Massachusetts 02176 |
|  | Tel:  978.549.3124 |
|  | Fax:  617.500.9955 |
| Dated:  April 25, 2014 | pgroulx@polislegal.com |
|  |  |
|  | *Attorneys for Plaintiffs* |

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 25 April 2014.

          /s/ David D. Jensen
          David D. Jensen, Esq.