UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; RANDY COLE, JR.; WILSON LOBAO; ROBERT CAPONE; RYAN SHAUGHNESSY; and COMMONWEALTH SECOND AMENDMENT, INC., <br>    Plaintiffs, <br><br>    -against- <br><br> RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department, and ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department, <br>    Defendants, <br><br>    - and - <br><br> COMMONWEALTH OF MASSACHUSETTS, <br>    Intervenor. | CIVIL ACTION NO. 1:13-cv-10246 |

## DEFENDANTS' SUPPLEMENTAL BRIEFING

The Defendants submit this Supplemental Brief in accordance with the Court's Memorandum and Order on Motion for Summary Judgment dated March 26, 2014 (hereinafter the "Memorandum and Order").[1]

---

[1] The Court is also respectfully referred to the Supplemental Affidavits of Chief Richard Grimes (Weymouth) and Detective Michael Crane (Peabody) filed herewith. Robert Champagne retired last Fall. On November 25, 2013, Robert St. Pierre was named the Interim Chief of Police (Peabody).

**ARGUMENT**

I.  **THE DEFENDANTS' ARE OF THE VIEW THAT THIS COURT SHOULD NEITHER ABSTAIN FROM EXERCISING FEDERAL JURISDICTION NOR CERTIFY QUESTIONS OF STATE LAW TO THE SUPREME JUDICIAL COURT.**

   A.   **Introduction.**

The Plaintiffs raise two federal claims in their Complaint. In essence, Plaintiffs claim that certain gun-licensing policies of the Weymouth and Peabody Police Departments restrict their ability to obtain an unrestricted gun license in violation of the Second and Fourteenth Amendments.[2] The Plaintiffs are not seeking any relief under state law. Instead, Plaintiffs challenge "the Weymouth and Peabody police department policies adopted under that [statutory] framework." Memorandum and Order, p. 2. In its decision on the parties' respective motions for summary judgment, this Court raised the question of whether it is necessary or appropriate to abstain from deciding the federal constitutional claims, namely, Plaintiffs' Second Amendment-based challenge to the manner in which the Defendants have interpreted and applied Mass. Gen. Laws ch. 140, §131 ("Section 131"). Alternatively, or additionally, this Court raised the question of possible certification of questions of state law to the Massachusetts Supreme Judicial Court ("SJC")? As set forth more fully below, the Defendants do not believe abstention or certification is appropriate; such a result will serve no purpose here other than to delay the litigation unnecessarily.

---

[2] Plaintiffs have not briefed their claims arising under the Equal Protection and Due Process clauses ". . . and those claims therefore appear to have been waived." Memorandum and Order at p. 13, n.10. Accordingly, the Defendants will not devote any further discussion to those two claims and, instead, rely on the legal arguments contained in their principal Memorandum of Law, pp. 14-19. (Docket No. 31). Suffice to say, however, Plaintiffs' Equal Protection claim fails for essentially the same reasons as articulated by this Court in *Pineiro v. Gemme,* 937 F.Supp.2d 161, 175-176 (D. Mass. 2013).

**B.     The Doctrine of Abstention.**

The doctrine of abstention, under which a federal court may decline to exercise, or postpone the exercise of, its jurisdiction, "is the exception rather than the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. "It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Id.*, quoting *Alabama Public Service Commission v. Southern Ry. Co.*, 341 U.S. 341, 361 (1951). "Ordinarily, a federal court will exercise the judicial power that Congress has conferred upon it when a plaintiff invokes its jurisdictional authority to apply federal law." *Bath Memorial Hospital v. Maine Health Care Fin. Commission*, 853 F.2d 1007, 1013 (1st Cir. 1988) (Breyer, J.).

