UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; WILSON LOBAO; ROBERT CAPONE; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; and ROBERT L. CHAMPAGNE, in his Official Capacity as Chief of the Peabody Police Department, <br><br> Defendants, <br><br> -and- <br><br> COMMONWEALTH OF MASSACHUSETTS, <br><br> Intervenor. | CIVIL ACTION NO. <br><br> 1:13-cv-10246 |

**PLAINTIFFS' RESPONSE TO THE
COMMONWEALTH'S SUPPLEMENTAL BRIEFING**

The fact that a state court "might," "may," or "could" provide relief to the Plaintiffs is a manifestly inadequate basis for Pullman abstention, which requires that there be both "substantial uncertainty . . . over the meaning of the state law in question" *and* a probability that resolving the issue "will or may well obviate the need to resolve a significant federal constitutional question." Batterman v. Leahy, 544 F.3d 370, 373 (1st Cir. 2008). It is well established that "exhaustion is not a prerequisite to an action under § 1983," Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 500-01 (1982), and declining jurisdiction on the mere possibility that a state court might grant relief would violate the foundational principle that abstention "is

the exception, not the rule," Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984) (quotation omitted). "A plaintiff's choice to pursue a federal remedy in a federal forum should not be lightly overturned." Guiney v. Roache, 833 F.2d 1079, 1084 (1st Cir. 1987).

Nor does the Commonwealth provide any basis for delaying these proceedings to allow further discovery. It does not appear that Defendants have meaningfully changed their policies since the parties moved for summary judgment, and to the extent they have, the change is small and should not impact the outcome in this matter.

**(I) THE COMMONWEALTH DOES NOT IDENTIFY ANY MATERIAL ASPECT OF § 131 THAT IS *SUBSTANTIALLY* UNCERTAIN**

Plaintiffs have demonstrated that "the mere possibility that a state court *might* interpret a state statute so as to alter or moot a federal constitutional question" is not enough to warrant Pullman abstention. Guiney, 833 F.2d at 1084 n.4 (emphasis in source); see also Plfs. Br. pp. 2-4. Rather, there must be a "real dispute" about what a state law means, Guiney, 833 F.2d at 1081, meaning that the statute's language needs to present a "choice between one or several alternative meanings," Houston v. Hill, 482 U.S. 451, 468 (1987) (quoting Baggett v. Bullitt, 377 U.S. 360, 378 (1964)).

The Commonwealth responds by contending that abstention is warranted because "[a] state court ruling *might* explain that the Peabody and Weymouth policies are inconsistent with state law, and *might* prescribe procedures to follow, or standards to apply, going forward." Com. Br. p. 13 (emphases added). Or alternatively, the Supreme Judicial Court might devise a new rule of law under the guise of interpreting the statute to avoid a constitutional question. See id. at 17. However, the Commonwealth's supposition about what the Supreme Judicial Court "might" do is inadequate. The Commonwealth has not shown substantial uncertainty about the meaning of any material aspect of § 131.

### A. There is no substantial uncertainty about whether "good reason to fear injury" creates an entitlement to a license

By its terms, § 131(d) provides that a police chief "*may* issue [a license] if it *appears*" that the applicant (among other things) "has good reason to fear injury to his person or property." M.G.L. c. 140, § 131(d) (emphases added). This "may issue" language indicates that the police chief has the discretion to decide whether to issue a license, or not. And the "appears" language indicates that it is the police chief who assesses whether an applicant's "reason" is appropriate. "It is well settled that the relief provided in the nature of mandamus does not lie to compel the municipal officer to exercise his or her judgment or discretion in a particular way." Urban Transp., Inc. v. Mayor of Boston, 369 N.E.2d 1135, 1138, 373 Mass. 693, 698 (1977). This conclusion is bolstered by a wealth of Massachusetts caselaw upholding police chiefs' decisions so long they rest on "any reasonable ground." See, e.g., Chief of Police of Shelburne v. Moyer, 453 N.E.2d 461, 464, 16 Mass. App. Ct. 543, 547 (1983). See generally Plfs. Br. pp. 8-9.

The Commonwealth responds by suggesting that, notwithstanding its terms, § 131(d) may perhaps *require* police chiefs to issue licenses to individuals who (in some unspecified manner) establish that they have "good reason to fear injury to person or property." See Com. Br. p. 11. Or alternatively, the Commonwealth suggests that whether or not a person has "good reason to fear injury" is a "necessary determination" that police chiefs must make before deciding whether or not to issue licenses. See id. at 10. But the Commonwealth never explains how the statute's "may issue . . . if it appears" language would justify these conclusions.

