UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; MARY LEARNING; KEN TRUDELL; NATHAN COOK; MATT WOLFF; and COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>      Plaintiffs,<br><br>  -against-<br><br>RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; and THOMAS GRIFFIN, in his Official Capacity as Chief of the Peabody Police Department,<br><br>      Defendants. | CIVIL ACTION NO.<br>1:13-cv-10246<br><br><br><br><br><br><br><br><br>PRELIMINARY EQUITABLE<br>RELIEF REQUESTED |

## SECOND AMENDED COMPLAINT

Plaintiffs CHRISTOPHER DAVIS; MARY LEARNING; KEN TRUDELL; NATHAN COOK; MATT WOLFF; and COMMONWEALTH SECOND AMENDMENT, INC., as and for their Complaint against Defendants RICHARD C. GRIMES; and THOMAS GRIFFIN, allege as follows:

  1. This suit challenges Defendants' imposition of "sporting," "hunting," and/or "target" restrictions on handgun licenses. These restrictions prevent Plaintiffs from using handguns for the purpose self-protection, which contravenes "the right of the people to keep and bear arms" that the Second Amendment secures.

### JURISDICTION AND VENUE

  2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

3. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts and/or within the geographic confines of the Commonwealth of Massachusetts.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. The Eastern Division is appropriate pursuant to LR 40.1(D)(1)(b) because all of the parties reside in the District and a majority reside in the Eastern Division.

## PARTIES

6. Plaintiff Christopher Davis is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

7. Plaintiff Mary Learning is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

8. Plaintiff Ken Trudell is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

9. Plaintiff Nathan Cook is a citizen and resident of Massachusetts residing in the Town of Peabody, Essex County.

10. Plaintiff Matt Wolff is a citizen and resident of Massachusetts residing in the Town of Peabody, Essex County.

11. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

12. Defendant Richard C. Grimes ("Chief Grimes") is sued in his official capacity as Chief of the Weymouth Police Department (Norfolk County), responsible for issuing handgun licenses pursuant to M.G.L. ch. 140, § 131. As detailed herein, Defendant Chief Grimes has

enforced the challenged laws, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs.

13. Defendant Thomas Griffin ("Chief Griffin") is sued in his official capacity as Chief of the Peabody Police Department (Essex County), responsible for issuing handgun licenses pursuant to M.G.L. ch. 140, § 131.  As detailed herein, Defendant Chief Griffin has enforced the challenged laws, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs.

## CONSTITUTIONAL PROVISIONS

14. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

15. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008).

16. The Second Amendment guarantees individuals a fundamental right to carry operable handguns in non-sensitive public places for the purpose of self-defense.

17. The Second Amendment "is fully applicable against the States." McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 3026 (2010).

18. The States retain the ability to regulate the manner of carrying handguns within constitutional parameters; to prohibit the carry of handguns in specific, narrowly defined sensitive places; to prohibit carrying arms that are not within the scope of Second Amendment protection; and, to disqualify specific, particularly dangerous individuals from possessing guns. However, States may not deny law-abiding citizens the right to carry handguns for protection.

19. The Equal Protection Clause of the Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Under the Equal Protection Clause, "classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988).

### MASSACHUSETTS HANDGUN LICENSING LAWS

20. It is unlawful to possess, use, or carry a handgun unless one holds a License to Carry Firearms ("LTC") issued pursuant to M.G.L. ch. 140, § 131. See M.G.L. ch. 269, § 10(a); M.G.L. ch. 140, §§ 129B-129C.

21. Under M.G.L. ch. 140, §§ 121, 131(d) Massachusetts residents apply for LTC's from the police chief of the town or city where they reside or have a place of business.

22. A person seeking an LTC must meet requirements related to age, criminal background, mental fitness, drug and alcohol abuse, and active arrest warrants and domestic violence restraining orders. See M.G.L. ch. 140, §§ 131(d)(i)-(vii). A person must complete training. See id. at § 131P. Finally, a person must be found to be a "suitable person" before any LTC can be issued. See id. § 131(d). This case does not concern any of these requirements.

