UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER DAVIS; WILLIAM J. THOMPSON, JR.; WILSON LOBAO; ROBERT CAPONE; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; and ROBERT ST. PIERRE, in his Official Capacity as Chief of the Peabody Police Department, <br><br> Defendants, <br><br> -and- <br><br> COMMONWEALTH OF MASSACHUSETTS, <br><br> Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO.<br>)<br>)  1:13-cv-10246<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' REPLY IN SUPPORT OF LEAVE TO AMEND

Although they tacitly concede that Plaintiffs' proposed amendment can be achieved expeditiously, Defendants assert that *any* delay resulting from amendment would be "undue" and would justify denying leave. However, an undue delay is one that results from a party's lack of diligence – and is not present here, as the Plaintiffs acted immediately when subsequent developments made this amendment necessary. Defendants' remaining objections are misplaced and no basis for denying leave.

### (I)    THERE IS NO UNDUE DELAY

Plaintiffs' moving papers invoke the well established rule that courts should grant leave to amend unless there is "undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party."  Plaintiffs' Br. p. 3 (quoting Foman v. Davis, 371 U.S. 178, 182 (1978)).

Defendants respond by arguing (pp. 2-3) that undue delay justifies denying Plaintiffs' motion.  However, the only basis for undue delay that Defendants cite is their claim that some of the new plaintiffs' applications may be different from those of the prior plaintiffs.  While this is not in fact the case, irrespectively, it is no basis for undue delay.

The undue delay "standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent."  See Stockfood Am., Inc. v. Pearson Educ., Inc., no. 2:12-cv-124-JAW, 2012 U.S. Dist. LEXIS 169503, *3 (D. Mass. Nov. 29, 2012) (quoting Steir v. Girl Scouts of the USA, 383 F.3d 3, 12 (1st Cir. 2004)).  "[I]n assessing whether delay is undue, a court will take account of what the movant knew or should have known and what he did or should have done."  Zullo v. Lombardo, 755 F.3d 1, 3-4 (1st Cir. 2014) (quotations omitted).  Thus, there is a very substantial distinction between amendments that address recent factual developments and those that seek "to devise new theories of liability based on the same facts pled in the [original] complaint."  See Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 391 (1st Cir. 2013) (quotation and alteration omitted); see also Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 20 (1st Cir. 1979) (distinguishing "previously unknown facts which alter[ ] the shape of [a] case" from a plaintiff who "simply allow[s] his case to lie fallow").  Plaintiffs' obligation is to show "some valid reason" for seeking leave at the present time, rather than earlier.  Hayes, 602 F.2d at 20 (1st Cir. 1979) (quotation omitted).

And Plaintiffs have met this burden and shown just such a valid reason:  Defendant Chief Griffin's July 30, 2014 decision to grant Plaintiff Robert Capone an unrestricted license, with the result that there is now no remaining individual Plaintiff with standing against Chief Griffin.  Cf.

id. at 20 ("This is not a situation in which the delay in moving to amend can be attributed, even in part, to either [the opposing party] or the court.").  Defendants submit selected pages from an August 25, 2014 internet posting that sought to locate interested individuals with restricted licenses – but this shows only that the Plaintiffs acted diligently after this development, rather than delaying unduly.[1]

### (II)   THE FACTS SURROUNDING THE NEW PLAINTIFFS ARE MATERIALLY THE SAME – AND IN ANY EVENT, THERE IS NO UNDUE PREJUDICE

