**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CHRISTOPHER DAVIS, WILLIAM P. THOMPSON, WILSON LOBAO, ROBERT CAPONE, and COMMONWEALTH SECOND AMENDMENT, INC.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**RICHARD C. GRIMES, in his official capacity as Chief of the Weymouth Police Department, and ROBERT ST. PIERRE, in his official capacity as Chief of the Peabody Police Department,**<br><br>**Defendants.** | **Civil No. 13-10246-FDS** |

**MEMORANDUM AND ORDER ON**
**MOTION TO AMEND AND DISMISSAL OF MOOT CLAIMS**

**SAYLOR, J.**

This is a federal constitutional challenge to the policies of two Massachusetts towns concerning firearms licenses. Plaintiffs Christopher Davis, William Thompson, Wilson Lobao, Ropert Capone, and Commonwealth Second Amendment, Inc., have brought suit under 42 U.S.C. § 1983, contending that certain policies of the Weymouth and Peabody Police Departments that restrict their ability to obtain gun licenses violate the Second and Fourteenth Amendments. In particular, plaintiffs contend that defendants unconstitutionally restrict the firearm licenses of first-time applicants to target and hunting purposes and exercise their licensing authority according to arbitrary considerations. The named defendants are Richard C. Grimes and Robert St. Pierre, the chiefs of the Weymouth and Peabody Police Departments,

respectively.

Plaintiffs have moved for leave to file an amended complaint. The amended complaint replaces Thompson, Lobao, and Capone with four different individual plaintiffs, who plaintiffs contend are similarly situated. Defendants oppose the motion, contending that the Court should instead simply dismiss the claims of Thompson, Lobao, and Capone, which are now moot, and which would eliminate all of the claims against defendant St. Pierre.

For the following reasons, the Court will deny plaintiff's motion for leave to file an amended complaint, and will dismiss the claims of plaintiffs Thompson, Lobao, and Capone as moot.

## I. Background

The relevant facts set forth below are undisputed, except as noted.

### A. Firearms Licensing Policy of Weymouth

Richard Grimes is the chief of the Weymouth Police Department. (Joint SMF ¶ 5). As police chief, he is responsible for issuing firearms licenses in Weymouth under Mass. Gen. Laws ch. 140, § 131. (*Id.*). With three exceptions, Chief Grimes "ordinarily" imposes a "target & hunting" restriction on Class A licenses for first-time applicants. (*Id.* ¶ 9). The three exceptions are that Chief Grimes will "usually" give unrestricted licenses to first-time applicants who are (1) members of law enforcement, (2) members of the military, or (3) "business owners who substantiate they handle large amounts of cash." (*Id.*).[1]

Although Chief Grimes "ordinarily" imposes a "target & hunting" restriction on Class A licenses for first-time applicants, Weymouth "does not have a 'categorical' policy of denying all

[1] Chief Grimes will grant a license with an "employment" restriction to "people who are required to carry a firearm by their employer and submit documentation from their employer." (*Id.*).

first-time applicants." (Second Suppl. Affidavit of Richard C. Grimes ¶ 2). Rather, according to Chief Grimes, under the Weymouth Police Department's new online policy, all applicants including first time applicants "will be considered individually on the merits." (*Id.*). Chief Grimes contends that the Weymouth policy allows a first time applicant to receive an unrestricted license to carry if the applicant is "deemed" (1) "a suitable person" and (2) "who demonstrates that he/she has good reason to fear injury to himself or family or for any other valid reason." (*Id.* ¶ 3).

**B. <u>Firearms Licensing Policy of Peabody</u>**

At the time this action was filed, Robert Champagne was the chief of the Peabody Police Department, and the individual responsible for issuing firearms licenses in Peabody. (Joint SMF ¶ 6). With three exceptions, he "ordinarily" imposed a "target & hunting" restriction on Class A licenses for first-time license applicants. (*Id.* ¶ 10). The three exceptions are that he would "consider" issuing an unrestricted Class A license to a first-time applicant who (1) "requires such a license to carry for employment or business purposes and supporting documentation is provided," (2) "has a history of being licensed unrestricted in his home state," (3) or had such a license "in the military." (*Id.*). Chief Champagne "ordinarily" issued renewal licenses without restrictions, unless a suitability condition existed. (*Id.*). As of May 22, 2013, Chief Champagne had issued 1,633 firearms licenses. (*Id.* ¶ 26). Of those licenses, 475 contained a "target & hunting" restriction. (*Id.*).

