UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER DAVIS, *et al.*,

        Plaintiffs,

        v.

RICHARD C. GRIMES, in his official capacity as CHIEF OF THE WEYMOUTH POLICE DEPARTMENT, *et al.*,

        Defendants.

CIVIL ACTION
NO. 13-10246-FDS

---

**SUPPLEMENTAL MEMORANDUM OF INTERVENOR COMMONWEALTH OF MASSACHUSETTS**

---

MARTHA COAKLEY
ATTORNEY GENERAL

William W. Porter
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1598
(617) 727-2200, ext. 2976
BBO No. 542207
Bill.Porter@state.ma.us

January 16, 2015

**Introduction**

In this action, the remaining plaintiffs seek a declaration that the Chief of Police in Weymouth has violated the Second Amendment by implementing a policy under which "Target and Hunting" restrictions are placed on licenses to carry firearms issued to first-time applicants. For relief, they seek to enjoin the imposition of such license restrictions. The Commonwealth has intervened to defend the constitutionality of the governing statute, Mass. Gen. Laws c. 140, § 131, to the extent it is drawn into question.

In its memorandum and order dated December 10, 2014, this Court requested supplemental briefs from the parties to address: (i) whether there is a material factual dispute as to the licensing policy of the Town of Weymouth and its application to plaintiff Christopher Davis, (ii) if not, whether the parties can stipulate to some or all the relevant facts, (iii) if so, whether an evidentiary hearing is necessary, and (iv) if a trial is necessary, whether plaintiffs are entitled to a jury trial, as demanded. The Commonwealth's response follows.

**I.      The Summary Judgment Record Is Not Yet Adequate to Establish the Current Licensing Policy of the Town of Weymouth for First-time applicants, and How it Would Apply to Davis.**

In its Supplemental Memorandum dated May 15, 2014 (Doc. 78), the Commonwealth submitted that the summary judgment record in this case is not adequate to establish the current licensing policy of the Town of Weymouth for first-time applicants for licenses to carry firearms. As of that date, the record included an initial affidavit from Chief Grimes suggesting a general "policy not to issue an unrestricted Class A License to Carry ("LTC) to first time applicants for a gun license." Grimes Aff., ¶ 2 (Doc. 33). (Chiefs Grimes made exceptions, however, where a first time applicant was in law enforcement or the military, or required the license for employment as a security guard or because he carried cash or valuables in his business. *Id.*) On May 2, 2014, Chief Grimes filed a supplemental affidavit stating that he does not have a "categorical" policy to deny an

unrestricted license to carry to first time applicants, and that all such applications are "considered and reviewed individually."  Second Suppl. Grimes Aff. (Doc 75, Ex. 1), ¶ 2.  He explained that Weymouth "recently changed its on-line policy to reflect that first time applicants are not subject to any preset limitations regardless of his/her circumstances."  Id., ¶ 2.  Chief Grimes stated that "absent some compelling reason not to do so," he will "likely issue an unrestricted LTC" to a person who he determines to have met all Section 131(d) requirements. Id., ¶ 4.  Because of what appeared to be a recent shift in the Weymouth policy, the Commonwealth submitted in May 2014 that the summary judgment record was not adequate to establish the current licensing policy of Weymouth for first-time applicants.  Supp. Mem. Memorandum dated May 15, 2004 (Doc. 78), pp. 6-9.

The evidentiary record on this point is the same today.  However, in a further supplemental memorandum filed January 15, 2015, Weymouth explains that it has now implemented the "new or revised" policy that became effective April 1, 2014, and that, since then, approximately two-thirds of the "new/first time" applications for licenses to carry that have been granted are "without any restriction."  Weymouth Supp. Mem. dated January 15, 2015 (Doc 96) at 2-3.  This explanation would appear to confirm that, under the revised policy, first-time applicants are given individual consideration and a substantial portion of them obtain an unrestricted license.  For summary judgment purposes, however, the Weymouth supplemental memorandum will not establish that fact as undisputed.  See Fed. R. Civ. P. 56(c)(1) (setting forth evidentiary materials that can establish a fact as undisputed).

If Weymouth were to file the same information as is set out in its supplemental memorandum, in a form that meets the requirements of Rule 56(c), the summary judgment record would then be adequate to establish the current licensing policy of the Town of Weymouth for first-time applicants for licenses to carry firearms (unless that evidence is disputed by plaintiffs, also as provided in Rule 56(c)).

As Weymouth notes, plaintiff Christopher Davis has not asked Chief Grimes to lift the "Target and Hunting" restriction on his license since the Weymouth policy was revised in April 2014. Weymouth Supp. Mem. at 3. Weymouth also explains that in approximately six cases where a first-time applicant initially received a Target & Hunting restriction, upon further consideration the Department removed the restriction and issued an unrestricted Class A LTC. Id. 3. Accordingly, on this summary judgment record, Davis has not demonstrated that he would not receive an unrestricted license if he requested, under the revised Weymouth policy, that his "Target and Hunting" restriction be removed.

As a practical matter, inadequacies in the current evidentiary record might be overcome through one or two deposition taken by each side. If that is not feasible, and if a stipulation cannot be reached, or can only be reached as to some material facts, then the Court should hold an evidentiary hearing where the Court finds the facts. In all events, the Commonwealth would urge that all material facts be firmly and clearly established before the Court decides any constitutional issue. See Comm. Supp. Mem. dated May 15, 2004 (Doc. 78), p. 8.

## II.   No Party has a Right to A Jury Trial to Decide Any Disputed Factual Issues.

This Court also raised the question whether any disputed factual issues can be decided by the Court, or whether a jury trial is necessary.[1] No party has a right to a jury trial on plaintiffs' claims, which seek only injunctive and declaratory relief pursuant to 42 U.S.C. 1983. *See United States v. Louisiana*, 339 U.S. 699, 706 (1950) (no jury trial right for claim seeking equitable relief of injunction); *Rodriguez v. Munoz*, 808 F.2d 138, 142-43 (1st Cir. 1986) (plaintiff not entitled to a jury trial on § 1983 claim for injunctive relief). The addition of

---

[1] The Court has allowed the joint motion filed by plaintiffs and defendants on January 13, 2015, to withdraw the jury demand in the defendants' answer. (Doc. 95). The Commonwealth nonetheless sets out its position to avoid any ambiguity on the issue.

requests for a declaratory judgment do not convert the underlying action into an action at law so as to afford a jury trial right. *See Wilson v. Bailey*, 934 F.2d 301, 305 (11th Cir. 1991) ("Section 1983 injunctive and declaratory relief is not triable by jury") (citations omitted). Thus, any disputed factual issues must be decided by this Court.

## **CONCLUSION**

For the reasons in its prior supplemental memorandum, dated May 15, 2014, the Commonwealth respectfully requests that the Court stay this case and abstain from determination of the Second Amendment claims pending a determination of questions of state law in an action in state court.

MARTHA COAKLEY<br>
*ATTORNEY GENERAL OF MASSACHUSETTS*

/s/ William W. Porter
William W. Porter (BBO # 542207)
Assistant Attorney General, Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617.963.2976

January 16, 2015                                bill.porter@state.ma.us

### *Certificate of Service*

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent to those indicated on the NEF as non registered participants on or before January 16, 2015.

/s/ William W. Porter
William W. Porter
Ass't Attorney General

4