UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————
)
CHRISTOPHER DAVIS, and            )
COMMONWEALTH SECOND               )
AMENDMENT, INC.,                  )
      Plaintiffs,         )
)
v.                                )
)
RICHARD C. GRIMES, in his official )
capacity as Chief of the          )  CIVIL ACTION NO. 1:13-CV-10246 (FDS)
Weymouth Police Department,       )
      Defendant,          )
)
- and -                           )
)
COMMONWEALTH OF                   )
MASSACHUSETTS,                    )
      Intervenor.         )
—————————————————————)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
ON THE GROUND THAT THERE IS NO LONGER AN ACTUAL CASE OR
<u>CONTROVERSY BETWEEN THE PARTIES</u>**

<u>Introduction</u>

Pursuant to Fed. R. Civ. P. 12(b)(1), Richard Grimes, Chief of the Weymouth Police

Department ("Chief Grimes"), submits this memorandum in support of his motion to dismiss all

of the plaintiffs' outstanding claims against him.  As explained more fully below, plaintiff-

Christopher Davis ("Davis") has now received an unrestricted License to Carry Firearms;

moreover, following extensive discussions between respective counsel, Chief Grimes has further

clarified the Weymouth Police Department's policy with respect to the issuance of a License to

Carry Firearms.  Accordingly, Chief Grimes maintains there is no longer an actual case or

controversy between the plaintiffs and himself.   Stated differently, at least as against Chief

Grimes, plaintiffs' claims are moot.[1]

## FACTUAL STATEMENT

For purposes of brevity and given this Court's familiarity with the legal issues involved

in this action, Chief Grimes will be brief.[2]   In essence, this is a federal constitutional challenge to

the firearms license policy of the Town of Weymouth.   The plaintiffs brought suit under 42

U.S.C. §1983 alleging that the gun licensing policy of the Town of Weymouth, especially as it

relates to first-time applicants for a License to Carry Firearms ("LTC") violates the Second and

Fourteenth Amendments.   Plaintiffs seeks both declaratory and injunctive relief.

On March 22, 2012, Davis applied for an unrestricted LTC on the grounds that (i) he had

been the victim of identity theft and (ii) he needed it to protect himself and his family when they

were camping in the back country.   On July 2, 2012, Davis received a Class A LTC with a

"target and hunting" restriction.   Later that month, Davis requested that the restriction be

removed, which request was denied by Chief Grimes.   On May 12, 2015, Davis re-applied for a

Class A LTC without any restrictions.    At the request of the Weymouth Police Department, the

Massachusetts Executive Office Of Public Safety And Security, recently issued Davis an

unrestricted Class A LTC retroactive to July 3, 2012.   See Exhibit A annexed hereto (redacted, in

part, to protect Davis's privacy).

---

[1] For sake of ease, the "Town of Weymouth" and the "Weymouth Police Department" are used
interchangeably.

[2] A fuller account of the procedural history of this case is found in this Court's decision denying
both parties' cross-motions for summary judgment and holding that further fact-finding or
discovery is required.   *See Davis v. Grimes*, 9 F. Supp. 3d 12 (D. Mass. 2014).   The Court's
factual recitation as it relates to Christopher Davis is incorporated herein by reference. *Davis,
supra*, 9 F. Supp. 3d at 17.

Chief Grimes now turns to plaintiffs' overarching concerns about the Department's gun licensing policy especially as it relates to first-time applicants seeking an unrestricted LTC.  A little over a year ago, Chief Grimes amended the Weymouth Police Department's gun licensing policy, which now provides, in relevant part, as follows:

> "All applicants who are seeking an unrestricted license to carry (LTC) – including first time applicants – will be considered individually on the merits and will be required to submit a written supplement articulating the need for the unrestricted status."[3]

Over the last few months, plaintiffs' counsel and Chief Grimes's counsel have engaged in a series of discussions to see if, through further clarification of the Department's gun licensing policy, this matter can be resolved out-of-court.  They have successfully done so.  As part of the parties' agreement to resolve this matter amicably, Chief Grimes has agreed to post the following statement on the Department's website:

License Restriction Policy

1)  When completing the portion of the application form that requires a statement of "Reason(s) for requesting the issuance of a card or license":

    a)  an applicant must provide one or more specific reasons for seeking licensure, rather than merely stating nothing or "all lawful purposes"; and

    b)  the purpose of this requirement is to enable the Chief to determine the pertinent qualifications and concerns surrounding the license application.