The Supreme Court has enumerated several specific categories of cases where abstention may be appropriate, only one of which is relevant to this matter.[3] The application of the abstention doctrine may be appropriate in cases involving a federal constitutional issue which may become moot or may be presented in a different posture by a state court determination of pertinent state law. *Colorado River*, 424 U.S. at 814, citing, *inter alia*, *Railroad Commissioner of Texas v. Pullman Co.*, 312 U.S. 496 (1941)("*Pullman*"). "The so-called "*Pullman*" variety of

---

[3] For example, abstention may be appropriate to avoid "the awkward circumstance of turning the federal court into a forum that will effectively decide a host of detailed state regulatory matters, to the point where the presence of the federal court . . . makes it significantly more difficult for the state to operate its regulatory system." *Bath*, 853 F.2d at 1012, citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Where the exercise of federal jurisdiction would enjoin or interfere with state judicial proceedings, abstention may also be appropriate. *See, e.g., Younger v. Harris*, 401 U.S. 37 (1971); *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975); *but see Coors Brewing Company v. Mendez-Torres,* 678 F.3d 15, 22-24 (1st Cir. 2012) (Tax Injunction Act does not necessarily require federal court's abstention where a "fundamental right" is concerned).

abstention is premised on the preference of a federal court to avoid making a forecasted, rather than a determinative, decision on a novel question of state law." *Guiney v. Roache*, 833 F.2d 1079, 1081 (1st Cir. 1987). Recently, this Court had occasion to consider the *Pullman* doctrine in a case which adumbrates this one, *Pineiro v. Gemme*, 2011 WL 4853019 (D. Mass.) ("*Gemme*"). In *Gemme*, the plaintiff challenged the partial denial of his application for an unrestricted license to carry. Mr. Pineiro sought judicial review in state court of Chief Gemme's decision to grant him a License to Carry for sport and target uses only.[4] Mr. Pineiro concurrently sued the City of Worcester and the Police Chief in federal court, alleging facial and as-applied violations of his right to bear arms under the Second Amendment. The defendants filed a motion to dismiss or stay plaintiff's action under the doctrine of *Pullman* abstention. Finding that the defendants had not satisfied the prerequisites for invoking *Pullman* as discussed in *Batterman v. Leahy,* 544 F.3d 370, 373 (1st Cir. 2008), this Court declined to stay the federal court action in *Gemme*. *Id.,* **5-8. As discussed in Section I(D) below, for many of the same reasons, the Defendants are of the opinion that this Court should decline to invoke *Pullman* abstention here.

### C. Certification of State Law Questions.

In the absence of controlling precedent from the state's highest court on a legal issue that may be determinative of a federal lawsuit, federal courts may, in their discretion, certify a question of state law to the state's highest court. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); *Diaz v. Jiten Hotel Management*, 671 F.3d 78, 84 (1st Cir. 2012); Mass. S.J.C. R. 1:03

---

[4] By comparison, as it relates to any *Pullman* abstention analysis, none of the Plaintiffs here sought judicial review of the gun-licensing decisions of the Defendants-Chiefs of Police as provided by M.G.L. c. 140, §121(f). The Defendants are aware, however, that while it is one factor to be considered, the presence of an existing state court action is not necessarily a prerequisite to *Pullman* abstention. *See Barr v. Galvin*, 626 F.3d 99, 108 n.3 (1st Cir. 2010).

(accepting certified questions which may be claim-determinative if there is no controlling SJC precedent). Prior to certifying, however, federal courts must make their own ". . . prediction of state law" to determine whether the course the "state court would take is reasonably clear." *Nieves v. Univ. of Puerto Rico*, 7 F. 3d 270, 274-275 (1st Cir. 1993).