Nor does the Commonwealth identify any court decisions that would modify or limit this otherwise clear statutory language. The two decisions that the Commonwealth cites (p. 10) are inapposite. The Supreme Court's statement that "an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider"

-3-

concerned federal rulemaking proceedings governed by the Administrative Procedures Act. See Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983). And the appellate court's decision in Long v. Wickett, 737 N.E.2d 885, 50 Mass. App. Ct. 380 (2000), concerned whether a trial court should have entered a final judgment when it adjudicated only some of the claims involved in a consolidated litigation. See id. at 893-94, 50 Mass. App. Ct. at 385-86. In the footnote the Commonwealth cites, the court explained that the "abuse of discretion" standard has different meanings in different contexts, and "in the Rule 54(b) context" it indicates the trial court's failure to consider the factors articulated in the court rule. See id. at 894 n.8, 50 Mass. App. Ct. at 386 n.8. Neither of these cases concerned § 131 at all, and any bearing they might have would be merely tangential and speculative.

### B. There is no substantial uncertainty about whether police chiefs can impose restrictions as they "deem[] proper"

Setting this aside, the General Court's 1998 amendment gave police chiefs the *express* authority to issue licenses "subject to such restrictions . . . as the licensing authority *deems proper*." M.G.L. c. 140, § 131(a)-(b) (emphasis added). By its terms, a statutory authorization to impose restrictions as a decision-maker "deems proper" means that the decision-maker does not need to justify the imposition of restrictions on other grounds. See Plfs. Br. pp. 7-8.

The Commonwealth responds by *conceding* that "Massachusetts courts have not addressed what factors guide or limit the discretion of licensing authorities in setting restrictions, if any, on licenses-to-carry where a qualified applicant establishes a 'good reason to fear injury.'" Com. Br. p. 12. This concession ought to be the end of the matter – for in the absence of intervening caselaw, there is no reason to doubt that § 131 means what it says – but the Commonwealth nevertheless suggests that there remains a "question" about whether this "deems proper" language incorporates a restriction on a police chief's discretion. See id. at 11-12. The

Commonwealth argues that allowing a Massachusetts court to answer this question "*may* be determinative of the plaintiffs' Second Amendment claims. It *may* be that a Massachusetts court would agree with this Court's view – that the statute intends that least 'some subset' of first time applicants receive an unrestricted license to carry[.]" Id. at 12-13 (emphases added).

But again, the mere possibility that a state court might grant relief is no basis for abstention. And a "question" that "Massachusetts appellate courts have not answered," id. at 14, plainly does not constitute "substantial uncertainty" about the meaning of a state law. Indeed, by this flawed rationale, federal courts would need to abstain in virtually all challenges to state laws, as lawyers would normally be able to devise novel "questions" that state courts had never addressed. This would violate the fundamental principle that abstention "is the exception, not the rule." Haw. Hous. Auth., 467 U.S. at 236 (quotation omitted).

Nor do the Commonwealth's case citations indicate that there is substantial uncertainty regarding a police chief's statutory authority to impose restrictions as he or she "deems proper." Most of the cases that the Commonwealth cites (pp. 11-13) simply do not address this issue. For example, the Supreme Judicial Court's decision in Firearms Records Bureau v. Simkin, 993 N.E.2d 672, 466 Mass. 168 (2013), concerned the statutory requirement that one be a "suitable person" – not a police chief's authority to impose restrictions as he or she "deems proper," nor (for that matter) the requirement of "good reason to fear injury." See id. at 674, 466 Mass. at 169. This is also true of MacNutt v. Police Comm'r of Boston, 572 N.E.2d 577, 30 Mass. App. Ct. 632 (1991), which upheld the requirement of a proficiency exam. See id. at 579, 30 Mass. App. Ct. at 635 ("The grant to him, without guidelines, of the general power and responsibility of determining a person's suitability to carry firearms necessarily includes any incidental power reasonably related to effectuating the purposes of the granting statute."). The appellate court's

decision in Lynch v. Police Comm'r of Boston, 681 N.E.2d 307, 43 Mass. App. Ct. 107 (1997), also does not indicate substantial uncertainty as to the meaning of the "deems proper" language. See Com. Br. pp. 11-12. The Lynch decision directed the Boston Police Department to begin issuing 260 taxi licenses that the Department had authorized, but had not yet issued. See Lynch, 681 N.E.2d at 310-11, 43 Mass. App. Ct. at 112. "The well-settled rule that mandamus will not lie to compel a municipal officer to exercise his or her judgment or discretion in a particular way" did not apply because the statute at issue *directed* the Department to issue the requisite number of licenses. See id. at 309, 43 Mass. App. Ct. at 110. Of course, in the present case, unlike in Lynch, there is no statute that affirmatively directs the issuance of licenses.