23. LTC's are "designated Class A or Class B." M.G.L. ch. 140, § 131. A Class A LTC authorizes a person to possess a handgun and to carry it in operable (loaded) condition, either concealed or in open view. See M.G.L. ch. 140, § 131(a). A Class B LTC authorized a person to possess a handgun (capable of holding no more than 10 rounds of ammunition) and to carry that handgun loaded and in open view (but not concealed). See M.G.L. ch. 140, § 131(b). Effective August 13, 2014, Massachusetts law prohibits "licensing authorities" such as the Defendants from issuing, renewing, or accepting an application for a "Class B" license. See 2014 Mass. Acts ch. 284, § 109. This case does not concern the differences between Class A and Class B LTC's.

24. In either case (Class A or Class B) Massachusetts law authorizes local licensing officials to impose "restrictions relative to the possession, use or carrying of" guns as they "deem[ ] proper." M.G.L. ch. 140, § 131(a)-(b).

25. A local official's decision to impose restrictions on an individual's LTC will be upheld so long as it is not arbitrary, capricious, or an abuse of discretion. See, e.g., Ruggiero v. Police Comm'r of Boston, 18 Mass. App. 256, 259, 464 N.E.2d 104, 107 (1984).

26. Some Massachusetts localities flatly refuse to issue LTC's without restriction to "sporting," "target," "hunting," or other similar purposes. Other Massachusetts localities refuse to issues LTC's without restrictions unless applicants establish (to the particular locality's satisfaction) that they have a particularly pronounced "need" to carry a gun. Other Massachusetts localities apply a more *ad hoc* policy under which some applicants receive unrestricted LTC's, and others do not, but without any apparent difference in circumstances. Some localities normally impose sporting-type restrictions, but issue unrestricted LTC's to people who have obtained them in the past. About half of all Massachusetts localities (not party to this lawsuit) generally issue LTC's without restrictions to private citizens who request them.

27. Carrying, using, or possessing a handgun in violation of the restrictions placed on an LTC is grounds for suspension or revocation of the LTC and a fine of $1,000 to $10,000. See M.G.L. ch. 140, § 131(a), (b).

28. Massachusetts' LTC scheme results in otherwise-qualified, law-abiding citizens of Massachusetts being denied the right to carry a firearm for self-defense, while other, similarly situated residents of Massachusetts are permitted to exercise their right to bear arms to protect themselves. For example, neighboring localities may adopt different policies regarding unrestricted LTC's, resulting in a citizen's right to bear arms being dependent on whether he

lives in one locality or the other. One citizen may be denied the right to carry a firearm for self-defense because local licensing officials refuse to issue unrestricted LTC's, while an otherwise indistinguishable neighbor may be able to obtain an unrestricted LTC if he happens to have a place of business in a locality that does issue unrestricted licenses. A woman may obtain an unrestricted LTC from a local licensing official while her husband cannot, solely because he has already been issued a restricted LTC by licensing officials in their former home locality, and those officials refuse to revoke his license to allow him to reapply to officials in his new home. These examples are not fanciful; on information and belief, they all describe scenarios that have taken place under Massachusetts' LTC scheme and, indeed, some of these irrational and arbitrary results have been experienced by the Plaintiffs themselves.

<u>DEFENDANTS' APPLICATION OF THE STATUTE AGAINST THE PLAINTIFFS</u>

CHIEF GRIMES AND THE WEYMOUTH POLICE DEPARTMENT

29.   Plaintiff Christopher Davis previously lived in Foxborough, Massachusetts and held a Class B LTC issued by the Foxborough Police Department. (Mr. Davis had applied for a Class A LTC, but the Foxborough Police Department had issued him a Class B LTC, instead.) This Foxborough Class B LTC carried no restrictions. Mr. Davis moved to Weymouth in 2007 and continued to hold his unrestricted Class B LTC for its full duration.

30.   When Mr. Davis's LTC was due to expire, he applied for a new LTC from Chief Grimes of the Weymouth Police Department in 2008. Mr. Davis applied for an LTC of Class A. Mr. Davis met all applicable requirements for issuance of an LTC.

31.   At the time he submitted his application, Mr. Davis specifically requested that Chief Grimes issue him an LTC that did not carry restrictions. Officer Brian King, who accepted Mr. Davis's application, stated that the town's policy was to only issue unrestricted licenses to law enforcement and military personnel and businesses owners.