#### A.  The Facts are Not Materially Different

Both of the individuals included in Plaintiffs' summary judgment motion who applied to Defendant Chief Grimes did so by submitting a handwritten paper application to the Chief's delegate.  This delegate then prepared an electronic application form using the state "MIRCS" computer system, and each of these MIRCS-generated forms indicated (among other things) that the applicant sought a license for "Target & Hunting" purposes.  However, each of these Plaintiffs had in fact requested an unrestricted license for self-defense purposes on their own application forms and in separate correspondence or discussions with the licensing officer.  Both of these Plaintiffs signed these MIRCS-generated forms unaware that their stated "reason(s) for requesting" a license had been changed to "Target & Hunting" during the application process. See Joint Statement of Facts (Doc. No. 34) ¶¶ 7, 11, 13-15, 17; Joint Exhibits (Doc. No. 35 & attachments) M-P, V; Dec. of C. Davis (Doc. No. 39) ¶¶ 6-7, 9-10, 13 & exs. 2-4, 6; Dec. of W. Thompson (Doc. No. 40) ¶¶ 5-7, 11-12 & ex. 1.

In this light, Defendants' claim that the applications of the new individual plaintiffs are different (based on documentation that is available to them, but which they have not provided to

---

[1] While Defendants seem to suggest that this internet posting shows the absence of any "groundswell of discontentment," they miss the basic fact that in this locality of under 52,000, it took little effort and a little over a day to locate additional individuals who were not content with the licenses Chief Griffin had issued to them.

Plaintiffs[2]) lacks basis.  First, Defendants' objection (pp. 2-3) that proposed new plaintiffs Ken Trudell and Mary Learning applied to Defendant Chief Grimes and apparently signed MIRCS-generated forms stating that their "reason(s) for issuance" was "Target & Hunting" does *not* state a basis for material distinction – as Plaintiffs Chris Davis and William Thompson also did just this.  (Not insignificantly, this Defendant concedes (p. 3 n.3) that it does not have these individuals' original, handwritten applications, which would reflect their actual intent.)

Defendants' objection (p. 3) to the addition of Matthew Wolff and Nathan Cook is somewhat unclear.  Defendants assert that the "reason(s) for issuance" lines of their application forms were left "blank," but they do not identify which application form(s), nor do they address the import of any documents or communications with these individuals.

More important, but ignored by Defendants, is that the facts pleaded in their proposed amendment make it clear that each of these individuals did indeed request unrestricted licenses that would allow self-defense outside the home – on their applications and/or in conversations they had with each Defendants' delegates at the time of applying, as well as later.  See Proposed Second Amended Complaint (Doc. No. 86-1) ¶¶ 33, 35-36, 38-39, 41, 43.  Thus, the facts surrounding the new plaintiffs' applications are not materially different from those of the original Plaintiffs – a fact that should not be surprising, given that Defendants continue to maintain the same policies.

**B.  Any Prejudice is Not Undue**

Defendants contend (p. 3) that even if this matter is resolved in an expedited fashion, such as that proposed by Plaintiffs in their moving papers, "such a process will [still]

---

[2] Prior to filing this motion, and in connection with their LR 7.1(a)(2) attempt to resolve or narrow this motion, Plaintiffs had requested that Defendants provide copies of their files for the new plaintiffs.

unnecessarily delay this action."  However, Defendants make no claim that this will cause *undue* prejudice, and indeed, their brief does not address "prejudice" at all.

Contrary to Defendants' suggestion, the prejudice attendant to "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."  United States v. Cont'l Ill. Ins. Co., 889 F.2d 1248, 1255 (2d Cir. 1989). This is because "the burden of undertaking discovery, which [a defendant] would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice."  S.S. Silberblatt, Inc. v. E. Harlem Pilot Block, 608 F.2d 28, 43 (2d Cir. 1979).  Indeed, in a recent decision (addressing the essentially analogous issue of leave to amend a counter-claim) this Court itself observed that just because an amendment may require "some discovery" and thus may cause "some prejudice" does not mean that the amendment causes undue prejudice.  See Bern Unlimited, Inc. v. Burton Corp., no. 11-12278-FDS, 2014 U.S. Dist. LEXIS 80017, *35 (D. Mass. Jun. 12, 2014).  Rather, any prejudice "must be balanced against" the fact that "it would be a waste of resources for both the judicial system and the litigants to require defendants to file new actions to pursue their false-advertising claims."  See id. at *35-36; see also Picker Int'l, Inc. v. Leavitt, 128 F.R.D. 3, 8 (D. Mass. 1989) ("judicial economy and fairness also militate against requiring Picker to amend its complaint in Pittsburgh or to file a separate lawsuit").