According to the defendants, Robert St. Pierre is the interim chief of the Peabody Police Department, and he has assigned to Peabody detective Michael Crane the responsibility of reviewing gun license applications on behalf of St. Pierre. (Suppl. Affidavit of Michael Crane

¶ 1). Although Peabody "ordinarily" imposes a "target & hunting" restriction on Class A licenses for first-time applicants, Peabody "does not have a 'categorical' policy of denying all first-time applicants." (*Id.* ¶ 2). Rather, according to Crane, under the Peabody policy, "the Peabody Police Department has and will continue to issue unrestricted" licenses to carry to a first time applicant so long as the applicant "is deemed suitable to hold such a license and . . . demonstrates good reason to fear injury to his person or property, or for any other valid reason." (*Id.*).

**C. <u>Plaintiffs' Applications for Firearms Licenses</u>**

**1. <u>Christopher Davis</u>**

Christopher Davis received an unrestricted Class B firearms license from the Police Chief of Foxborough, Massachusetts, in November 2006. (Davis Aff., ¶ 2). He then moved to Weymouth. (*Id.* ¶ 3).

Davis submitted an application to the Weymouth Police Department on March 22, 2012, requesting a Class A license with no restrictions. (Joint SMF ¶ 11). Brian King, the police officer who accepted Davis's application, told him that "generally speaking," Weymouth's policy for first-time applicants was to issue unrestricted licenses "only to law enforcement, military personnel, and business owners." (Joint SMF ¶ 11).

According to a letter of complaint later submitted by Davis, he told Officer King that he had a genuine concern for his safety because he had been a victim of criminal harassment and identity theft. (Joint Ex. P). On July 3, 2012, Davis received a Class A license with a "target & hunting" restriction. (Joint SMF ¶ 12). Later that month, Davis requested, in writing, that the restriction be removed. (*Id.* ¶ 13). Chief Grimes did not remove the restriction, stating through a

representative that the "denial was based on the same policies and guidelines that have been in place for many years." (Joint Ex. F).

**2. <u>William Thompson</u>**

On May 5, 2008, William Thompson applied for a Class A firearms license from the Weymouth Police Department. (Joint SMF ¶ 14).[2] He requested that the license contain no restrictions because he wanted it "to protect himself and his family." (*Id.*). On April 2, 2008, he was issued a Class A license with a "target & hunting" restriction. (*Id.*). Thompson later asked the Weymouth Police Department to remove the restriction; that request was denied. (*Id.* ¶ 15).

In 2009, Thompson and his wife moved to Halifax, Massachusetts. (Thompson Aff., ¶ 10). Thompson's wife applied for, and received, an unrestricted Class A firearms license from the Halifax Police Department. (Joint SMF ¶ 16). Thompson himself also applied for an unrestricted license. (*Id.* ¶ 17). The Halifax Police Department granted his application, but was unable to issue him a new license until his previous license from Weymouth expired. (*Id.*). Chief Grimes refused to terminate his license before its normal expiration date. (*Id.*).

On October 13, 2013, Thompson's Weymouth license expired, and the Halifax Police Department issued him an unrestricted license to carry. (Pls.' Mem. Support Mot. to Amend 2).

**3. <u>Wilson Lobao</u>**

On November 20, 2008, Wilson Lobao applied for a Class A firearms license from the Peabody Police Department. (Joint SMF ¶ 18). On the application, he stated that the reasons he requested a license were "carry to and from home to club range and boat – self protection." (Joint Ex. S).

---

[2] One of Grimes's predecessors, James Thomas, was chief of the police department at the time. (Joint SMF ¶ 14).

When Lobao submitted his application, "[police] personnel told him" that Chief Champagne "doesn't like to issue" unrestricted Class A licenses to first-time applicants. (Joint SMF ¶ 18). On December 5, 2008, he was issued a Class B firearms license with a "target & hunting" restriction. (*Id.* ¶ 19).

On July 7, 2014, Lobao's license expired, and the City of Peabody issued him an unrestricted license to carry on renewal. (Pls.' Mem. Support Mot. to Amend 2).

**4. Robert Capone**

On May 14, 2012, Robert Capone applied for an unrestricted Class A firearms license from the Peabody Police Department. (Joint SMF ¶ 21). On his application, he stated that the reasons he requested the license were "[f]or personal protection in and out of the house and sport and target (Business capacity)." (Joint Ex. I).