2)  The Chief's decision to restrict the license of an individual will be based on a determination that considerations unique to the individual show a particularized risk to public safety.  This determination will be based on reliable, articulable, and credible information which shows that, relative to

---

[3] This is wholly consistent with the standard gun license application issued by EOPS/Department of Criminal Justice Information Services, p. 3, which requires that the applicant "indicate the reasons you are requesting an unrestricted LTC."  See Exhibit B annexed hereto, Application, p. 3, "Reasons for requesting the issuance of a card or license."

the general public, the applicant poses a particularized risk to public safety, including, but, not limited to, a risk to the applicant himself or herself.

3) The Chief will publish this policy as part of the Police Department's LTC application packet, and the designated Licensing Officer(s) will clarify its requirements to the extent they are able upon request.

It is Chief Grimes's understanding that plaintiffs are satisfied with this additional statement regarding the Department's gun licensing policy and, in return, have agreed to dismiss all of their outstanding claims against him.

## ARGUMENT

"Article III of the United States Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982). As the Supreme Court has explained:

> In its constitutional dimension, standing imports justiciability; whether the plaintiff has made out a "case of controversy" between himself and the defendant within the meaning of Ar. III. This is the threshold question in *every* federal case, determining the power of the court to entertain the suit.

*Warth v. Seldin,* 422 U.S. 490, 498 (1975) (emphasis added). This fundamental standing requirement has been applied by the Supreme Court both to actions for declaratory judgments, *see, e.g., Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128 n. 8 (2007), and to actions for injunctive relief, *see City of Los Angeles v. Lyons,* 461 U.S. 95, 110 (1983). Furthermore, when a plaintiff requests more than one remedy, it bears the burden of establishing standing "for each type of relief sought." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009) (citing *Lyons,* 461 U.S. at 105).

To establish a case or controversy for Article III purposes, it is not enough that the party invoking federal jurisdiction have a "keen interest" in the issue. "That party must also have

- 4 -

'standing,' which requires, among other things, that it have suffered a concrete and particularized injury that is fairly traceable to the challenged conduct . . .." *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661 (2013) (citations omitted).  A plaintiff's injury in fact is the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).[4] Significantly, the case or controversy requirement must be maintained throughout the course of the litigation.  *See, e.g., FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230-231 (1990); *Already, LLC v. Nike,* 568 U.S. ___, 133 S.Ct. 721, 726 (2013).  Bearing these principles in mind, Chief Grimes maintains that there is no longer a jurisdictional "case or controversy" between the plaintiffs and himself.  Mr. Davis has received an unrestricted LTC and, hence, no longer has an "injury in fact" for purposes of proceeding in federal court.  *See, e.g., Osediacz v. City of Cranston,* 414 F.3d 136, 140-141 (1st Cir. 2005).  Similarly, the Department has now provided clarification with respect to its gun licensing policy in a manner that satisfies plaintiffs' broader claim for declaratory and injunctive relief.  *See, e.g., Golden v. Zwickler,* 394 U.S. 103 (1969) (declaratory-judgment action challenging a state statute making it a crime to distribute anonymous literature in connection with an election campaign did not present a controversy of sufficient immediacy to warrant issuance of a declaratory judgment, when the distributor of handbills was concerned only with literature relating to a certain congressman who, at the time of the hearing, had left the House of Representatives and had taken office as a state Supreme Court Justice); *Flint v. Commissioner of Pub. Welfare*, 412 Mass. 416, 418-419 (1992) (where plaintiffs challenged entitlement to certain benefits under State programs, but those programs

---

[4] As a fellow member of this Court recently observed, "[sic], the absence of an 'injury in fact' for standing purposes necessarily forecloses injunctive relief." *EMC Corp. v. Chevedden*, 4 F. Supp. 3d 330, 341 (D. Mass. 2014).

were eliminated during pendency of action, no actual controversy continued to exist). Accordingly, for the reasons stated herein, Chief Grimes submits that plaintiffs' claims against him should be dismissed in their entirety.

## CONCLUSION

WHEREFORE, Chief Grimes respectfully submits that all of plaintiffs' claims against him should be dismissed with prejudice together with such other relief as this Court deems just and proper.

Respectfully submitted,
The Defendant,
RICHARD C. GRIMES, in his Official Capacity
as Chief of the Weymouth Police Department,
By his attorneys

PIERCE, DAVIS & PERRITANO, LLP

/s/ Adam Simms
John J. Davis, BBO #115890
Adam Simms, BBO #632617
90 Canal Street
Boston, MA 02114
(617) 350-0950
jdavis@piercedavis.com
asimms@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on June 15, 2015.

/s/ Adam Simms
Adam Simms