> **D.  The Defendants Maintain That Neither Abstention nor Certification is Warranted in the Circumstances Here.**

The First Circuit had occasion to discuss the prerequisites for invoking *Pullman* abstention in its recent decision in *Atwater v. Chester,* 730 F.3d 58 (1st Cir. 2013). The First Circuit observed that a district court's inquiry should focus on whether "substantial uncertainty exists over the meaning of the state law in question" or whether resolving the state-law question "will or may well obviate the need to resolve a significant federal constitutional question – both of which are essential *Pullman* prerequisites." *Id.* at 64, citing *Batterman v. Leahy*, 544 F.3d at 313 (emphasis added in *Atwater*); *see also Mangual v. Rotger-Sabat*, 317 F.3d 45, 62-63 (1st Cir. 2003) (abstention inappropriate where state court would "be faced with exactly the same issues as this Court – issues which are federal ones and not ones of Puerto Rico state law"); *Bonas v. Town of North Smithfield,* 265 F.3d 69, 76 n. 5 (1st Cir. 2001) (*Pullman* not warranted where relevant state charter provisions were "clear and they lie on the periphery rather than at the epicenter" of the state's electoral scheme). In its Memorandum and Order (p. 33), this Court observed that there is "'substantial uncertainty' as to whether [Chapter 130] allows a local licensing authority to deny categorically any application by a first-time applicant who seeks a firearm for personal protection, even when the applicant has shown a 'good reason to fear injury.'" However, even assuming such "substantial uncertainty" would exist if the Police Chiefs had such a policy, the Supplemental Affidavits of Richard Grimes, ¶2, and Detective Michael Crane, ¶2, state in no uncertain terms that there is no such "categorical" policy in

- 5 -

Weymouth or Peabody.[5]  Moreover, it is not entirely certain that a state-court decision on that issue would obviate the need for this Court to address Plaintiffs' *Second Amendment* claims.[6]

Among other things, Plaintiffs seek a judgment declaring that Section 131 violates the Second Amendment "to the extent [it] allow[s] Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to 'sporting,' 'target,' 'hunting' and 'similar purposes'."  Amend. Comp., p. 12, ad damnum clause (i).  The declaratory relief Plaintiffs are seeking would effectively eliminate an individual police chief's discretion to issue a License to Carry *at all*.[7]  The Plaintiffs appear to be arguing that if (i) an applicant is not statutorily barred from possessing a firearm and (ii) the suitable person/good reason to fear injury standard is met, then a police chief *is required* not only to issue a License to Carry, but also to issue one with no restrictions.  Anything less violates their

---

[5] A clear example of the absence of such a categorical policy is provided in the original Affidavit of Michael Crane filed in support of the Defendants' Motion for Summary Judgment (July 13, 2013) (Docket Entry No. 46).  Detective Crane noted that then-Chief Champagne may issue an unrestricted License to Carry to an applicant who is engaged in a primarily cash business (as Plaintiff-Robert Capone had claimed) and who provides documentation to substantiate his safety concern.  Detective Crane conveyed this information to Mr. Capone (a first-time applicant in Peabody), and told him that a substantiating letter from his accountant, "would be acceptable." *Id.,* ¶2.  Mr. Capone never provided any such documentation to Detective Crane nor has he done so to date.

[6] The Defendants realize that, on the other hand, a ruling from the SJC may clarify whether the Chiefs' current, non-categorical application of Section 131, is consistent with *state* law.

[7] As this Court observed, Section 131(d) provides that the licensing authority "<u>may issue</u>" the gun license if the applicant is a "suitable person" and "if it appears . . . that the applicant has good reason to fear injury to his person or property, or . . . any other reason . . .."  Memorandum and Order, pp. 4-5.  As of this writing, plaintiffs' petition for a writ of certiorari in *Drake v. Jerejian*, 724 F.3d 426 (3rd Cir. 2013) (Supreme Court Docket No. 13-827), which raises similar gun-licensing issues, has not been acted on by the Supreme Court.

Second Amendment rights – or so Plaintiffs contend.  The Defendants disagree.[8]  Notably, as this Court observed in *Gemme*, the "suitable person" and "proper purpose" provisions "contain no ambiguities that the state courts have not had an opportunity to construe." *Gemme,* 2011 WL at *6.  Indeed, here, as in *Gemme*, "[f]uture state court rulings might further define the contours of the 'suitable person' standard, but these clarifications would not likely settle the question whether the statute, by denying the right to bear arms to at least some classes of persons other than the two prohibitions endorsed in *Heller*, violates the Second Amendment." *Id.*, *7.