Ultimately the Commonwealth relies on Ruggiero v. Police Comm'r of Boston, 464 N.E.2d 104, 18 Mass. App. Ct. 256 (1984), to attempt to link the statutory discretion to restrict as "deem[ed] proper" to the concept of "good reason to fear injury." See Com. Br. pp. 10-12. However, this reading of Ruggiero is doubtful, as the court in Ruggiero actually reasoned that police chiefs had "the power to limit *any* license granted under § 131 to a specified purpose." Ruggiero, 464 N.E.2d at 107, 18 Mass. App. Ct. at 260 (emphasis added).[1] But the more fundamental problem is that the statutory authorization to impose restrictions as "deem[ed] proper" came 14 years *after* the Ruggiero decision. See 1998 Mass. Acts ch. 180, § 41, sec. 131(a)-(b). Hence, while it was necessary for the court in Ruggiero to ground the power to restrict in other aspects of the licensing law, there is no longer a need to resort to inference: the licensing law expressly provides this power, and it also expressly makes it a function of what the

---

[1] This Court previously found that Ruggiero supports the proposition that "the licensing authority's power encompasses even a categorical policy of restricting licenses and denying all applications for unrestricted licenses." See Pineiro v. Gemme, no. 10-40262, 2011 U.S. Dist. LEXIS 117749, *25 (D. Mass. Oct. 12, 2011).

police chief "deems proper." It is telling that while Plaintiffs emphasized this point in their supplemental brief, see Plfs. Br. pp. 7-8, the Commonwealth's only response is to ignore it.

### C. This is not a new statute that state courts have not had the chance to interpret

The Commonwealth's claim that abstention is appropriate because the pertinent aspects of § 131 "ha[ve] never been interpreted by a state court" is just plain wrong. See Com. Br. p. 14. First, § 131 is not a newly enacted law, and this is not a situation in which the Massachusetts courts have not "been afforded a reasonable opportunity to pass on underlying issues of state law." Harman v. Forssenius, 380 U.S. 528, 534 (1965) (voting laws challenged promptly after 1963 enactment). Rather, the operative language of the licensing law has included this same basic language – that police chiefs "may . . . issue" licenses "if it appears" that applicants have "good reason" – since its 1906 enactment. See 1906 Mass. Acts ch. 172, § 1. The lack of any court decisions that adopt the limiting constructions that the Commonwealth hypothesizes shows only that there is no substantial uncertainty.

Moreover, even if this were a case in which state courts had not had the opportunity to review the state law – and it plainly is not such a case – Pullman abstention would still be unwarranted "unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." Haw. Hous. Auth., 467 U.S. at 236 (quotation omitted). "If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." Harman, 380 U.S. at 534-35. Thus, even if the past 108 years were set aside, the lack of any reason for concluding that the statute "does not mean exactly what it says," Haw. Hous. Auth., 467 U.S. at 237, would continue to make Pullman abstention inappropriate.

### (II) THE COMMONWEALTH NEVER ADDRESSES THE FACT THAT IT IS UNLIKELY THAT THE SUPREME JUDICIAL COURT WOULD GRANT RELIEF TO ALL THE PLAINTIFFS

Plaintiffs' supplemental brief showed (pp. 10-11) that even if there were substantial uncertainty about § 131's meaning, Pullman abstention would still be inappropriate because there would be no "reasonable possibility" that the proposed state-court ruling would "obviate the need for a federal constitutional ruling." Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 322 (1st Cir. 1992). First, even if the state court were to find an entitlement to an unrestricted license on an adequate showing of "reason to fear injury," it is very unlikely that all of the Plaintiffs would qualify for unrestricted licenses. Three of the four plaintiffs in this case did not make any attempt to distinguish their circumstances from those of the general population. Second, it is also very unlikely that all of the Plaintiffs could satisfy the standard of review by showing that there was "no reasonable ground" for each Defendants' respective licensing decision. See M.G.L. c. 140, § 131(f).

The Commonwealth's attempt to address this issue completely misses the mark. The Commonwealth first attempts to mischaracterize the Plaintiffs as maintaining the position that state law imposes "*no* limit on the discretion of the authority to deny a license." Com. Br. p. 16 (emphasis added). This, however, is not the case. Plaintiffs' actual position is that "[i]t is highly unlikely that a Massachusetts court applying state law would find that it was arbitrary, capricious, or an abuse of discretion to deny unrestricted licenses to any of the Plaintiffs, and it is even more unlikely that a state court would grant relief to *all* of them." Plfs. Br. p. 11. From this errant premise, the Commonwealth next observes that arbitrary-and-capricious review "is not without limits," and that police chiefs denying licenses must "state the reasons" for their decisions – as though to suggest that perhaps the Plaintiffs might indeed be able to obtain state-court relief. See

Com. Br. p. 16 (quotations omitted). But this does nothing to refute the fact that it is *highly unlikely* that all the Plaintiffs would qualify for relief under the deferential arbitrary-and-capricious standard.