32. On July 3, 2012 Chief Grimes issued Mr. Davis a Class A LTC carrying the restriction of "Target & Hunting."

33. Plaintiff Mary Learning applied for a Class A LTC from Chief Grimes in 2013. Ms. Learning met all applicable requirements for issuance of an LTC. On her application, Ms. Learning requested that her LTC be issued "for lawful purposes only."

34. On October 9, 2013 Chief Grimes issued Ms. Learning a Class A LTC carrying the restriction of "Target & Hunting."

35. Plaintiff Ken Trudell applied for a Class A LTC from Chief Grimes in 2013. Mr. Trudell met all applicable requirements for issuance of an LTC. On his application, Mr. Trudell requested that his LTC be issued "for all lawful purposes."

36. At the time he submitted his application, Mr. Trudell specifically requested that Chief Grimes issue him an LTC that did not carry restrictions. Officer Chase, who accepted Mr. Trudell's application, stated that the town's policy was to only issue unrestricted licenses to businesses owners and individuals required to carry guns in the course of their employment.

37. On October 17, 2013 Chief Grimes issued Mr. Trudell a Class A LTC carrying the restriction of "Target & Hunting."

### CHIEF GRIFFIN AND THE PEABODY POLICE DEPARTMENT

38. In approximately 2011 Plaintiff Nathan Cook applied for a Class A LTC from Chief Robert Champagne (Chief Griffin's predecessor) of the Peabody Police Department in Peabody, Massachusetts. Mr. Cook met all applicable requirements for issuance of an LTC. On his application, Mr. Cook requested that his LTC be issued "for all lawful purposes." At the time of his application, Mr. Cook had held a Firearms Identification Card issued by the Peabody Police Department for about 5 years.

39. At the time that Mr. Cook submitted his application, Detective Olson, who accepted Mr. Cook's application, told him that the Chief would not issue an unrestricted license to a 24 year-old applicant, but that they would "talk about" issuing Mr. Cook an unrestricted LTC when his license was up for renewal. Mr. Cook later asked Detective Olson's successor (Detective Crane) to remove the restriction, but Detective Crane refused to do so.

40. On May 9, 2011 Chief Champagne issued Mr. Cook a Class A LTC with the restriction of "Target & Hunting."

41. In approximately 2003 Plaintiff Matt Wolff applied for a Class A LTC from a predecessor of Chief Griffin. Mr. Wolff met all applicable requirements for issuance of an LTC. On his application, Mr. Wolff requested that his LTC be issued "for all lawful purposes."

42. A few months later, Chief Griffin's predecessor issued Mr. Wolff a Class B LTC with the restriction of "Target & Hunting."

43. Mr. Wolff asked to have the "Target & Hunting" restriction removed. Personnel in the Police Department told him that only business owners could obtain unrestricted licenses.

44. Mr. Wolff renewed his LTC in approximately 2006 and again requested issuance "for all lawful purposes." In approximately 2006, Chief Griffin's predecessor again issued Mr. Wolff a Class B LTC with a "Target & Hunting" restriction.

45. Mr. Wolff again renewed his LTC in 2010 and again requested issuance "for all lawful purposes." On July 16, 2010 Chief Griffin's predecessor issued Mr. Wolff a Class A LTC with a "Target & Hunting" restriction.

### INJURY TO THE PLAINTIFFS

46. The restriction of the above individual Plaintiffs' LTC's to "target," "hunting," and/or "sporting" purposes precludes these Plaintiffs from possessing, using, or carrying handguns for the purpose of self-protection. But for these Plaintiffs' fear that their LTC's would

be suspended or revoked and/or that they would be fined, each of these Plaintiffs would possess, use, and carry a handgun for the purpose of self-protection.

47. Plaintiff Comm2A is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms.

48. Comm2A expends significant resources assisting people who receive restricted LTC's under the authority of M.G.L. c. 140, § 131(a)-(b), including specifically people receiving restricted licenses from the Peabody Police Department and the Weymouth Police Department.

49. Supporters of Comm2A have received restricted LTC's pursuant to M.G.L. ch. 140, § 131(a)-(b) and are injured in their inability to carry handguns for protection.