These considerations are equally applicable here and counsel in favor of granting Plaintiffs' motion.  Any prejudice that results from the need to take further discovery is not undue and would have existed even if these plaintiffs had been included from the outset of the case.  Moreover, the burden involved in adding parties to the present case can be minimized, and it is plainly much less than the burden that would be involved in initiating a new civil action.

## (III)   PLAINTIFFS NEED NOT EXHAUST STATE REMEDIES

Defendants' claim (p. 4) that "notions of judicial comity suggest that the Court refrain from ruling" until Plaintiff Chris Davis has exhausted further remedies that may be available to him in state court is meritless.  It is well established that "exhaustion is not a prerequisite to an action under § 1983."  Patsy v. Bd. of Regents, 457 U.S. 496, 501 (1983).  And considerations of "comity" are likewise inapplicable.  See New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 367-68 (1989) ("Although our concern for comity and federalism has led us to expand the protection of Younger beyond state criminal prosecutions, . . . it has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action.  Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.").

## (IV)   THE CHAPTER 284 AMENDMENTS ARE IMMATERIAL

There is no basis for Defendants' claim (p. 3 n.3) that amendments contained in sections 48 and 51 of Chapter 284 of the 2014 Session Laws will make it "incumbent upon the individual chiefs of police statewide to file an action in District Court in those instances in which an individual police chief seeks to add a restriction. . . ."  To the contrary, these amendments do not make any material change to the power of police chiefs to impose restrictions, nor to the availability of (and procedures for) judicial review of restrictions in state court.

Specifically, section 48 amends the background requirements (21 years of age, no felony convictions, etc.) set forth in M.G.L. c. 140, § 131(d) – which must be met regardless and independent of whether a police chief decides to impose a restriction.  Section 48 further amends § 131(d) to disqualify "unsuitable" persons from licensure and to require a police chief suspending or denying a license on this basis to provide notice and an opportunity for judicial

review – again, regardless and independent of whether a police chief chooses to impose a restriction.[3]  A person who does not pass muster under these provisions cannot be issued *any* license, restricted or not, and these changes are irrelevant to this action.

Finally, while section 51 amends the judicial review provisions of § 131(f) to expressly provide that a person may seek judicial review of a license restriction, this amendment is insubstantial as it merely codifies preexisting caselaw that already permitted individuals to challenge restrictions under § 131(f).  See Ruggiero v. Police Comm'r of Boston, 464 N.E.2d 104, 105-07, 18 Mass. App. Ct. 256, 257-59 (App. Ct. 1984) (allowing appeal of decision to restrict license and applying the "no reasonable ground" standard set forth in § 131).

For the convenience of the Court, Plaintiffs attach a "redline" document that shows the pertinent changes that Chapter 284 made to § 131.

## CONCLUSION

Plaintiffs sought this amendment promptly – indeed, before Defendants had even notified the Court of the decision to remove Mr. Capone's restriction.  Plaintiffs have not delayed, and they certainly have not delayed unduly.  There is no basis for denying the leave that, per the Rule, should be freely given.

---

[3] The prior version of § 131(d), in contrast, had required individuals to be "suitable," but it had not defined the term, nor did it require notice or expressly provide for judicial review.

Respectfully submitted,

THE PLAINTIFFS,
By their attorneys,

 /s/ David D. Jensen
David D. Jensen, Admitted *Pro Hac Vice*
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

Patrick M. Groulx, BBO #673394
Donahue, Grolman & Earle
321 Columbus Avenue
Boston, Massachusetts 0116
Tel:  617.859.8966
Fax:  617.859.8903
Dated: October 1, 2014          patrick@d-and-g.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 1 October 2014.

 /s/ David D. Jensen
David D. Jensen