On June 25, 2012, Capone was issued a Class A license with a "target & hunting" restriction. (Joint SMF ¶ 21).

Capone recently completed training as a range officer. After notifying the Peabody Police Department of that fact, he received an unrestricted license to carry. (Pls.' Mem. Support Mot. to Amend 2).

**D. Procedural Background**

On February 7, 2013, plaintiffs Davis, Thompson, Lobao, Capone, and Commonwealth Second Amendment, Inc., brought this lawsuit. The complaint asserts two counts under 42 U.S.C. § 1983 for violations of the Second and Fourteenth Amendments. Plaintiffs contend that the restrictions on their firearms licenses violate the Second Amendment by prohibiting them from carrying and using handguns for the purpose of armed self-defense in public.

On June 24, 2013, the Commonwealth of Massachusetts intervened for the purposes of defending the constitutionality of Mass. Gen. Laws ch. 140 § 131. On July 1, 2013, plaintiffs and defendants cross-moved for summary judgment. On March 26, 2014, the Court denied the motions for summary judgment without prejudice and ordered the parties to file supplemental memoranda on the following topics: (1) whether any additional discovery or fact-finding to resolve any issue in this case is necessary or appropriate; (2) whether the Court's analysis of the state-law issues required correction or modification; (3) whether *Pullman* abstention is necessary or appropriate; and (4) whether there are any potentially dispositive issues of state law as to which certification of a question of law to the Supreme Judicial Court under Massachusetts Supreme Judicial Court Rule 1:03 is appropriate. After the parties briefed these issues, the Court heard further argument on the issues presented in the supplemental memoranda.

On September 11, 2014, plaintiffs filed a motion to amend the complaint to remove three of the four individual plaintiffs and substitute four new individuals. In their motion to amend, plaintiffs acknowledged that Thompson, Lobao, and Capone now lack standing in this case because they have received unrestricted licenses to carry. Plaintiffs requested that they be replaced with four new individuals. Defendants oppose the motion to amend and contend that the claims of Thompson, Lobao, and Capone should be dismissed.

## II. <u>Standard of Review</u>

Rule 15 of the Federal Rules of Civil Procedure addresses amendments to pleadings. Under Rule 15(a), a party may amend a "pleading" without leave of court in certain relatively

narrow circumstances.[3] "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In determining whether to grant a motion to amend, the Court must examine the totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).

## III. Analysis

Defendants contend that the motion to amend should be denied because permitting it will cause undue delay. Plaintiffs made their request for leave to amend more than eighteen months after commencing their action and filing a first amended complaint. The parties completed fact discovery on June 17, 2013, and the parties both moved for summary judgment on July 1, 2013. This Court held an initial motion hearing on September 13, 2013. On March 26, 2014, the Court ruled on the cross-motions and requested supplemental briefing on certain issues. Subsequent to the Court's March 26 order, the parties have submitted supplemental memoranda, and the Court heard additional arguments. Now, the plaintiffs' proposed second amended complaint seeks to replace three of the four plaintiffs with four new individuals.

To permit plaintiffs to amend their complaint at this stage of the proceedings would cause

---

[3] A party may amend a pleading once as a matter of course within "21 days after serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

undue delay. Although plaintiffs contend that no additional discovery or fact finding is required to substitute the four new prospective plaintiffs, that is a doubtful proposition; as defendants note, the claims of the proposed plaintiffs present facts that "materially differ from the facts already submitted" to the Court. (Def. Opp. to Pl. Mot. to Amend 3). Plaintiffs have provided no specific arguments as to why it is necessary or appropriate for these four prospective plaintiffs to join this particular case. And it appears that nothing would prevent those proposed plaintiffs from pursuing their claims in a new matter. Plaintiffs' motion to amend the complaint will therefore be denied.

Claims are "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The claims of Thompson, Lobao, and Capone are now moot because they have received unrestricted licenses to carry.[4] Therefore, their claims will be dismissed. Because there are no claims remaining against St. Pierre, he will be dismissed as a defendant.

**IV. Conclusion**

For the foregoing reasons, plaintiffs' motion to amend the complaint is DENIED. The claims of plaintiffs William Thompson, Wilson Lobao, and Ropert Capone are DISMISSED as moot.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: December 9, 2014

[4] In its March 26 order, the Court found that the plaintiffs had standing because they had been denied unrestricted licenses. Plaintiff Christopher Davis has not been awarded an unrestricted license at this time, and therefore there is still a live controversy with respect to his claims against Grimes.