Significantly, even if the SJC were to conclude that Defendants' application of a target shooting and hunting restriction for first-time applicants violates Section 131, that decision would not necessarily be determinative of Plaintiffs' federal constitutional claims.  As the First Circuit held in *Martinez v. Colon*, 54 F. 3d 980 (1st Cir. 1995):

> [N]ot every transgression of state law does double duty as a constitutional violation.  The Constitution is a charter of carefully enumerated rights and responsibilities, defining the relationship between the people and a government of limited powers.  Its scope and application are necessarily determined by its own terms.  Though grand in its design and eloquent in its phrasing, the Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations – no matter how egregious those violations may appear within the local legal framework.

*Id.* at 989 (violation of local Puerto Rico law pertaining to police officers' duties does not establish a claim under 42 U.S.C. § 1983 ); see also *Fournier v. Reardon*, 160 F.3d 754, 757-758 (1st Cir. 1998) (violation of state law governing discipline of persons involved in physical

---

[8] The Defendants' posit but one example in which the "suitable person" standard, at least, justifies the statutory discretion afforded local Chiefs of Police.  As Chief Grimes pointed out previously, an applicant may have a history of domestic disputes or "911" calls, which, while not rendering one statutorily barred from owning a firearm, is a situation which would certainly raise a "suitability" issue with him.  Suppl. Aff. of Richard Grimes, ¶4 (July 31, 2013) (Docket Entry No. 48).  *See Firearms Records Bureau v. Simkin,* 466 Mass. 168, 179 (2013) ("[a]ccordingly, a person may be found unsuitable for a variety of reasons, including conduct that falls outside of the enumerated disqualifiers and conduct that falls short of criminal behavior.").

training programs at private and public institutions, does not establish a claim under 42 U.S.C. § 1983 and does not constitute denial of plaintiff's substantive due process rights under the Fourth Amendment). If the SJC should determine that Defendants cannot prohibit all first-time applicants from receiving an unrestricted License to Carry as a matter of course, then Plaintiffs' federal constitutional claims may still (again) be unaffected, because the Plaintiffs seem to be arguing the Second Amendment does not allow for *any* restrictions to be imposed on an otherwise "suitable" applicant who demonstrates a good reason to fear injury "or any other reason," regardless of whether one is a first-time or renewal applicant for a License to Carry.[9] Alternatively, should the SJC rule that the Defendants must at least consider issuing a first-time applicant – who otherwise meets the suitable person/good reason to fear injury standard – an unrestricted LTC, the Defendants submit that such a decision would do no more than confirm the legality (under Chapter 140 anyway), of their current gun-licensing practice.

Under Rule 1:03 of the Rules of the Supreme Judicial Court, the SJC may answer a question of law certified by another court if that question "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the SJC.]" Yet, the SJC and Massachusetts Appeals Court have interpreted Chapter 140 generally and Section 131 specifically, on any number of occasions. *See, e.g.*, *Chardin v. Police Comm'r of Boston,* 465 Mass. 314 (2013) (statutory prohibition from obtaining a LTC if applicant has been adjudicated a delinquent minor for commission of a felony, did not violate applicant's Second Amendment rights); *Firearms Records Bureau v. Simkin*, 466 Mass. 168 (2013) (non-resident holder of temporary Class A

---

[9] Plaintiffs' position does not appear to accord with Massachusetts law. *Pineiro v. Gemme, supra*, 937 F.Supp.2d at 167, citing *Ruggiero v. Police Commissioner of Boston,* 18 Mass. App. Ct. 256, 260 n. 5 (1984) (decided under prior version of Chapter 140, Section 131).