### (III)   FURTHER DISCOVERY WOULD NOT FACILITATE RESOLUTION OF THIS CASE

The Commonwealth alleges a small discrepancy between the affidavits articulating the Defendants' licensing policies and, seizing upon this alleged discrepancy, argues that "additional fact-finding is necessary to specifically identify the current policy of each licensing authority." Com. Br. p. 8. But assuming it even exists, this discrepancy is small and does not appear to have any bearing on adjudication of the merits.

First consider the evidence submitted with the summary judgment motions, which showed that both Defendants (Chief Grimes and Chief St. Pierre, the successor of Chief Champagne) "ordinarily" impose a "Target & Hunting" restriction on first-time applicants for licenses applicants. Joint Statement (Doc. No. 34) ¶¶ 9, 10. This evidence also showed that both police chiefs "usually" or "ordinarily" issue licenses without restrictions when individuals renew after the initial 5-6 year license term. See id. ¶ 10; Aff. of R. Grimes (Doc. No. 33) ¶ 3; Aff. of R. Champagne (Doc. No. 32) ¶ 5. However, the evidence also showed that these policies were not absolute. Aside from the fact that both police chiefs articulated their policies using the words "usually" and "ordinarily," each Defendant also said that he would potentially issue an unrestricted license to a first-time applicant who had a military background or a business need. See Joint Statement ¶¶ 9-10. And Chief Grimes said that he might also provide an exception for an individual with a law enforcement background, while Chief Champagne said that he might provide an exception for someone who had been licensed to carry firearms in another state. See id. Finally, Plaintiffs submitted evidence showing that Chief Grimes did not always remove restrictions when individuals renewed. Both Plaintiff Chris Davis and witness Jack Darling moved to Weymouth with unrestricted licenses, but each received a restriction when he renewed.

See Joint Statement ¶¶ 11-13; Dec. of J. Darling (Doc. No. 53) ¶¶ 4-10; see also Dec. of J. Fee (Doc. No. 64) ¶ 12 ("In my capacity on the board of directors of the Weymouth Sportsmen's Club, I know of other individuals who hold LTC's issued by the Weymouth Police Department and who have renewed LTC's with the Weymouth Police Department. It is my understanding that the Weymouth Police Department does not remove restrictions on renewal.").

After this Court issued its decision and order, both Defendants then filed additional affidavits testifying that neither have "categorical" policies of refusing to issue unrestricted licenses to first-time applicants, and that any applicant for a license is "considered and reviewed individually." See Supp. Aff. of R. Grimes (Doc. No. 75-1) ¶ 2; Supp. Aff. of M. Crane (Doc. No. 75-2) ¶ 2. Both attested that they would consider issuing unrestricted licenses to an individual who demonstrated (what was in their view) "good reason to fear injury." See Supp. Aff. of R. Grimes ¶¶ 2-3; Supp. Aff. of M. Crane ¶ 2.

Thus, notwithstanding the Commonwealth's claims, it is not at all clear that there has been a change in Defendants' policies. The evidence submitted with the summary judgment motions showed that Defendants' policies were neither absolute nor consistently applied – and the Defendants' supplemental affidavits are entirely consistent with that conclusion.

What is more important is that the Commonwealth does not explain how further factual development would facilitate the resolution of this case. Plaintiffs submit that it is unconstitutional to have a general policy ("categorical" or not) of denying the right to bear arms on the basis of considerations that do not relate to public safety. And the evidence submitted to the Court (and uncontested by Defendants) shows that Defendants' do not base their decisions on an individual's training or competency with firearms: Defendants refuse to issue unrestricted licenses notwithstanding the fact that individuals have either completed substantial training or

-10-

have offered to do so. See Joint Statement ¶ 22; Dec. of R. Capone (Doc. No. 42) ¶ 8; Dec. of J. Fee (Doc. No. 64) ¶¶ 3-9. This should be enough to decide the case – and the Commonwealth provides no explanation of why it does not.

## CONCLUSION

There is no substantial uncertainty that § 131 grants Defendants broad discretion to restrict licenses as they "deem[] proper" – and even if there were this level of uncertainty, it is unlikely that a decision from a state court would obviate the need to decide this case. There is accordingly no basis for abstention, and "to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." Zwickler v. Koota, 389 U.S. 241, 252 (1967). The Court should rule on the merits.

Respectfully submitted,
THE PLAINTIFFS,
By their attorneys,

David D. Jensen, Esq.
Admitted *Pro Hac Vice*
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com

Patrick M. Groulx, Esq.
BBO No. 673394
POLIS LEGAL
P.O. Box 76056
Melrose, Massachusetts 02176
Tel: 978.549.3124
Fax: 617.500.9955

Dated: May 29, 2014                pgroulx@polislegal.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 29 May 2014.

       /s/ David D. Jensen
      David D. Jensen, Esq.