50. In addition, both supporters of Comm2A and members of the general public have contacted Comm2A as a result of the restriction of their LTC's. Comm2A has expended time, energy, and money to consult with and provide assistance to these individuals, and particularly with regard to issues surrounding their inability to exercise the right of armed self-protection.

51. Comm2A would not expend its organizational resources to respond to the demands of its supporters and of the general public regarding the restriction of their LTC's by the Defendants if Defendants did not impose restrictions in the first instance. Comm2A would instead use its organizational resources to pursue other organizational priorities.

52. All of the Plaintiffs' injuries are irreparable because people are entitled to enjoy their constitutional rights in fact.

## COUNT I

### (U.S. Const., Amends. II & XIV, 42 U.S.C. § 1983)

53. Massachusetts' LTC licensing scheme, and in particular M.G.L. ch. 140, § 131(a)-(b) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

54. Defendants have exercised this authority by issuing Plaintiffs LTC's that prohibit them from carrying and using handguns for the purpose of self-defense and have thereby deprived Plaintiffs of their right to keep and bear arms.

55. Defendants have further exercised this authority by adopting policies, customs, and/or practices of generally issuing LTC's with "sporting," "hunting," and/or "target" restrictions that prohibit carrying or using handguns for the purpose of self-defense.

56. Defendants have thereby infringed Plaintiffs' rights under the Second Amendment and the Due Process Clause of the Fourteenth Amendment, and Defendants have damaged Plaintiffs in violation of 42 U.S.C. § 1983.

## COUNT II

### (U.S. Const., Amends. II & XIV, 42 U.S.C. § 1983)

57. Massachusetts' LTC licensing scheme, and in particular M.G.L. ch. 140, § 131(a)-(b) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

58. Defendants have exercised this authority such that the ability of law-abiding citizens of Massachusetts to exercise their fundamental right to bear arms often turns on arbitrary considerations, such as whether an individual resides on the correct side of a local boundary line, has a place of business in a locality that issues unrestricted LTC's, was able to obtain an unrestricted LTC at some point in the past, or has held a restricted LTC for some period of time.

59.  The aforesaid statute, and Defendants' implementation of this statute, violates Plaintiffs' Second Amendment right to keep and bear arms and their Fourteenth Amendment rights to due process and equal protection of the laws, and damages Plaintiffs in violation of 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

  i. declaratory judgment that M.G.L. ch. 140, § 131(a)-(b) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes;

  ii. declaratory judgment that Defendants' policies, customs, and/or practices implementing M.G.L. ch. 140, § 131(a)-(b) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes;

  iii. declaratory judgment that M.G.L. ch. 140, § 131(a)-(b) & (d) violate the Equal Protection Clause to the extent they allow similarly situated, law-abiding citizens to be treated differently for purposes of exercising their fundamental right to carry a loaded and operable handgun for self-protection, in a manner not sufficiently tailored to a sufficiently important government interest;

  iv. injunctive relief directing Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, to issue to Plaintiffs Christopher Davis; Mary Learning; Ken Trudell; Nathan Cook; and Matt Wolff LTC's that do not carry "hunting," "target," or "sporting" restrictions, nor any other similar restrictions that would preclude the carry and use of handguns for self-protection;

  v. injunctive relief precluding Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from issuing LTC's with "hunting," "target," or "sporting" restrictions, or with any other similar restriction that would preclude the use of handguns for self-protection;

    vi.    such other and further relief, including further and/or preliminary injunctive relief, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable; and

    vii.    attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: September __, 2014

> Respectfully submitted,
>
> THE PLAINTIFFS,
>
> By their attorneys,
>
>
> /s/ David D. Jensen
> David D. Jensen, Esq.
> DAVID JENSEN PLLC
> 111 John Street, Suite 420
> New York, New York 10038
> Tel: 212.380.6615
> Fax: 917.591.1318
> david@djensenpllc.com
> Admitted *Pro Hac Vice*
>
> Patrick M. Groulx, Esq.
> BBO No. 673394
> Donahue, Grolman & Earle
> 321 Columbus Avenue
> Boston, Massachusetts 02116
> Tel: 617.859.8966
> Fax: 617.859.8903
> patrick@d-and-g.com