unrestricted license subject to "suitable person" requirement); *Tucci v. Police Dept. of Wareham*, 72 Mass. App. Ct. 1106 (2008) (Rule 1:28 Decision) (not unreasonable for police chief to conclude that plaintiff was not suitable for a LTC, based on prior criminal charges against plaintiff, many of which were dismissed or resolved without a finding of guilt); *Wetherbee v. Costeros*, 13 Mass. L. Rptr. 159, *aff'd sub. nom*, 56 Mass. App. Ct. 1112 *1 (2002) (Rule 1:28 Decision) ("Although no criminal convictions resulted . . . [chief] Wetherbee could nevertheless properly consider the volatile nature of Costeros's marriage as bearing on his suitability for a license to carry firearms"). Thus, although the factual circumstances of this case may be novel, there does exist "controlling [SJC] precedent" at least on the constitutionality of the "suitable person" standard, if not the precise contours of Section 131. The determination of a state law question is not controlling with respect to Plaintiffs' federal constitutional claims and those federal constitutional claims would likely still have to be decided by this Court, especially if the SJC were to rule that even such a "categorical" policy is permissible under Section 131. Under the circumstances, the Defendants are of the view that this Court need not abstain or certify.

E.     **No Additional Discovery is Necessary or Appropriate.**

In its prior decision the Court observed that, ". . . it is unclear whether the [Defendants] policies truly impose categorical prohibitions, or whether a first-time applicant whose circumstances are not 'ordinary' might in fact receive a license." Memorandum and Order, p. 32. The Court also noted there was "some evidence" that Plaintiff-Davis's application was rejected because the Weymouth Police did not believe his stated "good reason to fear injury to person or property" was sufficient. *Id.,* p. 31, n. 26. Turning to another Weymouth resident, William Thompson, as Chief Grimes pointed out in his original Affidavit in Support of the Defendants' Motion for Summary Judgment, "Mr. Thompson did not state or provide the reasons

for seeking an unrestricted LTC." Grimes Aff., ¶7 (June 21, 2013) (Docket No. 33).[10] In any event, Chief Grimes has confirmed that an applicant who is seeking to renew a previously issued unrestricted LTC from another city or town ". . . absent some compelling reason not to do so, will likely be issued an unrestricted license by Weymouth as well." Second Suppl. Aff. of Richard Grimes, ¶5. Continuing, the original Affidavit of Michael Crane dispels any notion that the Peabody Police Department has adopted a "categorical policy" that "no time first-time applicant (with certain exceptions not relevant here) can ever show a 'good reason to fear injury to his person or property.'" Memorandum and Order, p. 29. In any event, the Supplemental Affidavits provided by Chief Grimes and Detective Crane, respectively, state explicitly that there is no such "categorical policy" in the Weymouth and Peabody Police Departments. The Defendants respectfully submit that no additional discovery is necessary or appropriate.

## CONCLUSION

WHEREFORE, together with the arguments contained in their principal Memorandum of Law, Defendants respectfully submit that this Court (i) should refrain from exercising *Pullman* abstention; (ii) should refrain from certifying any questions of law to the SJC; and (iii) should grant Defendants' Motion for Summary Judgment on the merits.

---

[10] At this time, Mr. Thompson's claim appears to be moot. *See* Affidavit of William Thompson, ¶14 (June 25, 2013) (Docket No. 40). According to Mr. Thompson, he should have received an unrestricted LTC from the Halifax Police Department on or about October 3, 2013.

        Respectfully submitted,

        The Defendants,
        RICHARD C. GRIMES, in his Official Capacity as Chief
        of the Weymouth Police Department, and
        ROBERT ST. PIERRE, In his Official Capacity as the
        Interim Chief of the Peabody Police Department,
        By their attorneys
        **PIERCE, DAVIS & PERRITANO, LLP**

        */s/ Adam Simms*
        Adam Simms, BBO #632617
        John J. Davis, BBO #115890
        90 Canal Street
        Boston, MA 02114
        (617) 350-0950
        *jdavis@piercedavis.com*
        *asimms@piercedavis.com*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on May 2, 2014.

        */s/ Adam Simms*
        Adam Simms